REC'D OCT 2 6 2023

REC'D OCT 26

MICHAEL GIBSON
2130 N. Van Pelt Street
Philadelphia, PA 19121
(267) 370-4152

REC'D OCT 26 2023

## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GIBSON,<br>Plaintiff | : <br> : <br> : | |
| v. | : <br> : | **JURY TRIAL DEMANDED** |
| CITY OF PHILADELPHIA,<br>Defendant | : <br> : <br> : | Civil Action No.: |

## PRO SE COMPLAINT

1. Plaintiff Michael Gibson (hereinafter "Plaintiff") hereby files this Complaint. pro se against the City of Philadelphia, (hereinafter "Defendant"), alleging race discrimination in violation of their rights in accordance with 42 U.S.C. §1983, tortious assault and battery, negligence, conversion libel, fraudulent misrepresentation, fraudulent concealment, spoilation of evidence, false imprisonment, retaliation, civil conspiracy, breach of fiduciary duty.

2. Plaintiff is an adult individual and bona fide resident of the Commonwealth of Pennsylvania, residing at 2130 N. Van Pelt Street, Philadelphia, PA. 19121

3. Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania, owns operates, manages directs, controls the Philadelphia Police Department ("PPD"). It's Police Internal Affairs Division ("I.A.D.), whose agents, servants, and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs, or practices of the PPD. PPD has a local address of 400 N. Broad Street, Philadelphia, PA. 19103. Defendant owns, operates, manages, directs, and controls the Philadelphia Fair Housing Commission ("FHC") and the Philadelphia Commission on Human Relations ("PCHR") whose agents, servants and employees at all times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies customs or practices of the FHC and PCHR and has a local address of 601 Walnut Street, Suite 300 South, Philadelphia, PA 19106. Defendant owns, operates, manages, directs and controls the Philadelphia office of Inspector General

("O.I.G"), whose agents, servants and employees at all relevant times were acting within the course and scope of their employment under color of state law and operating pursuant to official policies, customs or practices of the ("O.I.G.") OIG has a local address of 601 Walnut Street, Suite 300E, Philadelphia, PA 19106. Defendant owns and operates, manages, directs and controls the Philadelphia Law Department ("P.L.D.") whose agents, servants and employees at all times were acting within the course and scope of their employment under color of state law and operating pursuit to official policies, customs or practices of the PLD and has a local address of 1515 Arch Street, #15, Philadelphia, PA. 19102.

## JURISDICTION AND VENUE

4. Plaintiffs incorporates the preceding paragraphs as if set more fully at length herein.

5. Subject-Matter Jurisdiction is conferred upon this honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating commerce, 08 U.S.C. § 1343 (4), and 28 U.S.C. B 1331, and under 42 U.S.C. § 1983.

6. This is a civil rights action under 42 U.S.C. § 1983 and the first, fourth, fifth, sixth and fourteenth amendments to the United States Constitution, brought to remedy of Michael Gibson, a resident of the Commonwealth of Pennsylvania.

7. This court has supplemental jurisdiction over the related state claims from part of the same case of controversy under Article III of the United States Constitution. Plaintiff's state law claims share all common operative facts with the Federal law claims, and the parties are identical. Resolving Plaintiff's Federal and state claims in a single action serves the interest of judicial economy, convenience, consistency, and fairness of the parties.

8. This Court may properly maintain personal jurisdiction over defendant because defendant's contacts with this state and this juridical district are sufficient for the exercise of jurisdiction over defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court.

**9.** Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 139 (b) (2) inasmuch as all parties regularly conduct business within this district and the acts complained of by Plaintiff arose therein.

## FACTUAL BACKGROUND:

In February 2015, a P.P.D. incident occurred, which is referenced in the January 2023 P.P.D. I.A.D. Investigative Report.  In January 2023, a P.P.D. investigative report incident

*10* .Plaintiff hereby incorporates the prior and subsequent paragraphs of this complaint as though fully set forth at length.

*11* . Plaintiff is a 73-year-old Black man who is disabled and weighs approximately 140 pounds.

*12* .. At the time of the incident, which allegedly occurred at approximately 7:45 AM as alleged in this complaint, Plaintiff resided at 2130 N. Van Pelt St., Philadelphia, PA 19121 ("property") with his developmentally disabled sister, Debra Gibson ("Debra"). This incident occurred on February 20, 2015, at approximately 7:45 AM.

*13* . On that morning, the doorbell rang. It was Albert Gibson, Plaintiff's first cousin. When Plaintiff opened the door for Albert, partially, and stuck him in the chest and forced his way into Plaintiff's home. Plaintiff's sister, Jacqueline Carter, her husband, Alexander Carter, and an unidentified man and woman later identified as Denise Haines, followed Albert Gibson into Plaintiff's home.

*14* . The above individuals began to take valuables from Plaintiff's home and placed it in the U-Haul truck. Jacqueline Carter, who had a home caregiver named Joyce present, assisted in the removal of items. Albert Gibson forced Plaintiff to stay seated in the living room chair.   While Alexander Carter snatched all the house phones out of the sockets.

*15* . Plaintiff was able to get his cell phone and call 911 to assist as soon as he was able to get out of the chair. In response to the 911 call, 8 police officers from the 22nd District of the Philadelphia Police Department arrived at 9:00 am. Evidence recourse correspondence, a letter sent by US mail, to the Carters, regarding their criminal behavior, acts of false imprisonment, making a false police report for a medical emergency, and the illegal removal by threats by force of Plaintiff's

incapacitated sister, Debra in the furtherance of their criminal conspiracy to take estate is in Court records, Probate and Orphans' Court, Estate of Elsie Gibson. This matter is well-documented in court records under Probate and Orphans Court, specifically as the Estate of Elsie Gibson, Case No. 924 of 2015.

16. Jacqueline Carter, Alexander Carter, and Albert Gibson proceeded to transfer Debra Gibson from her hospital bed into a wheelchair and then out of the Plaintiff's residence. When the Plaintiff implored the officers to intervene and prevent his sister, Debra, from being removed from the house, he was ignored by all eight officers present.

17. The Plaintiff was being restrained by one big approximately 250 lb. Officer, by the Officer forcibly holding his wrist and by his arms in the vestibule by the front door, in only pajamas and socks on a wet floor with ice and snow tracked in by the officers.

18. When the officer released Plaintiff, all the other officers watched and restricted Plaintiff's movements in his living room. When the Officers ignored his request to prevent this from happening, he called 911 a second time and asked for a supervisor. All 8 Officers stopped the Plaintiff from going to his front window or door to observe what was occurring outside with his sister's life in extreme danger. The Plaintiff's movements were forcefully restricted by threats and physical force applied by all the officers.

19. Plaintiff told the arriving police officers that after Plaintiff had been assaulted at his front door, to gain entry, Plaintiff was pushed by in his living room chair, by a first cousin. The perpetrators forcibly restrained the Plaintiff's movements. he had been assaulted at his front door to force entry, he also explained that he was pushed down into a living room chair by a first cousin of his, who then proceeded to physically restrain him.

20. Plaintiff told the police that perpetrator Albert Gibson and Alexander Carter, husband of Jacqueline Carter, cursed and threatened Plaintiff, and proceeded to rip the house phones out of the sockets. Convicted felon, Albert Gibson, stated he was the Carter spokesperson (don't talk to them.)

21. Plaintiff states, instead of the officers apprehending the offenders, as the Plaintiff pleaded with the police that was present, all 8 Officers ignored Plaintiff's pleas, wherein they violated the Plaintiff's 14th Amendment rights, which was violated by false imprisonment of the Plaintiff, as well as Plaintiff's 4th Amendment,

22    A large officer, weighing approximately 250 pounds, forcibly seized the Plaintiff's upper and lower forearms and wrists, restraining him and preventing his movements. This occurred in the vestibule near the front door, with outdoor temperatures as low as 3 degrees Fahrenheit. The floor was wet and covered with snow and ice, which had been tracked into the home by eight officers. These actions resulted in injuries, as documented in the hospital report.

23    Plaintiff was able to observe while being restrained his sister, "Debra," being removed from her hospital bed and then, wherein there she was placed in a wheelchair, not a gurney as the 22nd District Police Sargeant lied in the I.A.D investigation conducted by I.A.D. Investigator, Sargeant William Yancer, who collaborated these false material facts. Plaintiff's pleas were continually ignored by all the Officers present, all eight of them; explained in detail in Plaintiff's sworn testimony within six affidavits and formal Demand Letter to Deputy City Solicitor, Christopher Ryder, Esq., who was in charge of the Plaintiff's Pennsylvania . man Relation Discrimination Complaint of Plaintiff Case #201 905 041 City Case #201905041.

24    This correspondence was illegally intercepted.    It was addressed to both City Solicitor Ryder and Mayor Kenney.  Recruit of documents, testimony was denied by City Solicitor, Frank Wehr and Solicitor Nicole Morris, but confirmed by Federal Postal Inspectors.

25    While awaiting supervisor, Plaintiff got an envelope and a pen off the living room mantel and began to write down the badge numbers of police officers. One of the officers approached the Plaintiff with his hand on his gun and threatened him, "Put the pen down." Plaintiff, was fearful for his life, dropped the pen and was unable to record more than four badge numbers, which were: 2211, 22F, 3785, and 2055. Plaintiff has the original blue envelope badge numbers were written on.  I.A.D. completely omitted their involvement.

26    A Sergeant Robert Sharp, badge # 453, patrol supervisor for the 22nd District, arrived shortly thereafter.

27    When Sergeant arrived, Plaintiff opened the front door to let him in. Plaintiff observed outside, there was no medical transport    U-Haul truck. Plaintiff's mother's friend, Clementine Pitman, witnessed Debra being placed in. Witness – Mrs. Pittman's statements in Orphan's Court records.

28    2 . Debra Gibson was already gone when Sergeant Robert Sharp arrived at the Plaintiff's door. Plaintiff, was finally freed from restricted movement in his home by all the officers present, observed no ambulance, medical transport, or the U-Haul truck. Neighbor, Mrs. Clementine Pittman observed Debra being placed in.

29    2 . Plaintiff observed that no medical responders came in home or was outside of his home when Plaintiff let Supervisor in.    Plaintiff has decades of professional experience as Crisis Specialist in the Mental Health field, mobile psychiatric therapist, administrative manager for a major Hospital's psychiatric division. The police of the 22nd District created the crisis situation by placing my life and my incapacitated Sister's life in extreme danger.

30    . Plaintiff's sister, "Debra", was never transported to any medical facility at any time, as claimed by Jacqueline Canter and Denise Haines in their falsified Police report of medical emergency.

31    3 . The Plaintiff nor the supervisor observed first responders at any time. There was no gurney used to remove Debra out of Plaintiff's home, as stated by Sergeant Sharp and I.A.D. Investigator William Yancer. Plaintiff has decades of professional experience as a mental health specialist, mobile psychiatric therapist, and Crisis Intervention Specialist, documented in Probate and Orphan's Court records.

32    3 . On February 22, 2015, the Plaintiff had to seek medical treatment at Mercy Catholic Medical Center for COPD exacerbation caused by being restrained in extreme cold.  Plaintiff suffered back pain, arm wrist, and shoulder pain by being restrained by an approximately 240 lb. officer, the Plaintiff weighs approximately 150 LBS. Plaintiff had to return again to the Emergency Room on 27 February due to injuries and COPD exacerbation caused by the police. Medical records on the record at PCHR and the Law Department.

33    3 . Plaintiff has decades of experience in the mental health field and had professional experience as a Crisis Intervention Specialist and Mobile Psychiatric Therapist that conducted psychiatric evaluations in the field, writing 302 warrants, working with the police in the largest mental health catchment area of Philadelphia in 5A and 6C Mental Health under Dr. Warren E. Smith Mental Health Centers.

34    3 . The Plaintiff averts that  police allowed themselves to be duped by the Carters and quality progressions' employee, Denise Haines, who had fraudulently claimed a medical emergency. There was no medical emergency. Plaintiff's sister, Debra

Gibson, life was placed in immediate imminent danger by being removed from the Plaintiff's home and wheeled outside in three-degree weather with ice and snow on the ground. The police officers and that, of the perpetrator created a crisis situation.

35    3 . The named two 22nd District police officers, Young and Brennan, and the other six John Doe officers, whose omission of their presence and involvement and identities portrays deceit fraud and abuse of official power, violation of their oath to protect and serve, and they violated the Plaintiff's 14th, 5th, 4th, and 1st Amendment rights under the Constitution and Declaration of Independence.

36    3 . Those officers deprived the Plaintiff by their unjustifiably actions of the companionship and community of his sister Debra and it resulted in Plaintiff never seeing his sister again in life or after the death without notification and retaliatory cremation without notification to Plaintiff or his older brother, Samuel Gibson inflicting extreme mental anguish emotional distress and psychological trauma.

37    3 . The negligent actions of all eight 22nd District police officers involved resulted in Plaintiff's sister Debra to be in the custody of the previously stated persons, who carried out retaliation in the form of illegal cremation, and the police are the proximate cause.

38    3 . On February 20, 2015, the medical emergency claim of Plaintiff's sister, Debra, had to be moved, transported to a medical facility was a lie and fraudulent in the police report claim made by Jacqueline Carter and a quality progressions employee, Denise Haines.

39    3    This action by Jacqueline Carter, using a statement to the police that she had power of attorney to move Debra, was a lie.

40    . This power of attorney was granted by the principle, Plaintiff, and Mrs. Carter's late mother, Elsie Gibson, who passed on February 8th, 2015 and when she passed, the power of attorney that Carter presented to the officers, as reported by Sgt. William Yancer in his investigation, was void. Yancer stated himself that the officers knew nothing about a power of attorney and sought advice from their Sgt; Sharp. Sgt. Robert Sharp was also ignorant about power of attorney.

41    On February 20, 2015, Jacqueline Carter's presentation of a voided power of attorney document, which she fraudulently used along with Quality Progressions employee Denise Haines in their reporting to the police, was part of their mission to engage in a minor conspiracy to gain control of my Plaintiff's mother's assets. This was also

for Denise Haines's self-enrichment while maintaining the $450,000 contract for Plaintiff's sister's care, paid by the Department of Human Services. Additionally, her job was no longer in existence.

42. Both the officers of the 22nd police district, including all eight who were named and fraudulently concealed in both the 22nd District reporting and I.A.D. Investigator Yancer's documentation is guilty of violating Plaintiff's 14th amendment rights.

43. On page 3 of the IAD report, the statements made by Yancer of Sgt. Sharp admitting his officers knew nothing about a power of attorney. Neither did he. A power of attorney is voided when a person passes away

44. 4. All eight of the officers demonstrated negligence in fulfilling their duty of care and ensuring equal protection under the law for both the Plaintiff and his sister, Debra Gibson. Debra, a medically compromised individual, was subjected to excessive force while her brother, the Plaintiff, was unlawfully restrained and falsely imprisoned for objecting to the inhumane treatment of his sister.

45. . The officers' actions represent clear violations of the Civil Rights Act, involving the abusive exercise of police authority under the guise of the law. These violations include breaches of the Plaintiff's First, Fourth, and Fifth Amendment rights, as well as infringements upon the equal protection clause of the Fourteenth Amendment.

46. The report of P/O Gerard Brennan and P/O Carolyn Young contains falsifications of material facts related to the incident. The report provided by these two officers is fraught with fraudulent misrepresentations and concealment of critical information. Interestingly, this report was left behind in the Plaintiff's home, raising questions about its intended secrecy.

47. This complaint is marred by fraudulence. The report produced by the Philadelphia Police Department incorrectly attributes the 911 call to Jacqueline Carter instead of the Plaintiff. Moreover, it erroneously states that only two PPD officers were present during the incident when, in reality, there were eight officers who engaged in unlawful conduct, violating official policies and infringing upon the Plaintiff's rights.

48. . On February 20th, 2015, the Plaintiff dialed 911 in response to the forced entry into his home, the unlawful assault and battery he endured, and his false imprisonment by the perpetrators of a felony home intrusion. Astonishingly, no

police report was generated to document these grave events, including the abduction of his bedridden and incapacitated sister, Debra.

49    The police officers present on February 20th, including Gerard Brennan and the former officer Carolyn Young, deliberately omitted and fraudulently concealed their presence at the scene. These officers are identified as John Doe with badge number 2211, John Doe with badge number 22F, John Doe with badge number 3785, and John Doe with badge number 2057. One officer's badge number was not obtained due to threats made by an officer with his hand on his holstered gun as he approached the Plaintiff, instructing him to "put the pen down." Fortunately, the Plaintiff managed to record the badge numbers of four officers on the original envelope he had. (Exhibit Envelope 14).

50    . Additionally, the Plaintiff was able to identify the over 6 foot tall officer who approximately weighed 250 pounds and restrained him on that fateful day of February 20th. Subsequently, a second 911 call was made to file a criminal complaint against two attorneys who sided with the criminal conspiracy orchestrated by the Carters to gain unjust enrichment by taking control of the Plaintiff's late mother's estate which was proven during the trial of the Estate of Elsie Gibson, Case No. 905 of 2015.

51    . The Plaintiff explained to Supervisor Robert Sharp that he had been assaulted by the aforementioned perpetrators, Jacqueline Carter, Alexander Carter, and Albert Gibson, who were responsible for moving Debra Gibson out of her hospital bed and forcibly taking Debra out of the house in her wheelchair. The Plaintiff emphasized to Sergeant Sharp that he had been repeatedly ignored by all eight officers, and they failed to prevent Debra's life from being placed in danger.

52    . Debra was physically incapable of attending the hearing in Orphan's Court due to her fragile physical condition.

53    Court records will reflect a sworn declaration by Dr. Dana Goldblatt, who provided testimony to Judge George Overton stating that Debra should only be moved under emergency circumstances. The hearing in Orphan's Court occurred on September 10th, 2016, and this declaration was made prior to that hearing.

54    . The aforementioned PPD officers of the 22nd Police District, all eight of them, who were involved, along with Supervisor Sergeant Robert Sharp, who arrived in response to the second 911 call made by the Plaintiff, engaged in fraudulent

misrepresentation and fraudulent concealment of the material facts of what occurred on that day.

55      The Supreme Court has ruled that a defendant or defendants, such as the police officers, should not be permitted to invoke the statute of limitations through fraud or concealment, in which they caused the Plaintiff to relax his vigilance or his right to inquire into the facts.

56      The PPD officers of the 22nd Police District involved, their supervisor Sergeant, and the I.A.D assigned investigator William Yancer fraudulently concealed and omitted the names and identities of the six unnamed and omitted officers with mens rea, culpable state of mind. These officers are, in fact, the proximate cause of the Plaintiff's physical and psychological injuries, as evidenced by exhibits such as Mercy Catholic Hospital reports and psychiatric diagnoses, along with clinical therapist reports on record with the Law Department.

57      The report produced by the PPD incorrectly listed Jacqueline Carter as the individual who called 911 instead of the Plaintiff. The report by P/O Gerard Brennan and Carolyn Young states that only two police officers were present when, in fact, eight PPD officers were present and involved on that day, February 20, 2015. The domestic report DC 19054 was generated, but the Plaintiff, the victim, was not given any report.

58      The police never wrote or generated a criminal complaint for the 911 calls the Plaintiff made against those who attacked him and abducted his sister Debra. They lied to the police, claiming it was a medical emergency when there was none. No first responders or ambulance were utilized, as was falsely reported by the two reporting officers and I.A.D. Investigating Sergeant William Yancer. Yancer criminally conspired with 22nd Police District Sergeant Richard Sharp to cover up and conceal the evidence and material facts.

59      The domestic police report was not provided to the Plaintiff but was discovered in his home after a supervising sergeant named Richard Sharp arrived. He instructed those officers and two people, one of whom was still being intimidating until the sergeant arrived, and one convicted felon, to leave the Plaintiff's home.

60      This report, identified with the DC #15094, was authored by the state's two previous reporting officers, P/D Gerard Brennan and resigned P/O Carolyn Young. This report is highly questionable, as it contains misrepresented information and financial concealment, as detailed in previous paragraphs. The reporting officers

responsible for this report, namely P/D Gerard Brennan and resigned P/O Carolyn Young, both refused to provide statements when contacted by I.A.D Investigator William Yancer. Additionally, they, along with their sergeant, concealed the identities and badge numbers of the six other officers involved. This suggests a conspiracy in an overt act to shield those police officers who also caused harm to the Plaintiff.

61 . The Philadelphia Police Department (PPD) intentionally caused the Plaintiff to relax his vigilance by failing to provide correct and complete reporting by PPD officers. This omission left the Plaintiff with nothing to substantiate his claims of his rights being violated. It was only revealed to the Plaintiff when it came out in the Internal Affairs Division (I.A.D.) finding. The I.A.D. report, dated January 23, 2023, stated that the Plaintiff's complaint to I.A.D. was unfounded. The report also mentioned two DC numbers: DC #15-22-15125 and DC #15-02-015094.

62 . Despite the Plaintiff's diligent efforts to obtain the necessary evidentiary documents, the police reports and records of his 911 reports, the Police Officer at the 22nd Police District denied having any other report other than DC #19054.

63 . Upon the plaintive, receiving in reviewing the final disposition and investigative findings of the PPD IAD investigator, Sgt William Yancer dated 1/23/23 from the IAD commanding officer Plaintiff became aware of the overt act of continued conspiracy by the PPD officers of the 22nd District and collaboration with the I.A.D. Investigator and all in that unit that approved of the racially biased, demeaning defamatory sham investigative unfounded report that is a retaliatory response to the Plaintiff's claims of Police misconduct and constitutional civil rights violations of Plaintiff rights.

64 . The report is laden with police perjury, fraudulent, misrepresentation, and fraudulent concealment engaged in by the officers involved with the mensRea, a culpable statement of mind with the intentions of naming the Plaintiff and interfering with procedural due process in violation of the 455 Claus of the 14th amendment, the Plaintiff's responded immediately with his response to police commissioner Miss Danielle Outlaw with A 20 page verified unsworn testimony of the police covered and retaliatory act.

**Exhibit:**

65  Emailed 5/23/23 to the commissioner.

66  Throughout the IAD investigative report, Sergeant William Yencer, continually made false and alluding statements to undermine the Plaintiff's credibility honesty, and integrity. Everything the Plaintiff stated to this officer regarding the criminal conspiracy of the Carter's their co-conspirator. Denise Haymes's quality progression is true. The Plaintiff's claims are documented in probate and orphans Court records, Plaintiff's petition for citation to Jack Glenn Carter dated _____ and Plaintiffs' findings of facts dated _____ which defeated in Plaintiffs will contest of his late mother's estate, both attorney, Howard Solomon attorney for the Carters and corrupt plenary guardian cerebral palsy. I really eat it I was worried she was gonna try play blinding me with that. I just feel bad she needs to get out. Hopefully, a doctor's appointment goes crazy James Tyler, who was appointed by Orphans Court. As a result, Jacquelyn Carter was removed as executrix. For fraud, elder abuse, undue influence, and filing a fraudulent last will and trial on January 6, 2017, before Judge Carrafello.

67  . Almost every statement IAD investigator, Sgt. William Yancer stated Plaintiff stated to him in the recorded interview, which was voluntary on the Plaintiff's behalf, is police perjury. The statement of this internal affairs officer is racially, biased, and racially discriminatory meaning in defamatory to the Plaintiff's character.

68  . The Plaintiff's professional experience in the mental health field spans decades, and is documented in probate in orphans, court, records, testimony, and references of character and professional experience by a chief psychiatrist plaintive worked with as a mobile psychiatric therapist.

69  Sergeant William Yancer's actions were not only a conspiracy to cover up the actions of the police officers previously stated but also a cover-up of their identities.

70  This officer engaged in a racist rant, as evidenced by his irrational behavioral response to plaintive statements. This officer paints the Plaintiff as mentally unstable, and a mentally ill person.

*71*     Officer answer of IAD mocked my statement, that my brother, Samuel B. Gibson is a Air Force Academy graduate top gun pilot in top gun instructor who flew 99 top-secret combat mission for our nation, and that he is a credible witness of good character and integrity, and that he has first-hand knowledge of the incidence regarding our late mothers estate, which both he and Plaintiff filed criminal complaints with the police department, which included suspected over medication of their late mother Elise Gibson.

*72*     Yancer lied regarding as stated that I stated the FBI staged, a sexual discrimination suit against Plaintiff. Yancer lied and stated Plaintiff the FBI enter sept it Plaintiffs' personal documents and files from Philadelphia Municipal Agencies. I stated the law department did obstruct the corresponder of sworn testimony of public corruption to Mayor Kenny, addressed to both City Solicitor Ryder and the Mayor.

*73*     The Supreme Court has set precedence in cases where the defendant has engaged in fraud uses a false identity or conceals in fraud uses a false identity or conceals and identity after causing an injury, the statute of limitations is tolled as long as their true identity is concealed.

*74*     The PPD 22nd District officers involved the two reporting officers Gerard Brennon and P/O Carolyn Young, their supervising Sargeant and the six John Doe officers' identities still omitted and concealed to this day by 22nd District and IAD Investigator Sgt. William Yancer is Obstruction of Justice, interference in a Judicial proceeding, the officers are aware will be presented in a Court of Law.

*75*     Everything stated to IAD Investigator Sgt. William Yancer by the Plaintiff was voluntary and was recorded and is evidence of this Officer's violations of his oath and the laws of this Commonwealth and the Constitutional rights of the Plaintiff's unbiased procedural due procedul due process of the 14th Amendment.

*76*     On October 7, 2022, a Complaint of police misconduct, excessive force on Plaintiff was filed by the Oversight Commission concerning the actions of PPD Officers on February 20, 2015. On January 23, 2023, the PPD Internal Affairs Division issued a Memorandum highlighting their findings.

77   . This memorandum contained multiple factual inaccuracies.  For example, it stated Plaintiff's brother, Samuel Gibson struck him in the chest, when it was in fact, Plaintiff's first cousin, cited in previous paragraphs. More troubling, the report stated that Plaintiff was the aggressor, and goes on to state Plaintiff was acting irrationally and making verbal threats.

78   The Philadelphia Law Department is in possession of documented evidence of Plaintiff's profession, crisis intervention specialist, listed in the Alumni Directory of Roman Catholic High School, 1996 edition. Also, in Probate and Orphans Court records.

**Factual background**

September 25, 2019 Housing Discrimination Hearing.
November 18, 2019 PCHR Housing, sexual discrimination, investigation charge NO 2019-08-07-1969

79   Plaintiff hereby incorporates the prior and subsequent paragraphs of this Complaint, as though fully set forth at length.

80   At the time of the incidents in this section of the complaint, Plaintiff resided at 2130 N. Van Pelt St., Philadelphia PA 19121.

81   . In the last week of May 2019, the plaintive was approached by two women, a daughter, and her mother, Patricia Cannon and the mother Chauntay Cannon who asked the Plaintiff if he would rent them a room in the home, immediately next door to him, which they were informed by someone it was not occupied.

82   The Cannons stated the apartment building day was living in was uninhabitable with numerous problems, and they needed a place to stay.

83   Plaintiff stated to the women he could not rent a room to them because he was in the process of probating his late mother's estate.

84    The very next day, the two women returned, ringing Planting's bell and pleading with him to let them stay temporarily until they could find another place to live.

85    The daughter stated she was a student and employed, as well as her mother, who mentioned they worked at a beauty salon.

86    Plaintiff gave in to their pleas out of kindness and agreed they could stay temporarily for three months. They would draw up a legal agreement on a month-to-month basis for these three months, to which the two ladies agreed and mutually signed.

87    Plaintiff allowed Chauntay Cannon and her daughter Patricia to have the two front bedrooms on the second floor on the 29th of May 2019.

88    Plaintiff allowed them to move in without any security deposit or utility costs to help them in their situation out of kindness.

89    The two women knew they had agreed to move out at the end of August 2019. The women paid $600 for June, and when July 4th came, Plaintiff called Chauntay Cannon and stated she needed to pay for July. Ms. Cannon replied, "I'll give you money or a check for half now and the rest next week."

90    Chauntay Cannon then texted Plaintiff ten minutes later, stating, "Looks like I won't be able to pay you the three hundred." Text messages are evidence in the DA's office.

91    Shortly thereafter, Chauntay filed a fraudulent complaint with perjury, claiming Plaintiff had discriminated against her and her daughter Patricia. In the Complaint, they said Plaintiff owed them a $600 security deposit, when the true fact is they had paid an agreed-upon amount of twelve hundred dollars for June's rent, which covered six hundred dollars for the month of June and six hundred dollars for their last agreed month to stay, August.

92    The Plaintiff informed the Cannons that he attempted to contact their employer, and that the phone number was incorrect.

93    The Plaintiff was finally able to contact the beauty salon. They both stated they worked in. Plaintiff found out they had lied and induced him into an agreement via a lie and deception.

94    In mid-September of 2019, Plaintiff received a phone call from a man named Reverend Bey, who stated he was with the FHC, and a housing discrimination complaint was filed against me by the two women previously named.

95    Plaintiff elaborated that he was devastated by these false accusations made by these two women whom he attempted to help. They, in return, did damage and destroyed things in his home, filing this fraudulent complaint after not agreeing to, and paying what they had no demand for moving in.

96    Plaintiff elaborated these facts with Mr. Bey that the women's allegations were false. The tenants I allowed to stay in my home next door out of kindness had deliberately damaged and destroyed things in my home to file the complaint and take over my home and not leave.

97    On Friday, September 20, approximately 4:10 PM, I received a phone call from Kahlia Skipper with the FHC. Her job title is Rep. II. Asi Ski. Ms. Skipper stated her call was to remind me of the pending Commission's hearing that is coming up on Wednesday, September 30, 2019, at 9:00 AM.

98    In the Plaintiff's phone call with Ms. Kahlila Skipper, Plaintiff stated he was prepared to address this matter at the hearing and elaborated on his concerns. The conversation lasted a lengthy half hour because he was upset due to the criminal nature of the complaint and the two women taking advantage of him because he was disabled and elderly.

99    When the Plaintiff realized he may have given too much information to this FHC staff on how he was going to defend himself against the fraudulent complaint with perjury filed to defend against him, Plaintiff called this staff, Ms. Skipper, that coming Monday, September 23, before the hearing, and asked her if she was an attorney for the FHC, and would they use the information he gave her regarding the

solid proof, irrefutable evidence of the perjury and fraud in these two women's complaint against him.

100    The FHC commission stated she was not an attorney and that the information he gave her would not be used against him.

101    ˙. Plaintiff realized by the egregious way that the Commissioners conducted the hearing, they did, in fact, use the information Plaintiff gave during his engagement with Kahlila Skipper, which rendered the hearing moot in ex parte communication with the loss of subject matter jurisdiction.

102    . Plantiff, in his conversation with FHC staff Ms. Skipper, he explained his mother was a dedicated woman who had devoted her life to providing care to developmentally disabled individuals like his sister Debra. She did this by creating a beautiful, loving, and safe environment for these individuals through a nonprofit business as a domicilitary provider for the Philadelphia Corporation for the Aging.

103    ˙. My mother's home, as Plaintiff stated to Ms. Skipper, was a beautiful home that was licensed and passed L and I inspections for 35 plus years, with a certificate of compliance from the Philadelphia Corp. for the Aging for every year of operation as a non-profit business.

104    Plaintiff elaborated to this FHC staff that the Philadelphia Corporation showed their appreciation for her years of dedicated service by honoring his mother with a banquet of the Spirit of Philadelphia and an award presented to her for thirty years of dedicated service.

105    Plaintiff informed this staff that he had assisted his mother over the years and that her home was completely functional and beautiful. The police department had criminal complaints filed by Plaintiff against these women for deliberate vandalism and destruction inside the home to give their fraudulent complaint of housing discrimination.

106    The District Attorney's Office, ADA Charging Unit Prosecutor, Alexander Blumental, as well as Ada Patel and Sergio Gajar, has evidentiary pictures of the

beautiful condition of the home before these women deliberately vandalized it, causing extensive damage.

*107* ` . Plaintiff explained the grief he felt because he had just gone through a two-year legal battle in which he had to study the law day and night over two years to defend his late mother's estate in a probate will contest against a corrupt executor and two attorneys who had engaged in criminal acts which he defeated In Trial On January 6, 2017, and now this.

*108* ` . Regarding the September 25th, 2019, housing discrimination Complaint against Plaintiff, the Respondent Superior Rue Landau and Chairperson, David Rammler, who are both Attorney's and white were well aware that their staff Kahlila Skipper along with Anthony Lewis Jr. set Plaintiff up at that following hearing with the Assistance of Attorney Chairperson, David Rammler, who had the legal knowledge and prowess to pose questions deliberately sought to humiliate and embarrass me, thereby putting me as a black man in my place.

*109* ` . They loathed the fact that I told Skipper I had recently gone through hell having to face two ruthless Attorneys in a will contest in probate and Orphans' Court.

*110* . As a pro se litigant, instead of sympathizing with anguish over such a fraudulent and criminal complaint Against him, the GPF FHC Staff Administrative staff and involved Commissioners John Anthony Lewis JR, Dalene Butter, and Juan Baez, and Chairperson under Executive Director of both the FHC and the PCHR chose to set me up in a biased discriminatory hearing in which Plaintiff's 14th Amendment right to Fair Procedural Due Process was violated.

*111* Plaintiff was denied an impartial trier of facts, Plaintiff was denied the freedom of speech to defend himself against a fraudulent housing discrimination claim and prevented from exercising his 1st Amendment right to freedom of speech to testify in his behalf. Yet, Commissioner Anthony Lewis, Jr. issued a later commission document that stated Plaintiff, the defendant in this case, testifies, which is a fraudulent misrepresentation and Plaintiff fraudulently concealed the true material facts.

112    As previously stated in the previous paragraph, there were the three triers of facts on September 25, 2019, at the FHC Hearing at 10:35 a.m., titled RE: CHAUNTAY CANNON V. MICHAEL GIBSON took place at the FHC at the Curtis Center, 601 Walnut Street, 3rd Floor, South, Suite 300, Phila., PA 19106.

113    The court reporter present was Karen A. Stevens, who is also a notary.

114    The panel of commissioners was composed of Anthony Lewis Jr., who commanded and led the hearing, Darlene Butler, and Juan Baez, Esquire., along with the Commissioners was the staff, Kahlila Skipper Rep II, and her Assistant, Liberty Reverend Bey.

115    The Hearing was fast-paced, and Plaintiff did not remember the name of the person who swore the participants in, who was Kahlia Skipper, who revealed to FHC management Plaintiff's defenses, or the names of the Commissioners.

116    Not until months later AND numerous attempts to get HEARING transcripts, which Plaintiff received from U.S. legal support some six months later in March, did Plaintiff realize that some person who did the swearing-in, an officer of the court, Khlilia A Skipper, was the same person who called Plaintiff and took in every detail of how he was going to defend against the criminal fraudulent claim of Chauntay Cannon.

117    Plaintiff realized from the way the egregious Hearing was conducted by the Commissioners, all three depriving the Plaintiff of procedural due process in violation of Plaintiff's 14th Amendment right as well as denying Plaintiff the right to speak in defense of perjury, Commissioner Anthony Lewis Jr., procured from Chauntay.

118    The Commissioners used a cunning way to allow Claimant Cannon to lie with the question which was, "Did you receive a security and last month's rent from Miss Cannon?"

119    These commissioners knew I would be quick to denounce the perjury Chauntay Cannon and her daughter Patricia Cannon committed and they knew

120    Ms. Cannon committed and they knew Ms. Cannon would be quick to respond with her reply, which was procuring Subornation of Perjury by Commissioner Juan Baez, Esq.

121    Cannon's statement of perjury was "Yes, he did!" "I have a receipt."

122    The Commissioners refused to allow Plaintiff to respond.
Their action was cunning, appalling, and humiliating, and completely in violation of the rule of law with full intent and a culpable state of mind.

123    The commission staff allowed this woman to get away with perjury and emboldened and enabled this woman to violently assault Plaintiff the next day when I requested nicely that she give a key to my property to correct the intentional damages inside both women and Christopher Simmons, the son which they moved in and allowed to rob the contents locked on the third floor belonging to Plaintiff.

124    Plaintiff realized at that point in the hearing that the triers of fact were informed of all the Plaintiff's planned defenses, especially the irrefutable evidence of the fraud and perjury Chauntay Cannon and her daughter Patricia Cannon made in their sworn statements to the Commission when the complaint was lodged against Plaintiff Michael Gibson for housing discrimination and uninhabitable conditions in his home.

125    The ex parte communications engaged in by the administrative staff revealed by Rep II Kahilila Skipper to all the other involved staff, as previously named in prior paragraphs, was fraud on the court by officers of the court.

126    Plaintiff called out the corrupted hearing proceeding of September 25th in a phone recorded message he left to Executive Director Rue Landau after numerous attempts to have her return his calls.

127    Plaintiff stated in this received message he recorded to Rue Landau that e made numerous attempts to have her return his call, that he had spoken with her manager Rosemary Brannagan, and that the action of this commission and its

128    commissioners is egregious and in violation of the rule of law, thereby violating Plaintiff's procedural due process rights guaranteed by the 14th Amendment.

129    . The Plaintiff did eventually speak with the Director expressing the same, and that her commission has no jurisdiction due to fraud on the court by her commissioners, and that their order for another hearing to be conducted on November 5th, 2019, is repugnant to the Constitution.

130    Plaintiff informed Rue Landau that the actions of her staff were criminal and that he reported their corrupt conduct to a GBI agent on October 10, 2019, in a meeting at the FBI headquarters.

132    . Hardly afterward, Director Rue Landau reformed her office and called Plaintiff to inform him that he did not have to come to the now-fifth hearing, saying that the case was dismissed.

133    Shortly thereafter, on or about November 18th, I received notification that the woman Chauntay Cannon, who the Commission exonerated and falsely sought to discriminate against Plaintiff and criminalize him, now had a housing sexual discrimination complaint against him.

134    . This woman, Chauntay Cannon, had been incarcerated in prison for violently assaulting Plaintiff with a weapon and causing serious bodily injury to Plaintiff as a result of which was the proximate cause of Plaintiff's injuries. Was Cannon emboldened by the FHC hearing staff's criminal actions?

135    The deprivation of Plaintiff's rights was elaborated in detail in the 5/26/20 demand letter to Respondent Landau, Respondent Superior Rue Landau, and the affidavit of sworn testimony. Along with Plaintiff's revised affidavit, pointing out the fraudulent misrepresentation and fraudulent concealment of the Commissioner's name by Kahlila Skipper, who led the egregious hearing of September 25th.

136    FHC Hearing staff on September 25 emboldened Chauntay Cannon to violently attack Plaintiff the very next day with a weapon because Attorney Juan Baez, with

the full knowledge of all the other officers of the court, procured perjury from the complainant.

137    The FHC staff, when Chauntay Cannon filed the housing discrimination complaint against Plaintiff, told Cannon to change the front door locks on the property at 2132 VANDELT without due process, in violation of due process and the 14th Amendment, violating Plaintiff's constitutional rights.

138    Chauntay Cannon testified at the hearing she was supposed to be sentenced for criminal assault and battery that the FHC staff told her to change the front door locks.

139    On or around November 18th, right before Cannon's first trial on November 19, 2019, Cannon, with the assistance of the FHC and partnered vide agency, the PCHR, under some administrator, Executive Director Rue Landau Esq, and Chairperson David Rammler, assisted Cannon in filing another fraudulent claim against the Plaintiff. This claim was a scandalous, defamatory housing sexual discrimination complaint.

140    This complaint and action were retaliatory against the Plaintiff by Chauntay Cannon and the FHC staff because the Plaintiff had reported to state and federal officials. The FHC office was fully aware that Cannon's claim was not credible, as were the District Attorney's Office charging unit under ADA Alexander Blumenthal, who had records of text messages and sworn testimony proving these claims fraudulent.

141    Rosemary Brannigan, who Plaintiff also named as a co-conspirator in the racially discriminatory retaliatory and housing sexual discrimination complaint, which sought to criminalize and paint Plaintiff as a sexual predator with a Jim Crow racist depiction of a Black man as a violent sexual predator.

142    Rosemary Brannigan is the manager of both the FHC and the PCHR, and she is the person that Plaintiff spoke with first about the egregious September 25 hearing and their corrupted hearing proceeding in which they violated the rule of law.

143    The sexual discrimination investigation against Plaintiff started on November 18th, 2019, right before Chauntay Cannon's trial and was under the investigator Alexandria Williams.

144    A sixty-two-page response to the PCHR housing complaint of sexual discrimination has sworn testimony from the Plaintiff against their claims, as well as evidentiary documents that are in the records of the District Attorney's Office, proving all their claims fraudulent.

145    Plaintiff elaborated and described in those sixty-two pages the racially discriminatory tactics from both the complainant and the PHRC in his position statement, all of which was submitted in Plaintiff's formal racial discrimination complaint filed with the Pennsylvania Human Relations Commission after the September 25 hearing in the beginning of 2020, with the case number 201 905 041.

146    The claim number assigned to Plaintiff by the City's Risk Management Claims Unit is 201908 7753.

147    In the criminal trial in January 2019, Municipal Court Case Me51LR-0029629-2019, Commonwealth of Pennsylvania v. Cannon, Chauntay, Ms. Cannon stated under oath on the record that the FHC staff told her to change the front door locks to Plaintiff's property.

148    The presiding judge at this trial stated to Ms. Cannon and her public defender attorney that he believed Plaintiff and that Plaintiff's testimony was credible.

149    It is Plaintiff's presumption that the FHC staff was an influence in the early release from prison of Chaunday Cannon from prison and without Plaintiff's knowledge and where in manipulation and influence by the commission had the sentencing trial date and the judge changed to a judge that was lenient towards Cannon, giving her no prison time below DA. sentencing guidelines.

150    Plaintiff goes on to cite the extreme duress the various city agencies engaged in systemic discrimination, enforced by illegal means. As well as the multiple disabilities evidenced by hospital records proving injuries, psychiatrist and ciinica.

therapist records that demonstrate the profound effect that public corruption and systemic racism in city agencies had on Plaintiff under a legal disability.

151    ... For example, while Plaintiff was attempting to have his disabled sister Debra returned home from out of the custody of the criminal conspirators, the PPD officers of Low allowed Plaintiff's sister to be removed illegally on a void medical power of attorney. Plaintiff had to fight against this, and they were ignorant of, and battling against a retaliatory PCFR claim. His sister died on 12/30/2011 at the hands of criminals as a result of PPD negligence.

152    The housing sexual discrimination case against Plaintiff was eventually dismissed because Ms. Cannon disappeared and failed to answer PCHR inquiries. When Plaintiff questioned Investigator Alexandria Williams about what evidence she had to uphold the fraudulent sexual discrimination complaint, which was still not settled and being held over Plaintiff's head, her response was, "It's confidential."

153    Plaintiff discovered through questioning in a call that the investigation had been dismissed and asked why he had not received notice of its dismissal. When Plaintiff stated that the entire situation had put him through sheer hell, Ms. Alexandria Williams just laughed.

154    All of the foregoing statements and testimony as to all these events are documented in Plaintiff's revised affidavit dated 6/9/20 submitted to the FHC and PCHR, outlining the fraudulent misrepresentation and fraudulent concealment.

155    ... The start of this hearing was meant to embarrass and humiliate Plaintiff using Jim Crow racist bullying tactics to put this Black man in his place. They did not allow him to speak, denying his 1st and 14th Amendment rights.

156    Plaintiff is aware it took legal prowess to conduct the hearing in such a manner as to make it appear legal when, in fact, it was egregious and in violation of the rule of law. They engaged in ex parte communication, making all rulings from this hearing null and void, ab abinitio ultra vires.

157    Plaintiff, in regard to the September 25, 2019, called the FHC STAFF Ms. Kahlilah Skipper a few days after the hearing and questioned Ms. Skipper about who was the commissioner who led the hearing.

158    **142.** Ms. Skipper lied to Plaintiff about the identity of the Lead Commissioner by stating that the commissioner was David Rammler. Plaintiff discovered the true identity of the Lead Commissioner when he finally got the hearing transcript later in March of 2019.

159    During the same month, Plaintiff discovered the true identity of this Commissioner, who was John Anthony Lewis Jr. Ms. Skipper chose to engage in deceit, deception, and concealment of this man's true identity.

160    The individual who headed and led that hearing was Anthony Lewis Jr., a Black man. Skipper intended to shield him by making up a fictitious name of David Rammler and falsely indicating the FHC Chairperson David Rammler, Esq. In plain fact, Anthony Lewis Jr. and Chairperson David Rammler, Esq. are longtime colleagues.

161    In Plaintiff's conversation with Skipper, Plaintiff asked Skipper to spell the real Commissioner's name, and Skipper stated, "It's spelled RANNLEY." Skipper also added, "I should know, I work with him every day." Rep II FHC employees felt extorted, and Black women felt comfortable naming her white boss as the perpetrator of a federal crime, obstruction of justice.

162    It is Plaintiff's presumption, no doubt in Plaintiff's mind of any person of intelligence, that it took legal prowess, cunning, and experience that the upper management of the FHC, including Mr. Anthony Lewis Jr., David Rammler, Esq., Rammler, Baez, Chairperson, and Juaz Baez, Esq. have for the hearing to be conducted in that way, and there is.

163    The upper management's knowledge of their actions with Rue Landau at the helm is equally guilty of bias, racial discrimination, racially discriminatory tactics, and conspiracy in violation of Title 18, Section 242, and Title 18, Section 241, in regards to Plaintiff's constitutional rights.

164    The FHC is the proximate cause of the bodily injuries the Plaintiff suffered in a second violent assault by the original complainant Patricia Cannon, who sought complaint and her brother Christopher Simmons on the record in the Risk Management Claims Unit in police reports.

165    The Pennsylvania Human Relations Commission issued to Plaintiff a request form, whereby he could request in a formal request for a hearing from the Office of Appeals because the Commission states in their decision that Plaintiff's discrimination complaint was untimely.
The Plaintiff responded with his request for a hearing in a timely manner on 8/13/21, and in the Plaintiff elaborated on the systemic racism in various city entities in which his rights were violated, and that he sought label excitement on all matters.

166    As a result of Plaintiff's request for a hearing from the Office of PARC, the request was denied, and Plaintiff was issued a right to sue letter after dismissal due to their claimed untimeliness.

167    In response, Plaintiff submitted documents with testimony and verified unsworn testimony. Plaintiff expressed his belief that the PHRC Commission dismissed the case against the City of Philadelphia erroneously. He stated the following grounds in verified unsworn testimony:

168    . Plaintiff invoked the Doctrine of Equitable Tolling due to genuine misrepresentation and fraudulent concealment of the identity of the city employer, which were, in fact, the cause of his physical and psychological injuries and trauma.

169    The above sworn statements are elaborated in the Plaintiff's first submitted affidavit regarding discrimination, corruption, and corrupted hearing proceedings in which Plaintiff's constitutional rights to an impartial hearing were denied. This affidavit was submitted on 5/26/20.

170    This document, as well as the formal demand letter, was sent by certified mail with a return receipt request to Executive Director MB Rue Landau, and it specified that all evidence in this case was to be preserved.

171    Plaintiff had to construct a revised affidavit with a formal retraction of Chairperson David Rammler, Esq., as the employee who led the September 25, 2019 hearing because he was lied to by officer of the court Kahlila Skipper.

172    Plaintiff avers, as he did in his two prior submitted affidavits on the record, that each implicated party engaged in the enforcement of racial discrimination, bias, and interference in a judicial proceeding, as elaborated in newly submitted affidavits to Divisional Deputy City Solicitor Mr. Christopher Ryder, Esq., who needs to stand on the court.

173    The Plaintiff has in his possession the recorded message statement to accuser the former director of the FHC Commission, which is irrefutable evidence of the fraudulent misrepresentation and fraudulent concealment engaged in by FHC staff Ms. Kahlila Skipper with the full knowledge of FHC.

174    When Plaintiff researched FHC staff website, he discovered Ms. Skipper named as one of the hearing commissioners. David Rammler, Esq., is a white man.

175    Plaintiff avers that the FHC and PHRC staff collectively conspired to retaliate against Plaintiff using Jim Crow vilification and criminalization of blacks, now they considered inferior and unintelligent.

176    Both commissions failed, and the City of Philadelphia, the defendant in this case, jailed to prevent his movement, not just the FHC and PCHR, but also the Police Internal Affairs.

177    The Philadelphia Human Relations Commission, along with its investigator Alexandria Williams, harassed Plaintiff even after a court order issued on November 17th, 2019, stated that no one on behalf of Chauntay Cannon could have any communication with the Plaintiff, victim Michael Gibson, which the commission violated.

178    On or around October 5th, 2019, Plaintiff contacted the Office of the Inspector General (OIG) by written correspondence in the form of a letter to their Chief

*179*  Investigator, Mr. Khalid Taggart, after a lengthy phone conversation in which Plaintiff stated he was subjected to racial discrimination in which his constitutional rights were violated by way of criminal acts, conspiracy, fraud on the court by officers of the court, and deprivation of Plaintiff's due process rights.

*180*  Plaintiff was told to send in information, and Plaintiff did just that. He sent an affidavit with sworn testimony and the identifying documents to back up his statement.

*181*  . This investigator, after receiving the documents, stated he saw nothing and found no wrongdoing by the FHC or PCHR staff.

*182*  Plaintiff met with an FBI agent at the federal building and provided information in his sworn testimony affidavit submitted not just to the Office of the Inspector General (OIG) but also to the FHC Commission Director itself in Plaintiff's response position statement. In the 63 pages of evidence, their engagement in public corruption and enforcement of systemic racism against a person of color which they did under the color of law.

*183*  Risk Management, as well as Chief Deputy City Solicitor Anne Taylor in the Civil Rights Unit of the Law Department, has Plaintiff's verified unsworn testimony regarding Mr. Anthony De Santez's fraudulent misrepresentation, fraudulent concealment, and spoliation of evidence recording proving public corruption and discrimination by the FHC and city employees.

184   Both Commissioners failed and the City of Philadelphia, the defendant in this case, failed to prevent this harassment of the Plaintiff, but also failed to prevent the harassment by Police Internal Affairs and, most recently, by 22nd District P/O Ezekiel Cortes, who violently assaulted Plaintiff right in the lobby of the 22nd District Police Station in front of three white citizens filing a report, stating, "Can't you see I'm waiting on them?"

185   This violent, racist attack took place on September 23, 2023, when Plaintiff was exerting his right to find out why they, the reporting officer, Corporal Brooks, failed to send Central Detectives the Plaintiff's report of the three attorneys that engaged in felony embezzlement of Plaintiff's $2,000.00 in drafting his 1983 Discrimination Complaint, which they criminally conspired with the defendant, the City of Philadelphia.

186   This attack on the Plaintiff's person was not only racial discrimination, but retaliation on Plaintiff for victim witness statements to authorities regarding corruption at his district and at Police Internal Affairs, in which Plaintiff contacted the District Attorney's Office Head of Special Investigations, Lyandra Retacco, and gave the ADA additional information.

187   The attack occurred during the time Plaintiff was going through the excruciating task of redirecting this complaint, the three attorneys criminally sabotaged to prevent Plaintiff from testifying in this Federal Court and have the complaint dismissed.

188   The 22nd Police District, its officers, namely Corporal Brooks, refused to give Central Detective the complaint on those lawyers who are colluding with the City and repeatedly lying to Plaintiff, shielding these attorneys who have engaged in the obstruction of justice., victim witness tampering.

## FACTUAL BACKGROUND

### October 2019 Philadelphia OIG Incident

189   Plaintiff hereby incorporates the prior and subsequent paragraphs of this complaint though fully set forth at length.

190   On or around October 5, 2019, Plaintiff contacted the OIG by written correspondence in the form of a letter to Deputy Office of Inspector General Kalid Taggert after a telephone conversation in which Plaintiff stated he was subjected to racial discrimination in which his constitutional rights were violated by way of criminal acts of conspiracy, fraud on the court by officers of the court, deprivation of Plaintiff's due process rights under the color of law.

191   The Plaintiff was told to send information, and Plaintiff did just that and sent an affidavit with sworn testimony and evidentiary documents to back up his statements regarding the FHC and PCHR.

192.   This investigator, after having received documents, stated he saw nothing, no wrongdoing by FHC or PCHR staff regarding irrefutable evidence of wrongdoing, and criminal acts of deprivation of Plaintiff's rights in 140 pages of evidentiary documents.

193.   Plaintiff, on February 7, 2023, submitted a claim against the OIG due to finding out this agency had engaged in the overt act of continued conspiracy to obstruct justice in a forthcoming judicial proceeding by destruction and spoilation of irrefutable evidence of the conspiracy, fraudulent misrepresentation and fraudulent concealment of wrongdoing by FHC officers of the court as previously named, elaborated in foregoing paragraphs.

194.   This claim document of ten (10) pages contained verified unsworn testimony by Plaintiff of the two employees OIG Alexander DeSantis and Deputy OIG Kalid Taggert involved. A police DC number of this incident was given to police DC #23-22-00531 and given to City Solicitor Diana Cortes.

195.   This report states that employee consultant retired FBI Special Agent Jim (Henry J.) Sweeney is a witness. Plaintiff left evidentiary recordings proving fraud three times on the OIG messaging unit and three times it was destroyed.

196.   Mr. Anthony DeSantis, OIG of Philadelphia, states he and his agency were not going to address or investigate Plaintiff's complaint of public corruption and fraud by these two city agencies, which is stated in the objective of the Philadelphia Office of Inspector and is in their mission statement.

197.   Mr. DeSantis engaged in fraudulent misrepresentation and concealment when he lied to Plaintiff he would be turning Plaintiff's sworn testimony and evidentiary documents over to Josh Shapiro's Office of the Attorney General when he did not.

198.   The Plaintiff submitted a claim against this agency to Risk Management and to the Law Department City Solicitor, Mr. Anne Taylor, regarding the above allegations and the intentional destruction of evidence, electronic communications, phone recorded message proving criminal conspiracy by FHC staff in violation of [_____].

199.   Plaintiff, during his interaction with the OIG, Plaintiff spoke to Investigator Mr. William Washington to confirm what Mr. DeSantis stated days prior in a previous conversation to Plaintiff, that he reported Plaintiff's allegations and evidentiary documents and testimony to the U.S. Attorney General, which he knew was a lie. Mr. Washington stated DeSantis reported Plaintiff's allegations off the record.

200.   The only person, employee, in that office that Plaintiff felt was honest and not guarded in their statements or actions was Investigator William J. Sweeney.

201. The Plaintiff researched Mr. Sweeney's professional experience and found out Mr. Sweeney is retired FBI.

202 Mr. Sweeney is a witness that Plaintiff left the recording three (3) times.

203. Plaintiff advised Mr. DeSantis of his obligation to report knowledge of federal crimes to authorities under criminal statute [mis prison] of felony.

204 Mr. DeSantis, after this conversation, asked Plaintiff to leave it again. The right-to-know officer, Derick Riker, abruptly left this agency after Plaintiff requested documents and evidence they were obligated to maintain.

205 The Plaintiff got a response from the Law Department's right-to-know officer, Ferge Grundman. It could not find Plaintiff's first demand letter. Request on the [regard].

206 OIG staff employees were aware they were obligated to maintain evidence as this stipulation was clearly stated in the Plaintiff's formal demand letter to the City's FHC and PCHR addressed to the Executive Director of both agencies, Ms. Rue Landau.

207. The deliberate erasure of the phone recording, which is spoilation, is continued conspiracy, an overt act in the City's conspiracy to shield its employees from prosecution and being held accountable for racial discrimination and civil rights violations.

208 This evidentiary recording voice message was left on their OIG phone recorder three (3) different times because Secretary Asley and Investigator William Washington and Mr. DeSantis said they did not have the recordings of which Plaintiff maintained a copy of that message, which proves fraudulent misrepresentation, concealment,

209 All three (3) of these employees engaged in a coverup in ongoing conspiracy to achieve their goal of making Plaintiff's allegations disappear.

210 Plaintiff's irrefutable evidence of this conspiracy can be proved beyond a reasonable doubt because Plaintiff called this agency at 7:00 a.m. when thought no one was there so he could leave the evidentiary recording on their answering machine.

211 Plaintiff was surprised when he was greeted by Investigator William J. Sweeney whom Plaintiff had spoken to numerous times before and Mr. Sweeney stated, "Michael, I will hang up, and then you can leave the recording." Plaintiff did just that.

212 The OIG of Philadelphia, Mr. Anthony DeSantis, was aware that he was supposed to retain and not destroy the evidentiary electronic communications, the voice recorded message to the Executive Director of the FHC and PCHR, the recording the Plaintiff left the day after the September 25, 2019, which Plaintiff stated was egregious, outrageous, and a failure of FHC employees, officers of the court to follow the rule of law.

The recording, which OIG Mr. DeSantis was fully aware was irrefutable evidence of the fraudulent misrepresentation and fraudulent concealment of the identity of Commissioner Anthony Lewis, Jr., which led that hearing and officer of the court, Ms. Kahilila Skipper, fraudulently misrepresented and concealed that commissioner's name when inquired by the Plaintiff causing Plaintiff to make a formal retraction of misstatement due to employee fraud. Plaintiff's Sixth and Fourteenth Amendment rights were violated by Mr. DeSantis, OIG, Deputy OIG Mr. Kalid Taggert, and the court's Wiliam Washington.

214. The Philadelphia OIG and its agents, officers of the court named herein, discriminated against the Plaintiff on a racial basis because of his ethnic origin.

215 The Plaintiff is of a protected class, a Black man, who exerted his First Amendment right to petition the City government to investigate the wrongdoing by the FHC, partnered PCHR and the Philadelphia Police Department wherein incident occurred in all three of these City agencies wherein Plaintiff's constitutional civil rights were violated.

216. The stated mission statement of the City's OIG is stated that they investigate unethical actions of City employees, which is reported to the Mayor.

217 The discrimination by the OIG took place in the form of Investigator Deputy City OIG Kr. Kalid Taggert's stating he "saw nothing" in Plaintiff's sworn testimony of police corruption by way of corrupted proceedings in the FHC – September 25, 2019, hearing in which Plaintiff's numerous constitutional rights were violated.

218 The discriminating factors which prove discrimination on their part were the deliberate destruction of evidence, phone message, which proved Kahilila Skipper lied to Plaintiff, hiding and concealing a Commissioner's identity to make Plaintiff appear dishonest, not credible, and confused as to their disparate treatment of a pro se litigant because of his skin color.

219 The Spoilation of evidence which Mr. DeSantis was aware was vital, was elaborated in the postmarked demand letter to the Director Rue Landau, that evidence was to be verified in this PHRC case against the FHC and PCHR commissions.

220 The discriminatory practice engaged by the Philadelphia OIG was intentional destruction of evidence and Mr. DeSantis's fraudulent misrepresentation that he forwarded all relevant testimony and evidence to the U.S. Attorney General's Office, which he knew was a lie.

221 These violations of Plaintiff's civil rights were elaborated and spelled in detail in a formal demand letter to the FHC Executive Director, Rue Landau, as well as in two affidavits by Plaintiff, who was litigant pro se per in prior stated housing discrimination case lodged against him.

Mr. Taggert's first response was he saw nothing in Plaintiff's sworn testimony, which was, in essence, turning a blind eye to public corruption in an agency housed in the same building as the OIG at 601 Walnut Street.

223   Mr. Taggert's actions, and that of his superior OIG., Mr. Anthony DeSantis, exhibited reckless disregard for what happened to Plaintiff, if as a result of corrupted proceedings in the FHC, as elaborated in length in prior paragraphs, which Plaintiff realleges.

224   Plaintiff was given mixed messages as to whether they would investigate, but later, the OIG confirmed they would not investigate, and Mr. DeSantis sent Plaintiff a letter stating he should get a private attorney who could advocate for him.

225   Plaintiff, after numerous efforts to seek justice by having them look into the facts of those incidents, which caused Plaintiff serious bodily injury as a result of FHC wrongdoing, Plaintiff requested OIG; Mr. DeSantis to forward the critical information and irrefutable evidence in the form of sworn testimony, electronic communication, phone message to the FHC Director

226   It irrefutably proved racial discrimination toward Plaintiff and fraudulent misrepresentation and fraudulent concealment by FHC officers of the court who breached their oath of office and engaged in the overt act of coverup of their obstructing justice and violating Plaintiff's right

227   As a result of this misrepresentation by the OIG, Plaintiff's statements on this revised affidavit labeled victim witness whistleblower on public corruption in agencies of the City of Philadelphia, which went to Deputy City Solicitor Christopher Ryder, addressed to him, and Mayor James Kenney, was now inaccurate because of the lie told.

228   Plaintiff states in the revised affidavit that Mr. DeSantis assured Plaintiff that he forwarded that information to the U.S. Attorney General. Exhibit: formal demand letter to Executive Director Rue Landau and revised affidavit in the possession of Chief Deputy Solicitor Anne Taylor.

229   The two government         which were involved in turning a blind eye to wrongdoing by municipal employees are Deputy OIG Kalid Taggert and OIG Mr. Anthony DeSantis

230   In regard to the racial discrimination Plaintiff endured from the OIG, and therein named above agents, Plaintiff experienced disparate treatment from these two City employees because Plaintiff was made to feel he was not entitled to rights and privileges a white citizen of this City and Commonwealth is entitled to. Plaintiff was blatantly told a lie by a public official in the top position in an investigative agency this City runs, and this kind of behavior for a person in such a high position exhibits

33

lack of credibility, honor, and trust, which each and every citizen of this City and nation is entitled to as a citizen of these United States.

231 .  The Plaintiff degree conferred on him by this State of Pennsylvania states that Michael Gibson is entitled to all the rights and privileges of this State and this OIG agency and named within employee have deprived Plaintiff of the rights he is entitled to, not racist Jim Crow deprivation of rights under the color of law.

232  What these two clearly untrustworthy government actors, City employees bound by oath to uphold their duties in office respectfully with integrity, accountability, showed no integrity, honesty, and are not deserving of any position of trust for Philadelphia citizens because they have displayed none to an elderly citizen of color with multiple disabilities.

233  Plaintiff came to them seeking assistance in a dire matter and they treated Plaintiff as though he was less than a man of no worth or entitlement to his constitutional right of procedural due process or his First Amendment right to petition the government to investigate a serious criminal matter. State and Federal laws were broken in violation of having knowledge of and concealing crimes by other City employees and not reporting it to some government official, law enforcement, as was stated by OIG DeSantis to deceive the Plaintiff.

234  The way the public officials of the Philadelphia OIG named in prior paragraphs was disparate racially biased treatment of Plaintiff and but for this racially biased treatment in violation of the § 1983 of the 1866 Civil Rights Act, Plaintiff would not have suffered harm and therefore Plaintiff is entitled to remedy, money damages.

## FACTUAL BACKGROUND

### September 2023 PLD Incident

235.  Plaintiff hereby incorporates the prior and subsequent paragraphs of this complaint as though fully set forth at length. On or about September 10, 2022, Plaintiff, in regard to the racial discrimination, harassment, and violation of Plaintiff's civil rights in the September 25, 2019, housing discrimination case filed against him, which was fraudulent by the complainant, Plaintiff filed this complaint with the PHRC June 26, 2020, against the FHC and PCHR.

236  Plaintiff's Fifth Amendment deprivation of property, Sixth Amendment right to defend himself against a fraudulent claim was denied as well as an impartial trier of facts, and Plaintiff's Fourteenth Amendment right to due process as a pro se litigant was denied. Plaintiff continually attempted to negotiate an amicable global settlement for numerous injustices and violations of his constitutional civil rights but was continually stonewalled by City solicitors in the Law Department and deceived by fraudulent misrepresentation and concealment.

237  The Plaintiff's request for a hearing elaborated the discrimination, civil rights violations that he, the Plaintiff had to endure from various City of Philadelphia entities, wherein documented court evidence, court trial transcripts, Plaintiff's accepted finding of facts, and conclusion of law from this 2017 probate court will contest trial pointed out civil violations of the rule of law Plaintiff endured during a two-year court battle defending his late mother's estate 925 of 2015.

238  The Plaintiff elaborated in this document that his complaint against the FHC and the PCHR was well within the 300-day time allowed to file against entities that violated the City Title VII Fair Practices Discrimination Ordinance.

239  The Plaintiff recognizing that he needed to address the deprivation of rights by the Philadelphia Police Department in prior incident in which he was assaulted, falsely imprisoned, where excessive force was used on him by eight police officers he summoned through a 911 call to stop the abduction of his bedridden, incapacitated, special needs sister, Debra Gibson, who was under 24-hour nursing care.

240  The Law Department City Solicitors officers of the court racially discriminated against Plaintiff, denying they received the Plaintiff's claims of injustices by both the Police Department and the Philadelphia FHC, PCHR, which was elaborated in six (6) affidavits submitted to Deputy City Solicitor, Mr. Christopher Ryder, who was in charge of Plaintiff's case against the City.

241  City Solicitor, Ryder, Esq., who was in the Employment and Labor unit of the Law Department, left employment thereafter Plaintiff gave him irrefutable evidence of obstruction of justice, conspiracy engaged in by City employees officer of the court.

242  The Deputy City Solicitor, Mr. Christopher Ryder, after having received this document and numerous evidence, including electronic communications recordings that were intentionally destroyed to cover up conspiracy by the FHC to deprive Plaintiff's rights, this Law Department attorney left the Law Department abruptly, and Plaintiff was not notified by anyone in the Law Department.

243  The Plaintiff's formal demand letter addressed to both Mr. Ryder and Mayor James Kenney was illegally intercepted, which is obstruction of correspondence.

244  The Plaintiff was continually stonewalled, not given information by Law, who had those documents, and as a result, Plaintiff had to reconstruct a formal demand letter to City Solicitor Diana Cortes.

245  Plaintiff repeatedly inquired from Law Department City Solicitor, Mr. Craig Straw, City Solicitor Andrew Richman, as to who had his testimony, demand letter, and evidentiary documents wherein the six affidavits were titled testimony, victim, witness, whistleblower on racial discrimination, public corruption, and civil rights

violations of Plaintiff rights under the color of law within the Common Pleas Court, the FHC, PCHR, and the Philadelphia Police Department's 22nd District.

246  Plaintiff was repeatedly ignored in unreturned phone calls and when Plaintiff reached Deputy City Solicitor Frank Wehr, he was given misinformation as to who was predecessor to Deputy City Solicitor Christopher Ryder who abruptly left his position with the Law Department rather than submit the irrefutable evidence of public corruption and the commission of federal crimes engaged in by City employees.

247  The package Plaintiff sent by certified mail to Mr. Ryder and the Mayor, due to previous illegal interception of U.S. Mail, emails, and documents with testimony sent to District Attorney Larry Krasner of state and federal violation of the law, which included police misconduct.

248  The Law Department received this package on the 15th of September, which was verified by federal postal inspectors, received at the 1515 Arch Street address.

249  This package contained six (6) affidavits of sworn testimony along with averments interrogatories to be answered by the defendants in accordance with law, and ninety-two (92) pages of evidentiary documents.

250  Plaintiff again contacted Chief City Solicitor Craig Straw, who was also a District Court Magistrate Judge, which Plaintiff later discovered.

251  After numerous inquiries as to the location of the documents with no success, Plaintiff informed Deputy City Solicitor that he was filing a police report and going to the FBI, which Plaintiff did on the 30th of September when the Law Department officers of the court refused to give him answers. This occurred from the date the Law Department received those documents, the 15th of September until the 30th of September.

252  The FBI told Plaintiff to follow up with the Police Department and the District Attorney's Office. That evening, Frank Wehr, who was aware Plaintiff was filing complaints, called that September day while Plaintiff was at the Federal Building

253  Deputy City Solicitor Frank Wehr gave Plaintiff incorrect information that claims unit personnel, Ruby Urroz, was the adjustor in Plaintiff's case since Ryder left, and that he had no knowledge of the package sent to the Law Department by certified mail.

254  Plaintiff then contacted Chief City Solicitor, Mr. Craig Straw, and inquired who had these very important documents with evidence, medical records, psychiatrist and therapist clinical records, as well as pictures of injuries to Plaintiff's arms inflicted by a police officer who illegally restrained, with excessive force, which was false imprisonment in his own home, along with the other seven ( ) police officers, the

reporting two officers concealed in their fraudulent report of the February 20, 2015, incident at Plaintiff's home.

255. On the 25th of September, Plaintiff called City Solicitor Craig Straw. Mr. Straw then informed him that Ms. Nicole Morris had the documents. He later recanted and stated City Solicitor, Ms. Anne Taylor, has documents. Plaintiff called Ms. Nicole Morris at least nine (9) times and got no response, and that is why Plaintiff proceeded with going to the FBI regarding what Plaintiff considered victim witness evidence tampering and interfering in evidence to be presented in a federal judicial proceeding.

256. The Plaintiff contacted the City Solicitor Respondent Supervisor, Ms. Diane Cortes, in an email detailing the fraudulent misrepresentation and concealment by her Law Department staff.

257. The next time Plaintiff called Nicole Morris, Ms. Nicole Morris finally answered, and falsely stated Plaintiff had spoken to Ms. Cortes about this matter, and when Plaintiff stated that Craig Straw stated she had the package, Ms. Morris stated Mr. Straw was now gone and that she did not have to be questioned this way. Plaintiff was only exercising his right to find out the whereabouts of vital documentary evidence which took him months to compile for evidence and exhibits in a federal judicial proceeding.

258. Before Deputy City Solicitor Christopher Ryder left the Law Department, Mr. Ryder acknowledged in the City's motion to dismiss Plaintiff's complaint brought under PHRA, stated the City accepted the facts as pled by the Plaintiff, but they were untimely, Mr. Ryder omitting numerous overt acts of continued conspiracy. Exhibit: Motion to Dismiss.

259. Mr. Ryder stated the City does not preclude Plaintiff from seeking redress for allegations of criminality and/or constitutional rights violation by City agencies.

260. Shortly thereafter, Mr. Ryder's employment with the Law Department was terminated and Plaintiff was not notified.

261. Plaintiff, with the misrepresentation as to who was his predecessor, Plaintiff had to reconstruct the formal demand letter to City Solicitor Ms. Diana Cortes and Mayor James Kenney as it was Plaintiff's presumption the first correspondence to Ryder and the Mayor was illegally concealed.

262. Plaintiff then contacted the City Controller's investigator, Mr. Joseph Purell, filed complaint and contacted the Mayor's Office of Black Male Engagement Director to inquire if the Law Department ever sent the correspondence to the Mayor with evidence of public misconduct and their aiding and abetting in the abduction of Plaintiff's special needs sister, Debra Gibson, and the coverup by the Police Department.

263    The Plaintiff responded to Law Department's Deputy City Solicitor Christopher Ryder, City's motion for dismissal with a 33-page formal request for a hearing with the PHRC Office of Appeal dated August 13, 2021, and in these evidentiary documents is verified unsworn testimony regarding public corruption violations of state and federal laws by City employees, officers of the court, racial discrimination coupled with numerous civil rights violations as is stated against a protected class person victim witness and whistleblower on public corruption within agencies of the City of Philadelphia and within the First Judicial Court of Common Pleas, elaborated in full.

264    This Deputy City Solicitor, Mr. Ryder, was fully cognizant that the FHC Administrative Staff Director, Rue Landeau, Esq., Mgr. Rosemary Brannig; David Rammler, Esq.; all four triers of fact: Juan Baez, Esq.; Anthony Lewis, Jr.; Darlene Butler; Rep II Kahilila Skipper, who did the swearing-in at hearing, engaged in conspiracy, overt acts to cover up obstruction of justice in the depravation of Plaintiff's First Amendment rights and his Fourteenth Amendment due process right.

265    In that motion to dismiss Plaintiff's complaint, City Solicitor Ryder stated the City accepts the facts as pled by Plaintiff when he and all others who collaborated in concealing Kahilila Skipper's fraudulent misrepresentation and fraudulent concealment of the true identity of the commissioner that emboldened the complainant Chauntay Cannon to violently assault Plaintiff with a weapon upon which she was incarcerated to prison.

266    This Officer of the Court knew that Plaintiff named other person, David Rammler, Esq., as the commissioner that domineered that September 25, 2019, hearing, and he and other named co-conspirators kept up their overt act of ongoing conspiracy, making Plaintiff look like a liar, naming David Rammler as one of the commissioners.

267    Plaintiff did not find out the deception until after exhaustive attempts to gain access to the hearing transcript which he was only able to accomplish some six months later, from U.S. Legal Support.

268    Deputy City Solicitor, Frank Wehr, stated he only received one package which contained release of medical information and hospital reports on injuries to Plaintiff released to Deputy City Solicitor Christopher Ryder, and the Mayor. Frank Wehr lied about not having documents.

269    These documents were evidence of police excessive force, exposure to extreme cold by restraint of Plaintiff by a police officer, while they allowed the reckless endangerment to both Plaintiff's life as well as his disabled, incapacitated sister, Debra Gibson, taken out of hospital bed under twenty-four-hour nursing care.

270    Explained in detail in both the affidavit to the Law Department, and in verified sworn testimony to Police Commissioner Outlaw in response to IAD's sham investigation

38

into the facts exhibit correspondence to Police Commissioner – 22 pages of verified unsworn testimony of police misconduct, retaliation.

Frank Wehr stated on September 30, he found the package in a phone message he left on Plaintiff's phone and stated, "What do you want me to do with it?" when this correspondence was U.S. Mail addressed to both Mr. Ryder, Esq. and the Mayor.

272    Frank Wehr stated he did not know criminal law to Plaintiff, and it is Plaintiff's presumption that he, as successor to Ryder, had that package, which went to the Employment and Labor Unit under the supervision of City Solicitor Nicole Morris as Chief Deputy City Solicitor Craig Straw stated.

273.    Plaintiff has the evidence and Frank Wehr was in possession of both packages because he wrote in red ink, when he returned the documents, which were supposed to go to Mayor Kenney and Ryder, which was obstruction of correspondence and mail theft.

274    The main package had been opened and the package had claims written on it in the same red ink as the only package he stated he received.

275    The Plaintiff's package was addressed to Law Department Deputy City Solicitor Ryder. It is Plaintiff's presumption Frank Wehr wrote on the main package in red ink, same as the first package Claims Unit, and Claims Unit Supervisor, Ms. Kia Avery, stated they did not have the package and if they did, they would not retain documents regarding criminal or public corruption, discrimination, and civil rights violations. With Plaintiff not having copies of all the evidence Plaintiff submitted to the Law Department, he was at a disadvantage by their denial of receipt of the evidence which delayed the Plaintiff from having all the evidence he needed to present to an attorney to draft his Federal USC 1983 Pro Se complaint.

276    These actions by the Law Department delayed the Plaintiff's preparation for filing by months, as did the fraudulent misrepresentation and concealment of material facts by City Employee regarding the FHC hearing of September 25, 2019, which resulted in violation of Plaintiff's First Amendment rights by retaliation for exposing deprivation of Plaintiff's procedural due process rights.

277    Ms. Anne Taylor, Chief Deputy City Solicitor of the Civil Rights Unit, breached the fiduciary duty to the Plaintiff in ignoring numerous calls and emails regarding the return of the original documents which Taylor returned months later on December 15, 2022, delaying Plaintiff having all evidence to have attorney draft complaint.

278    City of Philadelphia Law Department employees that are City Solicitors, officers of the court, have engaged in concealment and omission of critical evidence in these numerous attempts to suppress Plaintiff's evidence and prevent Plaintiff from overcoming any of their motions to dismiss Plaintiff claim and prevent him from testifying against city officials in high positions that have engaged in practices of

upholding systemic structural ethnic racism against a protected class person of color, which District Attorney Larry Krasner recently outlined in his DAO Racial Injustice Report 2023.

279. The Plaintiff had to completely redraft his Pro Se 1983 Civil Rights Complaint due to intentional sabotage of this complaint to have it not survive a motion for dismissal in a conspiracy and collaboration with the defendant, the City of Philadelphia, by the law firm of Faye Riva Cohen, Attorney at Law.

280. Faye Riva Cohen, Esq., along with her two hired associate attorneys, engaged in victim witness evidence tampering and Attorney Cohen threatened Plaintiff when he refused to sign an agreement to pay additional fees which was extortion.

281 This attorney had a new attorney who had only two years' experience work on the drafting of Plaintiff's complaint when Plaintiff agreed to use her services because she, Cohen, has decades of law experience.

282 Cohen, after Plaintiff agreed to let her draft his complaint, hired a new associate attorney, whose name is Matthew Smith, and Cohen stated this attorney was working on drafting of the complaint. Plaintiff spoke with this attorney and found out he had been an Assistant District Attorney for the State of Delaware. Mr. Smith stated that he had given Ms. Cohen important information he placed in the structure of the complaint as to STOP Them to evade liability.

283 The Plaintiff researched Mr. Smith's background and he was an experienced ADA that had handled many cases in the District Attorney's Office of Delaware.

284 This attorney Cohen deliberately induced Plaintiff into a contract stating, "I don't like that woman," referring to the FHC defendant, Director Rue Landau, when in fact, she, Cohen, colluded and collaborated with the defendant, the City of Philadelphia, and named defendants involved, both Cohen and Landau, are Jewish. Attorney Cohen agreed to have the drafted complaint completed with all the defendant's City employees involved, their fraudulent concealment and fraudulent misrepresentation Plaintiff named as to prevent the defendant from claiming the statute of limitations.

285 Former District Attorney Smith stated to Plaintiff, "You are going up against some very powerful people, and "they will attempt to use loopholes to evade liability."

286 The next time I called this attorney on March 25 for the suppressed completed delayed complaint, Mr. Smith said Ms. Cohen was not going to be able to meet with me and the meeting was delayed until two weeks later.

287 Two weeks later, when Plaintiff arrived at Cohen's office for the drafted complaint, which Plaintiff expected to be completed because Plaintiff was turning over evidence as well as complaint over to the DA's Office Special Investigations because other City agencies that were engaged in public corruption and racial discrimination whenever

40

Plaintiff's constitutional rights were violated, Cohen threatened and intimidated Plaintiff at this meeting, ordering Plaintiff To siTdown, when he was sitting

288  At this meeting, Plaintiff asked attorney Cohen where the attorney Smith was she had working on his complaint and Cohen stated he was no longer with her law firm.

289  That day, March 26, Cohen had a new attorney sitting beside her. His name was Osama Samid, who had only two years' experience and Cohen allowed this attorney to draft my complaint, leaving out the important input of former ADA Matthew Smith.

290  The City of Philadelphia, former employee Landau, one of the defendants in this case, Cohen did not even name and purposely delayed the drafting of Plaintiff's complaint until Rue Landau, who is employed with the Philadelphia Bar Association, ran for Council-at-Large for Philadelphia City Council. All three attorneys, Faye Riva Cohen, Osama Samid, and Attorney James Cushing colluded and collaborated with the defendant, the City of Philadelphia.

291  The Plaintiff had to file two original complaints against this attorney, Faye Riva Cohen, and her two assistant attorneys, James Cushing and Osama Samid, who intentionally colluded with the City of Philadelphia by drafting a complaint they knew would not survive a motion of dismissal because they omitted vital issues, defendants, and the overt continued conspiracy, fraudulent representation and concealment engaged in by the defendants.

292  The police reports DC numbers are the first ones filed after the incident of June 22. DC# 23-09-023391, which the sergeant at the police headquarters, Sgt. Szczepkowski, 9th District failed to write a legitimate criminal incident report and denied Plaintiff's constitutional right of due process regarding a crime committed against him.

293  The second incident report, DC# 23-220052999, filed by Plaintiff on September 8, 2023. Plaintiff had to ask for Cpl. Brooks because ⋅.⋅⋅⋅⋅⋅⋅⋅⋅⋅⋅⋅⋅⋅ on the criminal complaint Plaintiff filed against Faye Riva Cohen, Esq., and two of her employed associate attorneys, Osama Samid and James Cushing.

294  The reporting of the felony, embezzlement, fraud victim witness evidence tampering, and sabotaging of the Plaintiff's 1983 complaint by Cohen and her two associate attorneys was taken by P/O Vanbrunt, Badge #7199, September 8, 2023 year

295  The Plaintiff called the DA's office regarding this matter because Plaintiff wanted to file a private criminal complaint against these attorneys and Plaintiff was informed these crimes needed to be reported to the special investigations unit, and Plaintiff also was informed that neither his reporting of felony embezzlement, conspiracy, victim witness tampering was recorded by two police officers, one at the 9th District or the report given to P/O Vanbrunt at the 22nd District.

296. Plaintiff called Cpl. Brooks at 22ⁿᵈ District, stated he needed to report crimes submitted because there was nothing in the system when the DA's office [_____].

297. The police report of the incident which was first filed by Plaintiff was DC# 23-09-02339, which a sergeant at the police headquarters, 9ᵗʰ District, Sgt. Szczepkowski, gook statements from Plaintiff, failed to write a legitimate criminal complaint without Plaintiff's name even being mentioned and it merely stated a person came in the station only for information, which was a lie.

298. Plaintiff again went to the police station, filed a report with P/O Vanbrunt, #7100, and again, this officer did not place it in the system, and he stated to the Plaintiff upon Plaintiff contacting district about the matter and the officer called Plaintiff stating he would write the report as requested by Plaintiff. This report, DC# is 23-22-052994, filed June 23, 2023.

299. Plaintiff had spoken to Cpl. Brooks numerous times prior to these incidents and the corporal was aware of the complaints the Plaintiff had against their district regarding police misconduct and the investigation by the IAD.

300. Plaintiff, as a direct result of this violent assault on his person, wherein police officer Cortes came at Plaintiff as he was walking back into the station, wherein he reached the open front door, Plaintiff stated to Cortes, "I forgot that document you gave me." and the officer met Plaintiff with excessive force with a blow to his chest, attempting to knock Plaintiff back out the front door of the station.

301. As a result, Plaintiff suffered physical and psychological injury and trauma, not wanting to leave his home due to what occurred in merely exerting his First Amendment right to petition for a criminal investigation into conspiracy by a law firm to prevent a victim witness and whistleblower on public corruption, discrimination, in which Plaintiff's numerous civil rights were violated in the Commonwealth of Pennsylvania: First, Fourth, Fourteenth Amendments violated.

302. Plaintiff had to go to Temple University Hospital Emergency Room on September 27, 2023, for treatment because he sustained injury to his chest area.

303. The Philadelphia Law Department, PLD, engaged in racial discrimination against Plaintiff by exhibiting racial bias and prejudice toward Plaintiff by numerous acts of disparate treatment.

304. This disparate treatment of Plaintiff was exhibited by repeated fraudulent misrepresentation of material facts regarding his PHRC case against the City of Philadelphia, fraudulent concealment of the inculpatory victim-witness testimony and evidentiary documents submitted to an officer of the court, the Divisional Deputy City Solicitor of the Labor and Employment Unit of the PLD Deputy City Solicitor Christopher Ryder, which he never got.

42

305    The PLD attorneys violated Plaintiff's Sixth Amendment firth to inquire what happened to the package of evidence containing six (6) affidavits of sworn testimony, which included interrogatories regarding PPD misconduct, FHC, PCHR discrimination, and involvement by numerous City of Philadelphia agencies that engaged in systemic racism and violations of a protected person, Plaintiff's rights.

## **FACTUAL BACKGROUND**

### **September 20, 2023, PPD Incident – New Matter**

306    On September 20, 2023, this incident occurred in the lobby of the 22nd District Police Station, 1747 N. 17th Street, Philadelphia, PA 19121,

Plaintiff hereby incorporates the prior and subsequent paragraphs of this complaint as thoughtfully set forth at length.

307    At the time of this incident, which allegedly occurred at approximately 3:00 p.m.. Plaintiff, a victim of felony embezzlement and conspiracy to interfere in and sabotaging of a Federal 1983 discrimination and civil rights pro se complaint by a civil rights attorney referred by the Philadelphia Bar Association, Faye Riva Cohen, Attorneys at Law. Plaintiff came into the station to inquire as to why the incident of felony fraud, embezzlement, taken by a P/O Vanbrunt was not entered into their system for referral to Central Detectives.

308    The Plaintiff had given his statements as well as brought a witness with him, a Mr. Zachary Pinkney, who witnessed the paying of this attorney of $2,000.00 and agreement have complaint completed as well as all the appropriate claims and causes of action that needed to plead to survive a motion to dismiss by the defendant, the City of Philadelphia.

309    The Plaintiff had been waiting over two hours to be seen by an officer and when it came to Plaintiff's turn to be seen, an officer by the name of Ezekial Cortes proceeded to communicate with the Plaintiff as to the reason he was there, The P/O badge number is

310    The Plaintiff is an elderly, disabled Black man of protected classes. Plaintiff explained to this officer that the incident report he gave to an Officer Vanbrunt, badge #7199 had not entered the information into the police system and that Central Detectives, Detective Brunett stated all they sent was that he had only come into the station for information, and nothing was sent referring to my claims, backed up by a witness.

311    The Plaintiff elaborated to Officer Cortes that he was a victim and witness in a case that was to go before Federal Adjudication in District Courts.

43

313    Plaintiff had already previously spoken with a Cpl. Brooks, who was aware he was a Plaintiff in a case against officers in her district for police misconduct, and IAD for retaliation against Plaintiff for the coverup of the aforementioned PPD incident, which occurred on February 20, 2015, involving police excessive force and the illegal allowing of the removal of his incapacitated sister, Debra Gibson, from his home.

314    Officer Cortes refused to give Plaintiff any information and exhibited hostility in his demeanor toward Plaintiff and gave Plaintiff a one-page document with information Plaintiff knew was not appropriate in this case.

315    This officer with no provocation, left the three white citizens, who were standing by the front glass window where he was taking their report, and started quickly approaching Plaintiff.

316    Plaintiff, at this point, was apprehensive he was a threat, when he stated angrily, "Can't you see I'm waiting on these people?" And at instant, P/O Cortes violently assaulted Plaintiff with no provocation, striking Plaintiff forcefully in the chest with both hands, knocking Plaintiff backward as if he were attempting to knock Plaintiff back outside the station's open door. Plaintiff, in pain in his chest area, walked a short distance from the station and called the station for Cpl. Brooks.

317    Cpl. Brooks stated to Plaintiff, "You've been here for several hours now, calm down and you can take these forms and fill them out with what occurred when you go home."

318    Cpl. Brooks had knowledge of the complaint Plaintiff already had against her district and Internal Affairs. Cpl. Brooks stated to Plaintiff, "Officer Cortes has a body camera on."

319    Officer Cortes assaulted Plaintiff right in front of the ATM machine in the lobby of the station where a camera is on 24 hours a day and recorded the earlier incident. The witnesses to the assault are the three white citizens Cortes stated to Plaintiff, "Can't you see I'm waiting on these people?" right before he approached and assaulted Plaintiff as he came in the station's open door. The report he took from them will reveal their identities.

320    When Plaintiff reached the station, walked in the front door. P/O Cortes, who was behind the glass window at a desk with other officers, started shouting "Get out of here," which he yelled twice.

321.    Officer Cortes did this before Cpl. Brooks had come from upper offices. The officer sitting in the office was a witness to this officer's offensive dehumanizing behavior. Upon Cpl. Brooks coming to the window, Plaintiff told Cpl. Brooks he was just violently attacked by one of her officers.

296. It is Plaintiff's presumption P/O Cortes had knowledge of Plaintiff's allegations against his district for police corruption, the involvement of eight officers, including a sergeant supervisor, Sgt. Robert Sharp, who engaged in violations of Plaintiff's rights, so this officer decided to, with full malice and racial animus to violently attack the Plaintiff in front of white citizens, he started writing up a criminal complaint for stating "Can't you see I'm waiting on them," and then attacked Plaintiff, striking him in the chest.

323. Police Officer Cortes was aware the report was seeking information on was regarding the colluding with the City by criminal conspiracy, victim witness evidence tampering by white attorneys. This violent attack on Plaintiff was a violation of Plaintiff's First and Fourteenth Amendment rights, a

324. Plaintiff called Central Detectives, spoke to Detective Burnett, to find out if the report of felony and state crimes of criminal conspiracy and victim witness evidence tampering and victim intimidation had not been forwarded to them as Plaintiff requested for investigation. It was not, contrary to Cpl. Brooks statement

## COUNT I
## RACE DISCRIMINATION IN VIOLATION OF
## SECTION 1983 OF THE 1866 CIVIL RIGHTS ACT

325. Plaintiff hereby incorporates the prior and subsequent paragraphs of this complaint as though fully set forth at length. Plaintiff incorporated paragraphs 9 through [_____] above.

326. Section 1983 of the Civil Rights Act protects racial minorities from discrimination by a government tactor and/or agency. Plaintiff, as a Black male, is a racial minority entitled to protection from discrimination under § 1983.

327. Defendant PPD Officer John Doe Emmet, Badge #3189, discriminated against Plaintiff on the basis of race when the officer used excessive force to restrain Plaintiff, playing into racial stereotypes that Black men are aggressive.

328. The defendants, all eight, the two names reporting officers and the six whose identities were fraudulently concealed and omitted, discriminated against Plaintiff by falsely imprisoning him and himself wherein Plaintiff suffered injuries.

329. The only thing Plaintiff did was object to the police aiding and abetting the perpetrators of forced entry, assault on him, and the perpetrators of criminal conspiracy to remove Plaintiff's sister, Debra Gibson, from her home without a legal court order or legitimate medical authorization.

330. The details of which are elaborated in full by Plaintiff in a 20-page verified unsworn testimony sent to, and received by Police Commissioner Daniel Outlaw in Plaintiff's

response to the Internal Affairs investigation and criminal conspiracy on behalf of the IAD investigator, Sgt. Yancer, William, Badge #8907, and co-conspirator, 22nd District Police Supervisor, Sgt. Robert Sharp and the other included police officers who engaged in a coverup of the true facts of this incident, their involvement, and identity.

332    As the result of the bias and racially discriminatory treatment, Plaintiff suffered severe physical and psychological injury and trauma, and the named officers and the concealed and omitted John Doe officers are the, in fact, cause of Plaintiff's injuries. Exhibit: Hospital Report, Psychiatric Report.

333    During the February 20, 2015, incident, all of the eight P/O's involved racially discriminated against Plaintiff by disparate treatment, exhibiting bias and prejudice in disregarding the value of the life of both the Plaintiff and his bedridden, incapacitated sister, Debra, by allowing both to be subjected to life-endangering circumstances in frigid weather conditions despite numerous pleas by Plaintiff.

334    All eight officers under the color of law owed a duty to provide equal protection under the law. The two responding officers, Gerard Brennan, Badge #6408, and PO Carolyn Young, [_____], along with six officers, breached their duties by abusing their powers, failing to listen to reason from Plaintiff because he was a Black, elderly man.

335    The P/O would not have conducted themselves in that manner if Plaintiff and his sister, Debra Gibson, were white citizens. None of the eight police officers intervened to prevent the inhumane treatment of Plaintiff being forcibly restrained or falsely imprisoned when he, a 150 elderly, disabled man, and was no threat to them or others.

336    All eight previously named officers who were functioning under the color of law failed to provide Plaintiff equal protection under the law, and in doing so, all six John Does and named reporting two officers violated Plaintiff's First Amendment right to free expression, writing, Fourth Amendment freedom from seizure of his person, and all eight officers failed to provide equal protection under the law, violating Plaintiff's Fourteenth Amendment rights.

337    The eight police officers would not have conducted themselves in that manner if Plaintiff was a white man who stated he had professional credentials in the medical and mental health field as a hospital administrative manager and a mobile psychiatric therapist and was aware they had no legitimate medical authorization or legal medical power of attorney document which was of legal power to allow the removal of Plaintiff's sister, Debra Gibson.

338    All eight officers failed to intervene to prevent the inhumane treatment of Plaintiff and his sister. The officer Emmett Ardge, Badge #3183, was aware the 149 lb. man was of no threat to him or others when he falsely imprisoned and

339 In the February 20, 2015, incident, all of the eight police officers involved racially discriminated against Plaintiff by disparate treatment in which they exhibited bias and prejudice in disregarding the value of the life of both the Plaintiff and his bedridden, incapacitated sister Debra.

340 P/O Gerard Brennan, P/O Carolyn Young, P/O Emmet, Badge # [_____], Police Officers, six (6) John Doe's whose badge numbers were previously stated in prior paragraphs, acted with willful and wanton conduct knowing their conduct could result in injury because Plaintiff pleaded and elaborated on both of their medical conditions, but Plaintiff as well as his sister was treated inhumanely as devalued persons.

341 All eight (8) officers discriminated against Plaintiff which but for their discriminatory conduct Plaintiff would not have severe physical and psychological injuries as exhibited in doctor, hospital, psychiatrist, and therapist reports documented and on the record in Common Pleas Court, PCHR, and the Law Department.

342 The Police in this incident are the in fact cause of separation of Plaintiff from a loved family member never to be seen again in life or death, causing '

343 The details of this incident were also sent to District Attorney Larry Krasner by fax three (3) times due to illegal interception of the 36-page document with verified unsworn testimony of corruption in the Common Pleas Court, and it elaborated on the abduction of Plaintiff's sister and the aiding and abetting of the eight (8) police officers in that abduction, excessive force on Plaintiff, as well as the inhumane torturous treatment of both the Plaintiff and his sister, Debra, and the police coverup and witnesses' names.

344 The documents were also emailed to DA Krasner, which were intercepted as well as the certified return receipt requested package with the details of the occurrence of state and felony crimes in his jurisdiction.

345 ADA Anthony Voci admitted he was in possession of these documents but later told Plaintiff he could not locate them, and they were never brought to DA Krasner's attention or the two first assistants to DA Krasner, Robert Listenbee and former Judge, Carolyn Temin, who Plaintiff informed numerous times of the destruction of the '

346 The aforementioned statements, testimony, allegations made by Plaintiff in previous paragraphs show the racial discrimination by the all-named and unnamed John Doe police officers, how they were in violation of the all-named civil rights amendments, rights spelled out, and violation of § 1983 of the Civil Rights Act of 1866.

347 Mrs. Bess Hackett, former retired operator for the District Attorney's Office, witnessed the Plaintiff's futile attempts to get ADAs to address the numerous twenty-five (25) police reports of harassment, assault on Plaintiff, bribery of court officials

47

with attorneys fixing Probate Court trial to take over his late mother Elsie Gibson's estate, as well as his deceased sister, Debra Gibson's estate, which they left zero dollars and did not even place a memorial on her illegally cremated remains at the hands of Mrs. Carter, the person the police allowed Plaintiff's sister, Debra, to be turned over to, as well as over to corrupt attorney, James Tyler. PPD are, in fact, cause

## DISCRIMINATION BY PPD, IAD

348    Regarding the IAD investigation, Plaintiff, upon receiving the redacted investigative report of the assigned investigative P/O Sgt. William Yancer, dated completed on January 23, 2023, Plaintiff was made cognizant of the police racial animus, blatant police perjury in depicting the Plaintiff's character, mental stability in a demeaning, defamatory manner, reminiscent of Jim Crow depictions of a Black man as a mentally unstable, confused Black man as he stated on page five of his findings. Exhibit: Unfounded IAD Report.

349    Sgt William Yancer exhibited racial hatred and hostility to vile and disturbing it was sickening to the Plaintiff and it was a direct attack on Plaintiff's honesty, integrity, and character, violating Plaintiff's First Amendment rights.

350    This entire report displays racial hatred and discrimination toward a Black man exerting his rights. The IAD report is discriminatory on the part of the investigating officer and his superiors, including George Kappe, Inspector, who approved this

351    The Plaintiff was discriminated against by the actions of police reporting officers in the February 20, 2015, incident. P/O Berard Brennan, P/O Carolyn Young, and the supervising sergeant, Sgt. Robert Sharp, who arrived on the second 911 call for help by the Plaintiff for out-of-control eight (8) officers, not two, as fraudulently represented by all three 22nd Police District officers, and the IAD sergeant, Sgt. William Yancer, who collectively discriminated in violation of Title VI and § 1983 of the Civil Rights Act, which protects racial minorities from discrimination by a governmental actor and/or agency.

352    Plaintiff, as a Black male, is a racial minority who also has multiple disabilities, is elderly, and entitled to protection from discrimination under § 1983, which he, the Plaintiff, was not afforded. There were egregious, retaliatory acts committed in the IAD report, and will be listed as an exhibit as well as the verified unsworn testimony response to that IAD finding sent and received by Police Commissioner Danielle Outlaw. Exhibit: Correspondence, Plaintiff Response and Communication

353    Racial discrimination and retaliation are self-evident in the IAD report by investigator Sergeant William Yancer, who violated Plaintiff's First Amendment right not to be subjected to falsehoods that impinge his character. Sgt. Yancer incorporated perjury in

almost every sworn statement in the IAD investigative report and finding, i.e., Plaintiff's brother, Samuel Gibson, punched Plaintiff in the chest, Plaintiff seen psychologists all over the world that can validate his belief FBI staged a sexual discrimination lawsuit against Plaintiff, implied Plaintiff takes a great deal of psychiatric medicine. Plaintiff takes none. Sgt. Yancer perjured himself.

354  The evidence this officer of the law and other City officials in high positions don't want to be exposed is the statements Plaintiff's testimony psychiatric clinical record that spells out the engagement of public corruption, systemic racism within City entities.

355  On the record at Men and Women for Human Excellence, in documents the Law Department officers of the court denied they received or had in their possession, or the formal demand letter addressed to both Deputy City Solicitor Christopher Ryder and Mayor James Kenney to be attached Exhibit.

356  Police officers at the 22nd District that were previously mentioned, and those John Doe's, the five (5) which were fraudulently concealed as participants in that incident, owed a duty of care to the Plaintiff in which all right (8) breached that duty of care with full knowledge and malice of forethought, causing the Plaintiff severe physical and psychological injury and trauma, and, therefore, the Plaintiff is entitled to compensatory and punitive damages.

357  In the September 20, 2023, incident, P/O Ezekiel Cortes racially discriminated against Plaintiff by his prejudice, bias, and disparate treatment of Plaintiff as opposed to his normal fair treatment of three (3) white complainants he was assisting in the lobby of the station at approximately 3 p.m., ignoring his duty of care to Plaintiff, which he breached.

358  As a result of his adverse treatment and tortuous assault and battery on Plaintiff at 3 p.m., by use of excessive force in a malicious outrageous way, Plaintiff suffered bodily and psychological injury, and therefore Plaintiff is entitled to compensatory and punitive damages because his actions were wanton and willful.

359  Discriminatory practices of disparate treatment of Plaintiff shows as a result of P/O Gerard Brennan, # [ 6408 ], P/O Carolyn Young, # [ 7201 ], who were both the responding officers in the February 2015 incident, along with the previously concealed and omitted involved police officers, John Doe 1, badge #2211, P/O John Doe 2, Badge # 22F, P/O John Doe 3, Badge # 3785, P/O John Doe 4, Badge # 2057, P/O John Doe 5, Emmett, Badge # 3183.

360  The responding sergeant who arrived on the second 911 emergency call, Sergeant Robert Sharp, Badge # 4531, all racially discriminated against Plaintiff in their violation of the Plaintiff's First, Fourth, Fifth, and Fourteenth Amendment rights to equal protection of the law, which they all violated under the color of law, state and federal.

361. All nine (9) 22nd District officers, number one, owed a duty to protect and serve. Number two, they breached that duty with a culpable state of mind, willful and wanton conduct, knowing their conduct could result in injury to Plaintiff.

362. The officers' conduct, false imprisonment, excessive force, threats resulted in serious injuries to Plaintiff and are, in fact, cause of Plaintiff's injuries, therefore, Plaintiff is entitled to remedy, monetary damages.

363. The cause of action against the two partnered City agencies, the FHC and the PCHR, under the directorship of Executive Director Fue Landeau, Esq., is discrimination against the Plaintiff based on race.

364. The actions of the therein-named city employees of both agencies were acting under the color of law in enforcing systemic racism in violation of Plaintiff's First and Fourteenth Amendment rights under the due process clause.

365. The Plaintiff is a person of a protected class where the above-named constitutional rights were violated under state and federal law.

366. The discrimination took place on the September 25, 2019, FHC housing discrimination hearing at 10:45 a.m. at the FHC, 601 Walnut Street, Philadelphia Pennsylvania. At that hearing, officers of the court, Kahlila Skipper, Rep II, Commissioners Anthony Lewis, Jr., Juan Baez, Esq., and Darlene Butler discriminated against the Plaintiff when they engaged in ex parte communications to defeat the Plaintiff's defenses against a fraudulent claim brought against him.

367. Each one of these named employees is equally guilty of violating Plaintiff's rights with a culpable state of mind, malice of forethought using Jin Crow vilification, degradation of a Black man exerting his First Amendment right to testify as a pro se litigant to defend himself.

368. They equally owed a duty to be fair and impartial at that hearing, they were not. Each failed to follow the rule of law as triers of the facts and were trespassers of the law, rendering any decisions they made repugnant to the constitution, null and void, ultra vires of no legal weight.

369. Each employee defendant continually concealed the fact that Ms. Kahilila lied as to who the lead commissioner was, and never revealed his true identity of John Lewis, Jr., a Black man, when in fact, Skipper stated it was David Rammler, who when researched by Plaintiff after getting the hearing transcript, is a white man, the Chairperson of the FHC, thus shielding the identity of the man that emboldened Chauntay Cannon complain to violently assault Plaintiff with a weapon.

370. As a result of the FHC staff allowing the complainant to commit perjury, they were fully knowledgeable of which they perceived Plaintiff suffered severe injury to his

person and incurred hospital bills in excess of $24,000, which the City of Philadelphia Law Department has as well as the PHRC have in documented records, Hospital records and billing to be Exhibit.

371    The racial discrimination of these two agencies is evidenced by the defendants named, acting with reckless and deliberate disregard for the Plaintiff's First Amendment and Fourteenth Amendment right to be an unbiased hearing and was intentionally humiliated and portrayed as a villainous person, likened to Jim Crow.

372    After the Plaintiff called them out on their corrupted court hearing proceedings and reported same to federal authorities, they chose to retaliate by aiding and abetting this same claimant Chauntay Cannon, after she got an early release from prison to file another fraudulent claim of housing sexual discrimination to vilify Plaintiff further.

373    This was a disparate effort on the part of that claimant not to go back to prison at her sentencing trial weeks later, which Plaintiff

374    Rosemary Brannagan, Manager of both FHC and the PCHRC Commission role in this travesty of justice is fully detailed in Plaintiff's sworn testimony affidavits, three on the FHC and PCHR commission, which Plaintiff submitted to Deputy City Solicitor Mr. Chrisopher Ryder, Esq., in response to the City's motion for dismissal for untimeliness and errors on the original PHRC discrimination complaint form, which Plaintiff corrected according to procedural law.

375    As a result of Ms. Skipper's lie, Plaintiff had to go through the painstaking task of redrafting a new city claim form with the correct parties involved, as well as a formal retraction statement eliminating David Rammler's name, which was the fictitious name Skipper gave Plaintiff when she was asked who the lead commissioner was. IT wasn't even the correct spelling of the true identity, Chairperson David Rammler, who she, Skipper, freely implicated as orchestrating that hearing as one of the hearing commissioners present that September 25, 2019, day.

376    Clearly, Rosemary Brannegan played a significant role in conspiracy with Rue Landau, Chairperson David Rammler, Esq., and the previously mentioned and named commissioners that set Plaintiff up to ambush him at that hearing whereby Plaintiff could not respond to perjury they, the commissioner, procured from claimant Chauntay Cannon.

377    The Plaintiff also had to revise his original affidavit because of the lies and deceit of Skipper and fraudulent misrepresentation and fraudulent concealment of the true material facts of this matter.

378    Plaintiff suffers from nerve damage to both of his hands and wrist due to excessive force and illegal restraint in three-degree weather as elaborated in the six affidavits submitted the Law Department denied being in possession of under the respondent

51

superior who ignored all Plaintiff's calls to her and numerous emails to her, which Cortes never responded to, which is discriminatory.

37.9 All of the writing Plaintiff has been having to do is excruciatingly painful in having had to defend himself, exert his constitutional rights, which he has been denied under the color of law by named employees of this City.

380 The discrimination of these partnered agencies under the Rue Landeau and manager of both Rosemary Brannagan was exhibited when Plaintiff went to their office to have police come write a report on their corrupted conduct, the date of which is in the submitted affidavit, and the PHRC state discrimination complaint Plaintiff submitted.

381 Rosemary Brannagan that day had, while Plaintiff sat in their office waiting for police, had employee Monica Gonzalez come out of back office and sit on the front desk in a threatening way, like she was a tough guy, threatening Plaintiff to leave.

382 Rosemary Brannagan was the manager of the PCHA, and she supervised their investigation. Alexandria Williams and FHC officers of the court, with Kahilila Skipper involved, drafted a repulsive scurrilous sexual discrimination complaint for recently released from prison Chauntay Cannon before her sentencing trial, which was a display of systemic racism and white supremacy to suppress a Black man of a protected class.

383 All named employees above discriminated against Plaintiff in breaching their fiduciary duties with intent to harm Plaintiff, distress and depression as well as anger, as exhibited in psychiatrist diagnosis, and clinical therapist clinical notes at the agency, Men and Women for Excellence, which Plaintiff sought treatment. Report to be exhibits and they are in the possession of the Law Department and PHRC, under their chairpersons appointed by the governor and commissioners.

384 All of the named employees in previous paragraphs are the proximate cause of Plaintiff's physical and psychological injury and trauma and therefore Plaintiff

385 The following FHC officers of the court discriminated in the FHC incident of 2019 September 25 FHC Discrimination hearing conducted against Rep. II Kahilila Skipper, Commissioners Anthony Lewis, Jr., who led the hearing' Commissioners Juan Baez, Esq. and Darlene Butler conducted that egregious hearing in a racially biased manner, under the color of state law, wherein each denied Plaintiff an impartial trier of fact.

386 They each engaged in using ex parte communications of information revealed by Ms. Skipper to administrative staff as well as participating commissioners, the triers of fact vital information of the Plaintiff's planned defense against the fraudulent claims, which had perjury in claimant's statements made by claimant Chauntay Cannon to the commissioners.

387  The above employees' actions occurred under the color of state law and the actions resulted in the deprivation of Plaintiff's First Amendment rights to testify on his behalf as a pro se litigant.

388  These employees failed to follow the rule of law in depriving Plaintiff of his Fourteenth Amendment right to procedural due process, thereby losing subject matter jurisdictions making that September 25, 2019 hearing null and void, ultra vires, repugnant to the constitution.

389  These employees above named violated state law and federal statutory rights and therefore caused Plaintiff harm and entitled Plaintiff to remedy as declared in the Pennsylvania Bill of Rights and the Constitution of the United States.

390  Plaintiff is a member of protected classes, and each named above defendants and their respondent superior Executive Director Rue Landau and her Chairperson, Dave Rammler, were aware Plaintiff was of a protected class.

391  These employees know why with malicious intent treated Plaintiff in a disparate way, violating rights and violated Plaintiff's First Amendment and Sixth Amendment right to defend himself while engaging in ex parte communication and conspiracy against the right of elderly, disabled, Black man under the color of law.

392  Their actions were against agency policy as well as state policy and federal and state laws of the Bill of Rights and the United States Constitution, all above-named defendants are the cause in fact, and proximate cause of Plaintiff's physical and psychological injuries and trauma.

393  But for these FHC staff and partnered agency, the Philadelphia Human Relations Commission staff, the investigator assigned Alexandria Williams and the supervising manager of both commissions, Rosemary Brannagan, Plaintiff would not be suffering through the extreme mental anguish, emotional distress, pain, and suffering Plaintiff is still enduring because of their discriminatory actions.

394  The FHC really discriminated against the Plaintiff by collectively engaging in the deprivation of Plaintiff's First and Fifth Amendment rights in commission staff, Kahilila Skipper, Rep II, Chairperson David Rammler, Chairperson and Commissioner Anthony Lewis, as well as respondent superiors who were knowledgeable of illegal action. Each participated with a culpable state of mind with intent to harm Plaintiff and criminalize Plaintiff using Jim Crow dehumanizing tactics Executive Director Rue Landau was aware of.

395  The discriminatory act of this commission was racially biased disparate treatment of Plaintiff which all named officers of the court, compelled by Ms. Kahilila Skipper's revealing of ex parte communications to upper management and they used

53

396 discriminatory bullying tactics, engaged in fraud on the court wherein each participated and was aware their conduct was unlawful.

397 This was in violation of state and federal laws, which they carried out under the color of law while executing their assigned duties, and each became trespasser of the law, making all their rulings void.

398 This commission continued this disparity of treatment in a retaliatory conspiracy to have Plaintiff charged with housing discrimination appointing Alexandria Williams as an investigator in a case against Plaintiff.

399 When the case was dismissed and Plaintiff hadn't gotten notice, and he inquired as to the disposition, Ms. Alexandria Williams remained silent, not informing Plaintiff in phone conversation and Ms. Williams just laughed in Plaintiff's face.

COUNT II
TORTIOUS ASSAULT

COUNT III
TORTIOUS BATTERY

COUNT IV
NEGLIGENCE

COUNT V
CONVERSION

COUNT VI
LIBEL

AND ALL OTHER COUNTS NAMED ON 1st PAGE
5-4

. Plaintiff prays that Defendants be held vicariously liable and be required to provide all appropriate remedies for Plaintiff's harm, ON EVERY COUNT AND rights violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that the Court grant him the following relief against Defendant:

(a)   Compensatory damages;

(b)   Punitive damages (where applicable); AS determined by JURY verdict

(c)   Liquidated damages (where applicable);

(d)   Emotional pain and suffering;

(e)   Recoverable costs;

(f)   Pre and post judgment interest;

(G)   Physical Pain AND Suffering

(H)   JURY TRIAL Demanded

Respectfully submitted,

Michael Gibson
Pro Se Plaintiff

Dated:  10/25/2023

8

## **VERIFICATION**

I, Michael Gibson, hereby verify that I am the Plaintiff in the within Complaint and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

*Michael Gibson*
Michael Gibson
Plaintiff

Date: 10/25/2023

9

This certificate is attached to a ____7____ page(s) document dealing with Michael Gibson City Solicitor Christopher Rider /entitled Michael Gibson Affidavit Demand Letter and <u>Dated 7/13/2022.</u>

# JURAT/AFFIDAVIT CERTIFICATE

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

REC'D OCT 2 6 2023

REC'D OCT 2 6 2023

On this <u>13</u><sup>th</sup> day of <u>July, 2022.</u>

Before me, the undersigned notary public, personally appeared <u>Michael Gibson</u> proved to me

through satisfactory evidence identification, which was __<u>PA DRIVED LIC</u>__

<div align="center">Type of Identification</div>

to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his /her knowledge and belief.

<div style="border:1px solid black; display:inline-block; padding:4px;">
Commonwealth of Pennsylvania - Notary Seal<br>
DOROTHY BUTLER, Notary Public<br>
Philadelphia County<br>
My Commission Expires October 23, 2025<br>
Commission Number 1321936
</div>

_Dorothy Butler_
Signature of Notary Public

_October 23, 2025_
Commission Expiration Date of Notary Public

SEAL

2

MICHAEL GIBSON
2130 N. VAN PELT ST
PHILADELPHIA, PENNSYLVANIA. 19121
PHONE: 267-370-4152

Direct E-Mail mikegibson007@gmail.com

DATE: ~~MONDAY~~ *TUESDAY Sept 19th 2022*
*M.G.*

**CERTIFIED MAIL, RETURN RECEIPT-REQUESTED**

CHRISTOPHER RIDER ESQ.
DEPUTY CITY SOLICITOR
LAW DEPARTMENT CLAIMS UNIT
DOCUMENTS ENCLOSED, INCLUDING REVISED AFFIDAVIT
*including 92 pages of Evidentiary Documents to be presented As Exhibits. M.G.*

JAMES KENNEY
MAYOR OF PHILADELPHIA
CITY OF PHILADELPHA, LAW DEPT.
1515 ARCH ST. 16TH FLOOR
PHILADELPHIA, PA. 19102

This is a Formal Demand Letter
City Claim#: 2019087753
PH RC#: 201905041

RE: MICHAEL GIBSON          V          THE CITY OF PHILADELPHA
        PLAINTIFF                                    DEFENDANT

2

3

Dear Mayor Kenney and Mr. Christopher Rider: this communication is addressed to both of you because of my Past Experiences of numerous counts of illegal interception of written and wire electronic communication & which were strictly confidential to Law Enforcement District Attorney Larry Krasner and yourself. Mayor Kenney this information VERIFIED STATEMENTS and EVIDENTIARY DOCUMENTS was IRREFUTABLE EVIDENCE of STATE AND FEDERAL CRIMES COMMITTED in this JURIDICTION UNDER THE COLOR OF LAW. This has been Public Corruption, Whereby numerous counts of witness tamper and evidence tampering as well as fraudulent Concealment and misrepresentation took place, irrefutable material fact. This has also been the case surrounding the January 20, 2015 incident of the felony home invasion and abduction by force of my special needs, incapacitated Sister Debra Gibson as well as police misconduct which (INCLUDED) aiding and abetting by eight police officers which allowed it to be carried out, with excessive force by a officer, exerting illegal restraint through aggravated assault on me an elderly disabled Black man. All of which was covered up. With fraudulent misrepresentation false police report **DC#15094** enclosed. This assault caused serious injury to me as specified in Revised Affidavit and Hospital medical reports in hand of the Defense. I managed to get Four Badge Numbers before I was approached threateningly to put down the pen. I was writing down Badge Numbers with. All of which, concealment from District Attorney Larry Krasner has been discriminatory and criminally conspired to shield Police Officers, Officers of the Court, Orphans and Probate clerks of court, City employees. All of which has been covered up by assistant District Attorneys and their Paralegals, City employees Paid by the city of Philadelphia.

I as a victim witness and whistle blower on public (Discrimination & Corruption) I Detailed all of this in revised Affidavit due to formal retractions due to Fraudulent misrepresentation and Fraudulent Concealment as Mr. Ryder has irrefutable evidence of as does Mr. Anthony De Santez O. I. G. has info and evidence involving corruption in Philadelphia FHC and PCHR Commissions which he stated and Assured me he has Forwarded Evidentiary Documents to the U.S. Attorney General. Mr. Alexander has evidentiary **Phone Messages** to DA's Office and FHC Director providing my Claims. Mayor Kenney what was done to our Sister Debra Gibson as both I and Brother Samuel Gibson agree was outrageous and unfathomable. This was the concealment of her whereabouts, death, and illegal cremation as a retaliatory act and concealment of the time of the burial of her illegally cremated remains must be addressed by your administration and Federal and local law enforcement, DA Krasner whereby despite being sent confidentially to him. State and Federal Crimes were Committed. The Police and persons in DA's

4

4    Office Criminally Conspired their cover ups, Myself and now deceased sister Debra was denied equal protection under the "Law" despite numerous pleas to the DA'S Office for help prior to my Sister's Death. Her abduction was covered up by the Police and the DA'S Office, DA Krasner was kept in the DARK regarding this and Corruption in the Orphans and Probate Courts. It is my presumption CAVEAT Hearing in Register of Wills was fixed as was Trial.

5    My sworn testimony in court records. Mayor Kenney this ordeal I have been subjected to by Entities of this City and Officials of this Jurisdiction under your Administration has devastated not only my Life but my brother Samuel B. Gibson Life as well as our children and close family members. My sister Debra Lyn was all our mother lived for and she dedicated her Life to providing the best of CARE and LOVE for Debra and other Developmentally Disabled Youth of all nationalities that lived with our family as family in our home, some of whom over 20yrs. My numerous calls to City Council President Darryl Clark and other City Council members was not (Returned) despite leaving detailed messages regarding injustices. I was ignored despite pleas for HELP in this horrible situation. Our Family has made significant contributions to this city as well as the Nation as the evidence will show. My late Father Samuel A. Gibson a former employee of John B. Kelly and Sons construction Corporation was a brilliant (Builder) and was mentored by Kelly. He Founded The First Black Cement Construction Corporation. A member of the Kelly Family resided in our home. My Brother Samuel B. Gibson was one of the first youth from Philadelphia to be nominated and graduated from the United States Air Force Academy He flew 99 Top Secret Combat Missions for our Nation. He is listed in Who's Who in America. Not only was he an accomplished executive coach he was an accomplished photographer, winner of the coveted CLIO Award with worldwide recognition

6    My Brother Samuel's Children's aunt is the former Miss America, Miss Vanessa Williams.
Their other aunt Winifred Hervey is a T.V. Emmy Award winning Executive Producer and writer who gave this country Golden Girls, the Steve Harvey Show and LL Cool J in the house.
My entire family wants justice for what was done to Debra and me and for the Criminality regarding our mother Elsie Gibson's Estate and the horrible injustices we were subjected to.

5

4

7

Mayor Kenny both you and police Commissioner Daniel Outlaw statede that the citizens of Philadelphia should be safe in their home. My sister Debra Gibson and myself was not afforded that right and what was done to us was coved up by both the Police Department and the DA's Office. District Attorney Krasner vowed he would not allow violation of Citizen's Rights.

8

I am submitting additional Documents which are Evidentiary and Exhibits to be used in court Filings, some of which are already in the Court records of Probate, Orphans Court and the Department of Wills. Exhibits are in Records. I have already submitted a Demand Letter regarding Demand for settlement RE: The FHC and the PCHR. I have submitted additional claim forms RE: City Employees of the Orphans and Probate Court. The Philadelphia Police Department and the Employees paid by the city in the District Attorney's Office. I am demanding a global settlement of all matters.

9

Mayor Kenny and Deputy City Solicitor Ryder. I have been subjected to cruel machinations, vilification defamation of character. I suffer from permanent physical and psychological injury and trauma as a result of (proximate cause) the conduct by employees of this city; the city of Philadelphia the defendant to be named in federal court filings and action in which there is clear Liability. I give you Mayor Kenny Authorization, (see Hospital) Authorization to review all my medical records, All Assaults submitted to the claims unit, and to defense Mr. Christopher Ryder, as well as all PHRC documents ie: Amended Discrimination Complaint in compliance with 300 day city of Philadelphia Fair Practices Ordinance. Irrefutable Evidence of criminality can be found in my submitted PHRC request for Hearing and all submitted documents and in my revised Affidavit due to Fraudulent Concealment in which I submitted a Formal retraction statement.

10

Mayor Kenney Mr. Ryder I am aware that character and integrity does matter in these types of civil cases in accordance with the Supreme Court of Pennsylvania. PA R.E. 608 Evidence of Character of any person such as to Affect the Amount of Damages which he ought to receive is relevant. I have included also, Documentation as to my Brother Samuel's Reputation Integrity and Character should anyone in your Administration at trial attempt to vilify or defame his character as was mine. Sirs please keep in mind president, rules and principles established in prior cases of discrimination, Failure to prevent harassment, Retaliation.

Mayor Kenney it is essential that you review the documents Mr. Ryder Already has in his possession ie; Letter to Former DA Seth Williams, Letter to DA Larry Krasner and Voice recordings proving Corruption and Cover ups, Within the police department the DA's Office and the Fair Housing Commission. Please review FHC Transcript of Sept 25, 2019.

Sirs In This Demand Letter, I Speak For Myself as well as my brother, Samuel B. Gibson as he has appointed me as his spokesperson. He now resides in the VA Hospital due to strokes which he suffered during the time our sister Debra's where about and well being was Criminally Conspired and Concealed from us, despite due diligence to have Debra returned home to us. My brother will never walk again.

I have included in this demand Letter and Communication prior Probate Court and Orphan's Court Documented Exhibits which referenced my professional Experience, Character and Integrity which was previously submitted and necessary because of criminal conspiracy by officers of the courts in conversion and the deprivation of companionship of my special needs sister Debra Gibson. This deprivation was carried out by Obstruction of Justice, court records tampering of my submitted petitions for Debra return.

This Deprivation was perpetuated by criminally Conspired Retaliation under The Color of Law. My Pleadings will be in accordance with Federal Rules of Civil Procedure, backed up by evidence and credible Testimony. Should the city decide not to settle, I will have this action filed in Federal District Court and I will have a Trial Attorney motion for a summary Judgment as the evidence will show there is no genuine dispute as to any material facts and I the Movant is entitled to judgment as a matter of Law.

All the facts in this case are indisputable, clear and convincing all of the causes of action, some of which are (numerous criminal) and Civil Rights Violations, and Torts are specified in my revised affidavit as counts. Remedy is guaranteed by constitutional tort law and Pennsylvania Bill of Rights

Case: <u>Federal District of North Carolina</u>
<u>Brian Hogan V Cherokee County Separation of Family</u>

Case: <u>Marie Jean Pierre V Park Hotels and Resorts</u>
1st Amend Rights Violation and Discrimination.

Case: <u>Dwyer N Ocean port school District</u>
1st Amend Violation

Case: <u>Fulton V City of Philadelphia</u>

Case: <u>Justin Howell V City of Austin</u>
Police Misconduct Excessive Force

14    In all of these cases there were Enormous Punitive Damages Awarded by a Jury Trial and Verdict.
This City just had to settle for Police Brutality on Rickia Young.
The number of causes of Action Against this city is numerous and I will be compelled if this goes to Trial to ask the Jury to Award the Maximum Amount of punitive damages on All Applicable Causes of Action and Torts because of the Reprehensibility and Malice of their Actions.

15    I Michael Gibson give Authorization for Mayor Kenney to review my Medical Records.
I have submitted to Claim and to Mr. Ryder, Mayor Kenny and Deputy Solicitor Ryder, my life and my brother Samuel is been Dramatically Altered by these Horrible Events we've been subjected to by this city. I pray I am not compelled to have my brother who has firsthand knowledge of what was done to our family to give first hand testimony and relive these terrible events or requesting his best friend David Moore testify how this ordeal has affected his best friend.
This demand letter is an attempt to come to an amicable settlement of this entire matter. I ask that you carefully review all the Evidentiary Evidence which is over whelming. My position statement re: FHC PHRC, DA's office impact statement, mental Health verified statements to psychiatrist Dr. Su as to the reason I had to SEEK help.

*16*

In May of 1979 I was afforded the privilege of having the President of the United States President Jimmy Carter shake my hand and congratulate me on my achievement in higher education. Shortly thereafter I received a letter from the White House by the President. Copy enclosed. It reads in part your accomplishments in the education you have received has also increased your responsibility we share in correcting the evils we see in our world. Discrimination, inequality and corruption are a global pandemic that we as responsible citizens can't turn a blind eye to. We must fervently address it. Mayor Kenney and Deputy Solicitor Ryder I request you give your immediate attention to my demand for a settlement of this matter and the submitted documentary evidence which will be submitted for trial Evidence along with all previously submitted documents to be Exhibits with material Fact Evidence which is clear and convincing.

Sirs the evidence and record will show that over the years of my professional experience and capacity I cared for others but, I was denied that right, a basic human right to care for my brother Samuel and my sister Debra when they needed me the most.

What was done to me and my family is disturbingly atrocious this city has no defense. The greater weight of the evidence I have against this city is clear and convincing.

Mayor Kenney and Divisional Deputy Solicitor Ryder I am demanding a global settlement of This Total matter in The Amount of *Twenty Five Million Dollars* I look forward to your response.

Submitted Respectfully

Yours Truly    *Michael D. Gibson*

Date: *July 13th 2022*

EXhibiT 1
Affcdavit

REC'D OCT 26 2023

REC'D OCT 26 2023

This certificate is attached to a _____19___ page(s) document dealing with Michael Gibson VS City of Philadelphia Risk Management Division /entitled Michael Gibson Affidavit Witness, Victim, Whistleblower and Dated 7/13/2022.

## JURAT/AFFIDAVIT CERTIFICATE

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

On this 13th day of July, 2022.

Before me, the undersigned notary public, personally appeared Michael Gibson proved to me

through satisfactory evidence identification, which was _PA Driver Lic_____

                                                        Type of Identification

to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his /her knowledge and belief.

Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936

_____
Signature of Notary Public

_October 23, 2025_____
Commission Expiration Date of Notary Public

SEAL

*10*

# PENNSYLVANIA NOTARIAL CERTIFICATE
## (VERIFICATION UPON OATH OR AFFIRMATION)

VERIFICATION ON OATH OR AFFIRMATION WITH AFFIANT STATEMENT

Commonwealth of Pennsylvania}

County of Philadelphia}

Signed and sworn to (or affirmed) on This 13th of July, 2022 before me Dorothy Butler the
                                                      day Month Year
Undersigned Notary Public. Michael Gibson personally appeared before me
I hereby state that the information is true to the best of my knowledge. I also confirm that the
information is both accurate and complete, and relevant information as not been omitted.

☐ Personally known to me    - OR -
☑ Prove to me on the basis of satisfactory evidence

    to be the person whose name (s)is/are subscribed
    to the within instrument, and acknowledgement to me
    that he/she/they executed the same for the purposes
    therein stated.

```
Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936
```

(Stamp)

_____
Signature of Notary Officer

_____
Dorothy Butler
Name of Notary Officer

_____
Notary Public
Title of Officer

My commission expires: *October 23, 2025*



*10*

MICHAEL GIBSON, AFFIDAVIT, WITNESS, VICTIM, WHISTLE BLOWER
2130 N. VAN PELT STREET
PHILADELPHIA, PA. 19121
D.O.B. 12/13/1949
267-370-4152

CITY CLAIM # 201 90877 53
PHRC # 201 905 041

VS

CITY OF PHILADELPHIA
RISK MANAGEMENT DIVISION – CLAIMS UNIT
1515 STREET
PHILADELPHIA PA. 19102

RISK MANAGEMENT DIVISION - CLAIMS UNIT,

I, MICHAEL GIBSON SWEAR OR AFFIRM: THAT THE FACTS IN THIS AMENDED AFFIDAVIT IS TRUE AND I AM THE AUTHOR AND WHISTLE BLOWER ON THE CORRUPTION AND SYSTEMIC RACISM AND ETHNIC DISCRIMINATION WITHIN AGENCIES OF THE CITY OF PHILADELPHIA AND I AM PROTECTED UNDER THE WHISTLE BLOWER PROTECTION ACT AND THE FALSE CLAIMS ACT. EVERY STATEMENT ON THE ORIGINAL AFFIDAVIT STILL STANDS, DATED 6/9/2020 EXCEPT FOR MY FORMALLY RETRACTED STATEMENTS SUBMITTED TO PENNSYLVANIA HUMAN RELATIONS COMMISSION DATED 3/28/2021 DUE TO FRAUDULENT MISREPRESENTATION AND CONCEALMENT BY OFFICERS OF THE COURT P F H C AND THE PCHR AND AMENDED PCHR COMPLAINT FORM ARE TRUE.

THE PFHC AND THE PCHR COMMISSIONS OFFICERS OF THE COURT AND THE PCHR COMMISSION INVESTIGATOR KNEW FROM THE VERY BEGINNING THE CANNONS HOUSING DISCRIMINATION COMPLAINT LODGED  AGAINST ME WAS FRAUDULENT IN CONTENT WITH PERJURY AS TO SECURITY DEPOSIT THEY STATED THEY PAID AND THE CONDITION OF THE PROPERTY.  DAMAGES IN PROPERTY WERE DELIBERATE VANDALIZISM BY THEM TO MAKE A FRAUDULANT CLAIM AS I ELABORATED IN AFFIDAVIT TO DISTRICT ATTORNEYS OFFICE WITH THE CRIMINAL ACTS THEY ENGAGED IN. SEE DOUMENTS DATED 9/23/2019 BOTH COMMISSION HAD IN THEIR POSSESSION IRREFUTABLE EVIDENCE THERE WAS NO, WRONG DOING, WHICH WAS DISCRIMNATORY ON MY BEHALF AND THERE WAS NO SEXUAL AGGRESSION, INAPPROPRIATE BEHAVIOR OR HARASSEMENT. BOTH COMMISSIONS HAD THE LEASE CONTRACTS OF BOTH CANNON'S THAT SPECIFIES THEY PAID NO SECURITY DEPOSIT, THE RECEIPT OF THE FIRST AND LAST MONTHS RENT THEY PAID TO MOVE IN AND THEY HAVE WRITTEN AGREEMENT BOTH CANNON'S AND MYSELF SIGNED WHEN THEY DECIDED THEY WANTED TO TEMPORARILY STAY IN MY PROPERTY. "SEE LEASE AGREEMENTS, RECEIT, SIGNED CONTRACT" BOTH COMMISSIONS HAD IN THEIR POSSESSION DOCUMENTS THE DEFENSE OMITTED AND BOTH COMMISSIONS IGNORED FACTUAL EVIDENCE, THESE DOCUMENTS I AM SUBMITTING WITH AMENDED COMPLAINT AND AFFIDAVIT. DOCUMENTS ARE THE 66 PAGES

13                                                1                                                12

2 RESPONSE I SUBMITTED TO PCHR COMMISSION INVESTIGATOR ALEXZANDRIA WILLIAMS WHICH CONTAINS ALL CORRESPONDENCE WITH THE CANNON'S AND THE POLICE REPORTS DC NUMBERS. BOTH COMMISSIONS HAVE IRREFUTABLE EVIDENCE THAT CHAUNTAY CANNON NEVER AT ANYTIME MADE MENTIONS OF SEXUAL IMPROPRIETY OR HARASSMENT AT THE SEPTEMBER 25TH HEARING. CANNON'S STATED UNDER PENALTY OF PERJURY SEXUAL HARASSMENT BEGAN ON DAY ONE OF THEIR MOVE IN DATE 5/2/19 CHAUNTAY CANNAN MADE NO (SEXUAL HARASSMENT) CLAIMS AT HER PRELIMINARY CRIMINAL TRIAL OR AT SENTENCING TRIAL BOTH DISTRICT ATTORNEYS SERGIO GLAJAR AT SENTENCING TRIAL AND ADA AT PRELIMINARY TRIAL AND COURT TRANSCIPTS ARE EVIDENCE OF SUCH. (ADA CHRISTAN PATCHEL) CHAUNTAY CANNON FILED THE HOUSING DISCRIMINATION SEXUAL HARASSMENT COMPLAINT IN A DESPARATE EFFORT TO RETALIATE, AND VILIIFY ME DAYS PRIOR TO HER SENTENCING TRIAL ON JANUARY 13/2019 FOR VIOLENTLY ASSAULTING ME WITH A WEAPON. CANNON FILED THIS COMPLAINT ON 11 /18 2019 AND THE ADMINISTRATIVE AGENTS OF BOTH COMMISSIONS AIDED AND ABETTED CHAUNTAY CANNON IN DOING SO, THEY CONCEALED EVIDENCE OF TEXT MESSAGES DOING SO. THE ACTION OF BOTH COMMISSIONORS WAS RACIALLY DISCRIMINATORY AND I DID NOT TAKE UMBRAGE IN THEIR ACCEPTING THEIR COMPLAINT AS DEFENSE. ATTORNEY RYDER STATED, I WAS OUTRAGED THEY USED JIM CROW RACIST TACTICS AND POLICY OF PAINTING BLACK MAN AS BRUT ANIMALISTIC SEXUAL PREDITOR DESERVING OF PUNISHMENT, WHICH OFTEN RESULTED IN THE DEATH OF MANY BLACK MEN AND BOYS.

3 IT IS MY PRESUMPTION THAT KAHLILA SKIPPER AND JOHN LEWIS JR. AND DAVID RAMMLER ESQ CHAIRPESON WHO IS AN ATTORNEY, ASSISTED IN THE CONSTRUCT OF THAT COMPLAINT WHICH IS EVIDENT BY THE LEGAL JARGON USED.

4 IT WAS STATED IN RESPONDENT NOTICE OF INVESTIGATION SENT TO ME BY PCHR INVESTIGATOR ALEXANDRIA WILLIAMS THAT THEY ASSIST COMPLAINTS IN THEIR COMPLAINTS. I INQUIRED WHO ASSISTED CANNON IN HER COMPLAINT I GOT NO RESPONSE.

5 THE VIOLENT ASSAULTS ON ME BY THE CANNONS ENABLED BY BOTH COMMISSIONS COULD HAVE RESULTED IN MY DEATH. A TITLE 18-242 VIOLATION.

6 IT IS MY PRESUMPTION THAT KAHLILA SKIPPER ALONG WITH COMMISSION MANAGEMENT DISCRIMNATED AGAINST ME BY CRIMINALLY CONSPIRING TO NULLIFY MY DEFENSE AGAINST A FRAUDULENT CRIMINAL COMPLAINT.

7 THEIR EGREGIOUS ACTIONS WAS A BOLD DISPLAY OF SYSTEMIC RACISM AND IT'S EXECUTION OF IT'S PRACTICE OF CONTROL OVER A BLACK MAN THEY CONSIDERED INFERIOR AND UNINTELLIGENT, WHICH IS THE IDEOLOGY OF WHITE SUPREMACY AND THEY CHOSE TO TREAT ME IN A BIAS AND DESPARATE WAY.

8 IT IS MY PRESUMPTION THEY LOATHED THE FACT THAT I AS A BLACK MAN HAD DEFEATED TWO CORRUPT ATTORNEYS IN PROBATE AND ORPHANS COURT DEFENDING MY LATE MOTHER'S ESTATE AND THEY WERE GOING TO PUT ME IN MY PLACE.

9 CHAUNTAY CANNON DESPERATE NOT TO GO BACK TO PRISON STATED A CLAIM OF HOUSING DISCRIMIANTION AND SEXUAL HARASSMENT. THIS COMPLAINT WAS FILED ON 11/18/2019 JUST DAYS AFTER HER RELEASE FROM PRISON AND BEFORE HER SENTENCING TRIAL.

14 /3

10   CHAUNTAY CANNON AT THAT TRIAL STATED UNDER OATH THAT THE FHC STAFF TOLD HER TO CHANGE THE LOCKS ON THE FRONT DOOR OF MY PROPERTY DELAYING ME ACCESS WHILE THEY VANDALIZED AND ALLOWED INTRUDER CHRISTOPHER SIMMONS TO BREAK IN MY THIRD FLOOR AND MOVE IN.

11   THIS WAS HER SON, THE PERSON THAT ATTACKED ME ALONG WITH HIS SISTER, THE OTHER CLAIMANT THAT INDUCED ME VIA LIES TO ALLOW THEM TO STAY IN MY PROPERTY. THE FHC HELD THAT HEARING WITH THIS PERSON THAT ALSO COMMITTED PERJURY IN THE INITIAL COMPLAINANT AGAINST ME NOT TO BE PRESENT AT THE SEPTEMBER 25TH HEARING. RUE LANDAU STATED TO ME PATRICIA CANNON DID NOT HAVE TO COME, THE JUDGE AT THE JANUARY 13, 2019 SENTENCING HEARING STATED HE BELIEVED ME AND THAT MY TESTIMONY WAS CREDIBLE.

12   IT IS MY PRESUMPTION THAT KAHLILA SKIPPER AND JOHN LEWIS JR. TOLD HER TO DO SO, CHANGE LOCKS.

13   I SUSPECT AND PRESUME THAT SKIPPER DID THIS PRIOR TO THE SEPTEMBER 25TH HEARING BECAUSE THE LOCKS WAS ALREADY CHANGED, WHICH I CALLED 911 AND REPORTED TO POLICE AND A REPORT WAS WRITTEN AS STATED IN MY ORIGINAL AFFIDAVIT DATED 6/9/2020.

14   KAHLILA SKIPPER ASKED ME THE DAY BEFORE THE SEPTEMBER 25TH HEARING DID I HAVE A KEY TO MY PROPERTY. I TOLD HER NO. SKIPPER KNEW ALREADY I DID NOT HAVE A KEY BECAUSE, SHE TOLD HER TO CHANGE THE LOCKS, WHICH WAS DONE PRIOR TO DUE PROCESS.

15   THE STAFF OF THE PFHC AND THE PCHR ASSISTED THE RECENTLY RELEASED FROM PRISON CONPLAINANT CHAUNTAY CANNON IN CONSTRUCTING WITH LEGAL JARGON THE VILE SCURRILOUS SEXUAL DISCRIMINATION COMPLAINT WHICH I SUBMITTED AS EVIDENCE AND WHICH THE CITY OF PHILADELPIA DEFENSE ATTORNEY CHRISTOPHER RYDER DEPUTY CITY SOLICITOR CHOSE TO USE MY SUBMISSION AND TURN IT AROUND AS FACT EVIDENCE, WHEN IN FACT HE IS GUILTY OF USING THE SAME WHITE SUPREMACIST SYSTEMIC RACISM AND DISCRIMINATION TACTICS OF JIM CROW VILIFICATION AND ASSASINATION ON MY CHARACTER AS A SEXUAL PREDITOR.  MISPRISON OF FELONY COVERING UP OF STATE AND FEDERAL CRIMES OF CITY EMPLOYEES, VIOLATES PROFESSIONAL CODE OF CONDUCT.

16   RYDER TOO IS GUILTY SHOULD HE NOT TURN THEM INTO LAW ENFORCEMENT AUTHORITIES AS AN ACCOMPLICE AND PRINCIPAL IN THESE CRIMES.  REGARDING THE SEPTEMBER 25, 2019 HEARING, THE TIMING OF THE QUESTION REGARDING THE LAST MONTHS RENT AND SECURITY DEPOSIT POSED TO ME IN A SLY WAY AFTER COMMISSIONER JOHN LEWIS ADJOURED THE HEARING AND PREVENTED ME FROM SAYING ANYTHING ELSE IN MY DEFENSE OR PRESENTING SOLID EVIDENCE LEFT NO ROOM FOR DOUBT THAT THE EGREGIOUS BIAS AND DISCRIMENATORY MANNER IN WHICH THAT SEPTEMBER 25, 2019 HEARING WAS CONDUCTED WAS STRATEGICALLY PLANNED.

17   THEIR ACTIONS WAS CUNNING, APPALLING EGREGIOUS, HUMILIATING AND COMPLETEY IN VIOLATION OF THE RULE OF LAW.

18   WHAT THEY DID TO ME WAS EXTREMELY HUMILIATING; THEY MEANT IT TO BE. I WAS EXTREMELY HUMILIATED BEFORE A WOMAN THAT HAD ALREADY SUBJECTED ME TO EXTREME

MENTAL ANGUISH AND ELDER ABUSE; THEY ALLOWED THIS WOMAN TO GET AWAY WITH PERJURY AND ENABLE THIS WOMEN CHAUNTAY CANNON TO VIOLENTLY ASSAULT ME WITH A WEAPON, WHICH COULD HAVE RESULTED IN MY DEATH BY ASPHYXIATION.

19  I WAS AGAIN ASSAULTED WHILE SHE WAS IN PRISON. BOTH ASSAULTS COULD HAVE RESULTED IN MY DEATH THIS COMMISSION IS CAUSAL CONNECTION.

20  IT IS MY PRESUMPTION AND THERE IS NO DOUBT IN MY MIND OR ANY PERSON OF INTELLIGENCE THAT IT TOOK LEGAL PROWESS, CUNNING AND EXPERIENCE THAT THE UPPER MANAGEMENT OF THE FHC MR. JOHN LEWIS JR AND DAVID RAMMLER AN ATTORNEY AND CHAIRPERSON HAVE, FOR THE HEARING TO BE CONDUCTED THAT WAY.

21  IT IS NO COINCIDENCE THAT KAHLILA SKIPPER FREELY IMPLICATED RAMMLER AS THAT PERSON THAT DOMINATED THE SEPTEMBER 25TH, 2019 HEARING WHEN I QUESTIONED HER, EVEN THOUGH SHE LIED AS TO THE CORRECT SPELLING OF HIS NAME AND WHO HE WAS AS DAVID RANNLER AND HE WAS THAT PERSON AT HEARING AND THAT "I WOULD KNOW THE CORRECT SPELLING" BECAUSE I WORK WITH HIM EVERY DAY"

22  JOHN LEWIS JR. COMMISSIONER AND DAVID RAMMLER ESQ. ARE LONG TERM COLLEAGUES.

THE UPPER MANAGEMENT'S KNOWLEDGE OF THEIR ACTIONS WITH DIRECTOR RUE LANDAU AT THE HELM IS EQUALLY GUILTY OF BIAS, RACIALLY DISCRIMINATORY TACTICS, AND CRIMINAL CONSPIRACY.

23  IT IS MY PRESUMPTION THAT KAHLILA SKIPPER REVEALED AND USED THE INFORMATION I GAVE HER REGARDING MY DEFENSE AGAINST THE FRAUDULENT COMPLAINT WITH COMMISSION STAFF MANAGEMENT AND STAFF IN WHICH THEY USED TO DETER ME FROM TESTIFYING AND PRESENTING EVIDENCE ALL OF WHICH WAS DISCRIMINATORY AND CRIMINALLY CONSPIRED IN VIOLATION OF TITLE 18 242 AND TITLE 18 241.

24  I BELEIVE FROM MY RECOLLECTION OF THE SEPTEMBER 25TH 2019 HEARING THAT IT WAS JOHN LEWIS JR. THAT WAITED TILL AFTER HE ADJOURED THAT HEARING TO POSE THAT QUESTION THAT PROCURED PURJURY FROM THE CLAIMANT CHAUNTAY CANNON IN A CLEVER CUNNING WAY, DISPITE THE TRANSCRIPT STATING IT WAS ATTORNEY COMMISSIONER BIAZ. THEY KNEW I WOULD QUICKLEY CONTEST HER STATEMENT THAT THEY PAID A SIX HUNDRED DOLLARS SECURITY DEPOSIT WAS PURJURY IN THEIR COMPLAINT, AND THEY KNEW CANNON WOULD ANSWER AFFIRMATIVELY THAT SHE DID.

25  IT IS MY PRESUMPTION THAT CHAUNTAY CANNON WAS INSTUCTED BY THEM TO DO SO.

IN EITHER INSTANCE IF IT WAS COMMISSIONER LEWIS OR ATTORNEY BIAZ WHO POSED THAT LAST AND ONLY QUESTION CANNON COULD RESPOND TO, IT WAS A CONSPIRED EGREGIOUS MANIPULATON OF THE LAW, OBSTRUCTION OF JUSTICE, FAILURE TO FOLLOW THE RULE OF LAW AND ENGAGMENT OF ENFORCEMENT OF BIAS AND SYSTEMIC RACISM AND PUBLIC CORRUPTION BY OFFICERS AND THE COURT.

26  I REQUESTED THE PENNSYLVANIA HUMAN RELATION COMMISSION DEMAND THE RECORDED TRANSCRIPT OF THE SEPTEMBER 25TH 2019 HEARING TO VERIFY THAT I HAVE NOT MADE AN ERROR ON WHO POSED THAT.

/6

THAT LAST MINUTE QUESTION AS TO THE SECURITY DEPOSITS WHICH PROCURED PURJURY FROM THE COMPLAINANT WHICH IS SUBORNATION OF PURJURY.

27 BOTH COMMISSIONS HAD IN THEIR POSSESSION MY COUNTER CLAIM DATED 9/23/2019 IT IS DOCUMENTARY EVIDENCE WHICH GIVES IRREFUTABLE EVIDENCE THE HOUSING AND SEXUAL DISCRIMINATION COMPLAINT LODGED AGAINST ME IS FRAUDULENT.

THEY HAVE THE TEXT MESSAGES OF ALL MY INTERACTIONS WITH THE CANNON'S BUT THEY CONCEALED THAT EVIDENCE AS WELL AS THE CITY DEFENSE ATTORNEY RYAN.

28 ADA ALEXANDER BLUMENTHAL IN DA'S CHARGING HAS ALL EVIDENCE INCLUDING TEXT MESSAGES OF MY INTERACTIONS WITH THE CANNONS AND PICTURES OF HOME THAT SHOW THE HOME WAS BEAUTIFUL AND IN GOOD CONDITION. THIS EVIDENCE WAS PRESENTED IN THE PRE SENTENCING TRIAL OF CHAUNTAY CANNON YET THESE COMMISSIONS AND THE DEFENSE CHOSE TO USE JIM CROW RACIST TACTICS TO VILIFY ME AND PAINT ME AS A SEXUAL PREDITOR.

29 KAHLILA SKIPPER FELT AT EASE AND FREELY IMPLICATED ATTORNEY CHAIR PERSON DAVID RAMMLER AS THE PERSON THAT DOMINERED THE SEPTEMBER 25, 2019 HEARING THAT I HAVE GIVEN SWORN TESTIMONY THAT ALL OF THEIR ACTIONS WAS EGREGIOUS AN CORRUPT.

30 IT IS MY PRESUMTION, RAMMLER AND LEWIS WAS THE RINGLEADERS, IT CAN BE PRESUMED THAT THEY BOTH WERE INSTRUMENTAL IN THE CONDUCTION OF THAT HEARING.

31 IT CAN BE PRESUMED THAT IF KAHLIILA SKIPPER, ROSEMARY BRANNIGAN, AND ALEXIS WILLIAMS WAS NOT REPRAMANDED AND ARE STILL EMPLOYED IN THEIR PROSPECTIVE POSITIONS, THEY ARE ALL GUILTY OF CRIMINAL CONSPIRACY, ITS COVERUP AND OBSTRUCTION OF JUSTICE, ALL OF WHICH WHO'S CONDUCT HAS BEEN COMPLETELY IGNORED BY NUMEROUS MESSAGES TO THE CITY OF PHILADELPHIA'S CHIEF INTEGRETY OFFICER SARAH STEVENSON. ONE OF MY NUMEROUS MESSGES TO MAYOR KENNEY ON HER PHONE LINE I WAS TOLD WAS INTERCEPTED, WHICH IS A FEDERAL CRIME, INTERCEPTION OF ELECTRONIC COMMUNICATIONS. (TILE 18 GENAERAL ASSEMBLYS)

32 REGARDING THE SYSTEMIC RACISM AND PUBLIC CORRUPTION I ENDURED AS A BLACK MAN AND PRO SE LIGIANT IN (PROBATE & ORPHANS) COURT. THERE IS 36 PAGES OF DOCUMENTS SENT TO THE NEWLEY ELECTED DA KRASNER ON 6/30/18 BY EMAIL, FAXED TWICE AND US POSTAL SERVICE RETURN RECEIPT REQUESTED REGARDING WHAT I CONSIDER THE UNPROSECUTED HOMICIDE OF MY LATE MOTHER ELSIE GIBSON IN 2015 ESTATE 925 OF 2015 AND IT CONTAINS EVIDENCE WITNESS NAMES AND NUMBERS AND COURT DOCUMENTS WITH IRREFUTABLE EVIDENCE OF CORRUPTION BY OFFICERS OF THE COURT.

33 THESE DOCUMENTS WENT IN THE HANDS OF PARALEGALS REGINA PURTELL PARALEGAL, DIANA ADEMCEK AND FORMER HOMICIDE PROSECUTOR ANTHONY VOCCI I SUSPECT THIS INFORMATION WAS USED BY THE GOVERNMENT ACTORS IN PROBATE AND ORPHANS COURT TO RETALIATE AGAINST ME, RESULTING IN THE DEATH OF MY BELOVED SISTER DEBRA IN THE HANDS OF CRIMINALS. ILLEGALLY CREMATED IN RETALIATION WITH JUDGE OVERTON AND JAMES TYLER ESQ. PLENARY GUARDIAN AS CO-CONSPIRITORS.

/7                                                                              16

IT IS MY STATEMENT THAT IN THE DOCUMENTS SENT TO DISTRICT ATTORNEY LARRY KRASNER WHICH WAS SENT PERSONAL AND CONFIDENTIAL NEVER WAS BROUGHT TO HIS ATTENTION. CONFIRMED BY ADA TRACY TRIPP IN THOSE DOCUMENTS ARE THE 26 POLICE REPORTS, DC'S OF HARASSMENT ASSAULTS, ATTEMPTS OF ILLEGAL EVICTION, REPORTS OF MY HOSPITALIZATION AND TREATMENT FOR POLICE BRUTALITY AND EXCESSIVE FORCE IN AN ILLEGAL RESTRAINT WHICH ALLOWED MY SISTER DEBRA TO BE ABDUCTED AND NEVER SEEN AGAIN BY ME, MY OLDER BROTHER SAMUEL B. GIBSON AND OUR CHILDREN, WHO LOVED HER DEARLY. AS A RESULT OF POLICE MISCONDUCT DEBRA AN INCAPACITED PERSON WAS TAKEN OUT OF HER HOSPITAL BED WHILE UNDER 24 HRS NURSING CARE AND PLACED IN THREE DEGREE WEATHER OUTSIDE AND PLACED IN THE BACK OF A UHAUL TRUCK WITH STOLEN VALUABLES AND HER HOSPITAL BED.

I HAVE THE PICTURES OF MY INJURED AND BRUISED ARMS AS A RESULT OF ILLEGAL RESTRAINT IN THREE DEGREE WEATHER WITH ONLY PAJAMAS AND SOCKS ON.

FEBRUARY 20TH POLICE FALSIFIED POLICE REPORT I AM FILING ADDITIONAL CAUSES OF ACTION, CLAIM FORM FOR POLICE BRUTALITY, ON FEBRUARY 20, 2015 WHEN MY SISTER DEBRA WAS ABDUCTED. I WAS SUBJECTED TO TORTURE IN A VIOLENT RESTRAINT IN THREE DEGREE WEATHER THEY ARE GUILTY OF RECKLESS ENDANGERMENT IN THREE DEGREE WEATHER, OFFICIAL OPPRESSION, TORTURE, AGGRAVATED ASSAULT, POLICE OFFICER FALSIFIED REPORT OF ONLY POSSESIONS TAKEN OUT OF HOUSE WHEN IN FACT MY SISTER WAS ABDUCTED IN A FELONY HOME INVASION WHEREBY I WAS ASSAULTED AT THE DOOR FOR ENTRY AND ALL THE HOUSE PHONES SNATCHED OUT OF WALLS TO PREVENT ME CALLING POLICE.

WHEN I FINALY WAS FREED BY POLICE OFFICER I GRABBED PENCIL TO WRITE BADGES DOWN. AN OFFICER APPROACHED ME IN THREATING WAY AND SAID PUT THAT PENCIL DOWN IN MY OWN HOUSE. I MANAGED TO GET FOUR BADGE NUMBERS BEFORE BEING THREATENED.

THE POLICE DEPARTMENT IS RESPONSIBLE FOR MY SISTER DEBRA BEING ALLOWED TO BE TAKEN AND PLACED HER IN THE BACK OF A U-HALTRUCK WHILE COMPLETELY INCAPACITATED IN BELOW FREEZING WEATHER. THE POLICE ALLOWED DEBRA TO BE PLACED IN THE HANDS OF THE VERY SAME PEOPLE MYSELF AND BROTHER FILED A CRIMINAL COMPLAINT AGAINST AFFIDAVIT JACQUELINE CARTER AND HUSBAND FOR THE SUSPICIOUS DEATH OF OUR MOTHER JUST DAYS BEFORE DELIBERATE OVER MEDICATION TO TAKE OVER OUR LATE MOTHER'S ESTATE. I HAVE A WITNESS AS STATED IN COURT TESTIMONY. DEFENSE HAS DOCUMENTED EVIDENTIARY LETTERS TO CARTERS, JUDGES & DA'S OFFICE.

*18*

## AFFIDAVIT: TITLE CORRUPTION IN PROBATE AND ORPHAND COURT

RE: ESTATE OF MY LATE MOTHER ELSIE GIBSON – 924  2015 IT IS MY PRESUMPTION THAT THE
IRRUFUTABLE EVIDENCE WITH POLICE REPORTS DC NUMBERS TWENTY SIX IN ALL ALONG WITH
COURT DOCUMENTS WITH EVIDENCE OF HOW PROBATE OFFICERS OF THE COURT AND CITY
EMPLOYEES DAWN MCKEOWN CRIMINALLY CONSPIRED ALONG WITH ATTORNEY HOWARD
SOLOMON FIXED A TRIAL TO ILLEGALLY TO AQUIRE MY LATE MOTHER'S ENTIRE ESTATE,
ILLEGALLY, EVICT ME FROM MY RESIDENCE WHILE I WAS SERIOULY INJURED AND ILL, BY
PLACING NOTICE OF TRIAL ON DOCKET THE DAY OF TRIAL SO THAT I WOULD LOSE BY DEFAULT,
NOT ONLY COURT RECORDS EVIDENCE OF THIS FACT. I HAVE A WITNESS FORMER CLERK OF
COURT THAT WILL CONFIRM THIS FACT.

HE IS RETIRED CLERK OF COURT PAUL DI CICCO. DAWN MCKEOWN A LONG TIME CLERK OF
COURT ALONG WITH JUDGE MATHEW CARRAFIELLO EXIBITED ANGER BIAS WHEN I FOUND OUT
AND ISSUED A NEW ORDER AND WROTE ON IT IN BLACK MAGIC MARKER NO MORE
CONTINUENCES.

WHEN CONFRONTED MCKEOWN AND CLERK OF COURT PATRICK SAVAGE TRIED TO JUSTIFY ME
NOT GETTING NOTIFICATION, STATING IT MAY HAVE GOTTEN LOST IN MAIL. BLATANT
OBSTRUCTION OF JUSTICE. NOTICE PLACED ON DOCKET MORNING OF TRIAL SEE DOCUMENT.
IRREFUTABLE EVIDENCE NEVER TURNED OVER TO DISTRICT ATTORNEY LARRY KRASNER FOR
PROSECUTION. DOCUMENTS MISSING, CONFIMED BY ADA BRIAN COLLINS ON 5/3/21.

CLERK OF COURT PATRICK SAVAGE SABATAGED MY PETITION FOR CITATION TO EXECUTRIX
JACQUELINE CARTER PLACING MY DAUGHTER'S NAME RAQUEL GRAHM'S NAME AS THE
PETITIONER WHEN IN FACT HE WAS GIVEN NO KNOWLEDGE OF MY DAUGHTERS NAME WHAT
SO EVER, HE HAD TO GET HER NAME FROM THE MY OPPOSITIONS ATTORNEY AT LAW
HOWARD SOLOMAN WHO ALSO CRIMMINALLY CONSPIRED WITH OFFICERS OF THE COURT
AND CLERKS OF COURT T FIX A JUDICIAL HEARING AND TRIAL SO I LOSE BY DEFAULT
JUDGEMENT, LOSING ENTIRE ESTATE OF MY LATE MOTHER.

AFFIDAVIT: CORRUPTION IN PROBATE AND ORPHAN'S COURT

*43* I REALIZE NOW THE ORDER THAT THE JUDGE CARRAFIELLO GAVE ON SEPTEMBER 10' 2016 THAT MY OLDER BROTHER SAMUEL B. GIBSON THAT OUR MOTHER, NOW DECEASED WISHED HER SON TO RETUN HOME AT 2130 VAN PELT ST, THAT HE COULD NOT LIVE THERE WAS REPUGNANT TO THE CONSTITUTION AND A VOID ORDER ULTRA VIRES IN VIOLATION OF HIS JUDICIAL OATH AND TREASON TO THE CONSTITUTION OF THE UNITED STATES.

*44* I REALIZE THIS WAS GIVEN TO KEEP US BOTH OUT OF OUR HOME, EVICTING US ILLEGALLY SO THAT THE, THE ATTORNEYS HOWARD SOLOMAN AND JAMES TYLER THE GUARDIAN APPOINTED' BY JUDGE GEORGE OVERTON WOULD PROFIT ILLEGALLY BY THE TAKE OVER OF OUR LATE MOTHER'S ESTATE.

*45* HIS ORDER WAS IN CONJUNCTION I NOW REALIZE WITH HOWARD SOLOMANS BRIBE TO HAVE ME WITHDRAW MY WILL CONTEST, WHICH I REFUSED.  DOCUMENT ENCLOSED SEE DATED DOCUMENT FROM ATTORNEY HOWARD SOLOMAN JUDGE MATHEW CARRAFIELLO REFUSED TO ADDRESS THE MISCONDUCT OF BOTH HOWARD SOLOMAN AND APPOINTED PLENARY GUARDIAN OF MY INCAPACITATED SISTER DEBRA GIBSON ESTATE 7931C OF 2015 DESPITE DOCUMENTS AND STATEMENTS OF SUPREME COURT OF PA DISCIPLINERY BOARD STATING IT WAS HIS DUTY TO ADDRESS THESE ALLEGATIONS.

*46* INSTEAD OF ADDRESSING THEM THE JUDGE STATE'S "YOU DON'T KNOW WHAT YOU'RE TALKING ABOUT" AND THEN STATED HE SITS ON THEIR BOARD, A BLATANT LIE WHICH I VERFIED HE DID NOT. THIS IS THE  RENOWNED PROBATE ATTORNEY ON CITY LINE AVE STATED SHE HAD TO CALL TO SEE IF HE WOULD ALLOW CERTAIN THINGS IN A LITIGANT'S PLEADINGS. IN OTHER WORDS HE DICTATES WHAT GOES IN THEM. I HAVE THE TRANSCRIPTS SEE DOCUMENTS SUBMITTED.  ATTORNEY NAME DEBRA SPEYER.

*47* JUDGE GEORGE OVERTON REPEATEDLY DENIED ME DUE PROCESS REGARDING THE WHERE ABOUTS OF MY SISTER DEBRA GIBSON, REPEATEDLY FAILED TO FOLLOW THE RULE OF LAW WHICH IS TREASON TO THE CONSTITUTION TO HIS OATH AND TOTAL DISREGARD OF THE UNITED STATES CONSTITUTION AND THE US BILL OF RIGHTS, THE PENNSYLVANIA BILL OF RIGHTS.

*48* WHEN I QUESTION JUDGE GEORGE OVERTON'S STAFF IN HIS CHAMBER AS TO THE WERE ABOUT OF MY PLEADING FOR A HEARING, I WAS TOLD THEY NEVER RECEIVED IT. NUMEROUS TIMES I CALLED IT WAS DATED JULY 24, 2017.

ONLY WHEN I CONTACTED INTRUSIA PROBATE & ORPHANS COURT INVESTIGATOR AND STATED I WAS (CONTACTING) THE FBI AGAIN DID HE RESPOND, WITH MY REQUEST FOR HEARING SEE DOCUMENT SUBMITTED; JUDGE OVERTON DENIED ME THE COMPANIONSHIP OF MY SISTER, DEPRIVATION OF RIGHTS. JUDGE MATTHEW CARRAFIELLO STATED AT PROBATE HEARING SEPTEMBER 25, 2016 THAT THEY, REFERRING TO ALL COURT EMPLOYEES ARE FAMILY. I NOW KNOW WHAT THAT MEANS, EVERYONE IN THAT OFFICE OF THE PROBATE COURT WAS AWARE OF WHAT WAS GOING ON REGARDING THE FIXED TRIAL I WAS NOT SUPPOSE TO FIND OUT ABOUT, THE EVIDENCE TAMPERING, RECORD TAMPERING.

SEE DOCUMENT WHERE THE DATE OF THE TRIAL ON THE OFFICIAL COURT ORDER WHERE I PROVED THE UNDUE INFLUENCE ELDER ABUSE, FRAUD COMMITTED AGAINST MY LATE MOTHER ELSIE GIBSON WAS INCORRECT, CHANGED FROM THE 6TH OF DECEMBER TO THE 16TH OF DECEMBER.

CLERK OF COURT DAWN MCKEOWN LONG TERM COURT CLERK PUT FRAUDLENT WRONG DATE OF TRIAL ON DOCUMENT AS TO MAKE IT DIFFICULT TO LOCATE DOCUMENT. THIS CITY EMPLOYEE GAVE NO NOTIFICATION OF THE TRIAL EXCEPT ON DAY OF TRIAL. I HAD A COURT EMPLOYEE TO CONFIRM THIS. PAUL DICICCO NOW RETIRED.

I SOUGHT HELP FROM A PROMINENT PROBATE COURT ATTORNEY WHOSE OFFICE IS ON CITY LINE AVE. I WAS GOING TO PAY HER TO ASSIST ME IN MY PLEADING WHICH WERE DIFFICULT BECAUSE THEY WERE COMPLICATED WITH ALLEGATION OF ATTORNEY MISCONDUCT AND CORRUPTED PROCEEDING WHICH SHE REFUSED AND STATED SHE HAD TO CALL JUDGE CARRAFIELLO AND ASK HIM IF MY ALLEGATIONS COULD BE INCLUDED IN PLEADINGS. IN OTHER WORDS THIS JUDGE DICTATES WHAT CAN BE IN PLEADINGS WHICH COME BEFORE HIM.

I KNEW THEN, I HAD TO DO MY PETITION FOR CITATION MYSELF, ESPECIALLY AFTER SHE REFERRED TO TWO OPPOSING ATTORNEY ON A FIRST NAME BASIS. THEY ALL WORK TOGETHER WITH THE JUDGES. MR. CHRISTOPHER RYDER DEFENSE ATTORNEY AND DIVISIONAL DEPUTY CITY SOLICITOR FOR THE CITY OF PHILADELPHIA I AM DEMANDING  A GLOBAL SETTLEMENT IN THIS ENTIRE MATTER WHICH INCLUDES DISCRIMINATION CRIMINAL AND CIVIL VIOLATIONS OF THE LAWS OF THIS STATE AND THE US  CONSTITUTION.  I WILL BE FILING IN FEDERAL COURT BEFORE A JURY DEMANDED TRIAL AND YOU WILL BE HELD ACCOUNTABLE FOR NOT TURNING OVER THESE CITY EMPLOYEES THAT HAVE ENGAGED IN STATE AND FEDERAL CRIMES OF PUBLIC CORRUPTION.

AS A VICTIM, WITNESS AND WHISTLE BLOWER, I AM TURNING EVIDENCE AND THESE SWORN STATEMENTS OVER TO THE FEDERAL BUREAU OF INVESTIGTION AND DEPARTMENT OF JUSTICE, THE US ATTORNEY GENERAL OFFICES IN SEEKING JUSTICE IN THESE MATTERS, AND TO DISTRICT ATTORNEY LARRY KRASNER AND PA. GENERAL ASSEMBLY.

CHRISTOPHER H. RYDER DIVISIONAL DEPUTY CITY SOLICITOR PA ATTORNEY ID NO. 307265 CITY OF PHILADELPHIA LAW DEPARTMENT IS AWARE OF THE ILLEGAL MANUVERING ENGAGED IN BY BOTH PARTNERED FHC & PCHR CITY EMPLOYEES HAVE ENGAGED IN AND ALL ATTEMPTS BY HIM AND CITY TO IGNORE WHITEWASH AND COVER THE PUBLIC CORRUPTION STATE AND FEDERAL CRIMES BY CITY EMPLOYEES AND FAILURE TO REPORT THEM TO LAW ENFORCEMENT AUTHORITIES IS ITSELF MIS PRISON OF FELONY INDICTABLE, BY LAW AND A ATTORNEY IS SUBJECT TO DISBARMENT.

RYDER IN THESE SUBMITTED DOCUMENT YOU NOW POSSESS, YOU HAVE IRREFUTABLE EVIDENCE OF DOCUMENTS WHICH PROVE CORRUPTION IN PROBATE COURT AND ORPHANS COURT, FIXED TRIAL, INVOLVED CITY EMPLOYEES GUILTY OF STATE AND FEDERAL CRIMES AND COVER UP BY CITY EMPLOYEES IN DA'S OFFICE.  IT IS MY PRESUMPTION DOCUMENT CONCEALED FROM DA KRASNER AND GIVEN TO COURT OFFICIALS WHO RETALIATED AGAINST ME.

RULES OF PROFESSIONAL CONDUCT FOR PENNSYLVANIA ATTORNEYS RULE 4.1 REQUIRES LAWYER TO DISCLOSE MATERIAL FACT TO AVOID ASSISTING A CLIENT'S CRIME OF FRAUD (THIS ATTORNEY RYDER INCLUDES FRAUD ON THE COURT) THE FACTS, THE CRIMES IN THIS CASE ENGAGED IN BY CITY EMPLOYES OFFICES OF THE COURT ARE NOT CONFIDENTIAL THEY ARE FACT IRREFUTABLE AND THE CRIMINAL ACTS BEYOND A REASONABLE DOUBT. THEIR FRAUD AND DECEIT IS ON COURT RECORDS THERE IS NO COVERING THAT UP. YOUR BIAS IN THIS CASE AND COVER UP REQUIRE THAT YOU RECUSE YOURSELF FROM THIS CASE, FRAUDULENT CONCEALMENT STATUTE KLEHR V. AD SMITH CORPORATION.

AMERICAN BAR ASSOCIATION MODEL RULE 3.3 CANDOR TOWARD TRIBUNAL ADA 3.3

1) SUBPARAGRAPH 2) A LAWYER SHALL NOT KNOWINGLY 3) OFFER EVIDENCE THAT THE LAWYER KNOWS TO BE FALSE.

A LAWYER WHO HAS OFFERED (MATERIAL) EVIDENCE AND THE LAWYER COMES TO KNOW OF IT'S FALSITY, AND THE LAWYER SHALL TAKE REMEDIAL MEASURES, INCLUDING, IF NECESSARY, DISCLOSURE TO THE TRIBUNAL RULE 1.0 (F) DENOTES ACTUAL KNOWLEDGE OF FRAUD.

SUSPECT CITY DEFENSE ATTORNEY DEPUTY CITY SOLICITOR WAS AWARE OF THE FRAUD COMMITTED AND CHOSE TO CONCEAL EVIDENCE. FRAUD BY FHC AND PCHR STAFF.

RULE 1.2 A LAWYER SHALL NOT ASSIST A CLIENT IN CONDUCT THE LAWYER KNOWS IS CRIMINAL OR FRAUDULANT. ATTORNEY RYDER VIOLATED THIS RULE, AS WELL AS FHC ATTORNEYS AND COMMISSIONERS.

RULE 8.4C WHEN ATTORNEYS ENGAGE IN CONDUCT INVOLVING DISHONESTY, DECEIT OR MISREPRESENTATION THEY COLLECTIVELY COLLABORATED AND CONSPIRED TO OFFER UP.

THIS THE DEFENSE IS IN ENFORCEMENT OF SYSTEMIC RACISM AND ETHNIC BLACK HATE BY THE CITY OF PHILADELPHIA HE REPRESENTS AND IS TANAMOUNT T0 THE INSTITUTIONAL SYSTEMIC RACISM INGRAINED IN AMERICAN GOVERNMENT WITH MAYOR KENNEY AT THE HELM IN THE CITY OF PHILADELPHIA. THE MAYOR HAS BEEN KEPT IN THE DARK AS WELL AS DISTRICT ATTORNEY KRASNER REGARDING THIS CORRUPTION AND DISCRIMINATION.

THE PROBATE ADMINISTATIVE JUDGE STATED AT THE HEARING ON SEPTEMBER THE 10, 2016 THAT MY BROTHER SAMUEL GIBSON COULD NOT RETURN TO LIVE IN OUR HOME, NOT ONLY WAS THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA IN QUESTION, BUT MY BROTHERS AS WELL. MY BROTHER IS A WAR HERO. THIS WAS OUTREGEOUS SEPARATION FROM MY FAMILY AFTER HAVING LOSS OUR MOTHER, THIS ORDER WAS VILE AND ULTRA VIRES.

I hereby state that the information above is true, to the best of my knowledge. I also confirm that the information here is both accurate and complete, and relevant information has not been omitted.

AFFIDAVIT: RE: CORRUPTION

I REPORTED TO FBI CORRUPTION IN CITY AGENCIES, I GAVE HOURS OF STATEMENTS. BOTH ASSISTANTS TO DA LARRY KRASNER KNOW ABOUT THE ALLEGATIONS OF THE PUBLIC CORRUPTION AND STATE AND FEDERAL CRIMES.

I LEFT AT LEAST A HUNDRED OF MESSAGES TO DA'S OFFICE ONLY TO HAVE THEM, FORMER JUDGE CAROLYN TEMET AND STEPHEN LISTEN BEE INGNORED MY REQUEST FOR HELP IN THESE URGENT MATTERS WHICH INCLUDED A WHAT MY SELF, BROTHER AND DAUGHTER CONSIDERED WAS THE UNPROSECUTED HOMICIDE OF MY LATE MOTHER AND CORRUPT PROCEEDINGS TO TAKE OVER HER ESTATE WITH JUDGES AND CITY CLERKS OF COURT AND ATTORNEY'S AND INVOLVED AND THE RETALIATION BY THEM, WHICH WAS CONCEALMENT OF OUR SISTER LOCATION HER BEING DISABLED AND NOT BEING ABLE TO FEND FOR HERSELF AND HER DEATH WITHOUT NOTICE AND ILLEGAL CREMATION OF HER BY THEM, DA KRASNER NEVER INFORMED.

THE RETALIATION AGAINST ME BY ORPHAN COURT AND PROBATE COURT OFFICIALS BEGAN WITH THE DENIAL OF THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA BY WAY OF DECEIT, FRAUD ON THE COURT BY ATTORNEY'S, UNLAWFUL ORDERS GIVEN IN TREASON TO THE CONSTITUTION, WHICH SUGGEST A JUDGE IN ENGAGED IN EXTORTION AND THIS ENDED IN DENYING KNOWING MY SISTER'S CONDITION, HER DEATH, WHERE ABOUTS ILLEGAL CREMATION, ASSISTED WITH THE HELP OF CITY EMPLOYEES COURT RECORDS TAMPERING. JUDGE OVERTON ASSISTANT WHO STATED NUMEROUS TIMES THEY DID NOT RECEIVE PLEADINGS THAT WERE STAMPED BY COURT, NOT UNTIL THE COURT INVESTIGATOR.  INTRUSIA WARNED THEM I WAS GOING TO FBI FOR THEIR TAMPERING WITH OUR DOCUMENTS, MY PLEADING TO GET MY SISTER BACK HOME, DID THEY RESPOND.

RE: POLICE MISCONDUCT EXCESSIVE FORCE

POLICE COMMISSIONER DANIELLE OUTLAW STATED RECENTLY CITIZEN OF PHILADELPHIA SHOULD BE SAFE IN THEIR HOMES.

WE WERE DENIED EQUAL PROTECTION UNDER THE LAW AND THE POLICE CONDUCT IN THIS INSTANCE COULD HAVE RESULTED IN BOTH MY SISTER DEBRA'S AND MY DEATH "SEE MERCY HOSPITAL REPORT", POLICE REPORT BY SARGENT SHARP DC# _A5 - 22 - 151 25_

ENCLOSED IS CLAIM DOCUMENTS OF INJURY CAUSED BY POLICE ON FEB 25, 2019 IN WHICH THERE IS NO STATUE OF LIMATATIONS ON HUMAN TORTURE.

I WAS UNABLE TO ACT ON THIS DUE TO BEING TRAMATIZED IMMEASURABLY; I WAS ALREADY SUFFERING FROM MULTIPLE DISABILITIES WHICH TOLLS MY CLAIM.

THIS POLICE DISREGARD FOR MY WELL BEING WAS OFFICIAL OPPRESSION UNDER THE COLOR OF LAW WITH (TOTAL) GROSS DIREGARD FOR BOTH MY SAFETY AND THE SAFETY OF MY ALREADY MEDICALLY COMPROMISED INCAPACITATED SISTER, WHICH THE CORRUPT COURTS OF THIS CITY PROBATE AND ORPHAN COURT WITH THE AIDING AND ABETTING OF CLERKS OF COURT OFFICERS OF THE COURT CONCEALED HER WHERE ABOUT FROM MYSELF AND OLDER BROTHER  SAMUEL B. GIBSON BY FRAUD AND DECEIT AND THEY CREMATED OUR SISTER DEBRA WITHOUT OUR KNOWLEDGE OR NOTIFICATION SHE WAS EVEN DEAD, IN RETALIATION FOR TURNING THEM OVER TO THE SUPREME COURT DISCIPLIARY COUNCIL, THE FBI AND THE US ATTORNEY GENERAL'S OFFICE AND TO DA KRASNER WHICH WAS NEVER GIVEN TO HIM AND CONCEALED TO COVER UP THEIR CRIMES!

CORRUPTION IN ORPHANS AND PROBATION COURT

I WAS SUBJECTED TO AN ILLEGAL RESTRAINT AFTER I CALLED 911 FOR HELP BECAUSE OF A VIOLENT HOME INVASION IN WHICH MY DISABLED INCAPACITATED SISTER DEBRA GIBSON WAS TAKEN OUTSIDE IN BELOW FREEZING WEATHER AND PLACED IN A WHEELCHAIR BEHIND A UHAUL TRUCK USED TO STEAL HER HOSPITAL BED AND NUMEROUS VALUBLES, FLAT SCREEN TV'S,  VALUABLE VASE OFF MANTEL. MY SISTER WAS LIFTED UP AND PLACED IN THE BACK OF THE UHAUL WITH STOLEN ITEMS IN THREE DEGREES WEATHER (SEE NEIGHBORS STATEMENT MS. PITMAN MY RESTRAINT IN ONLY PAJAMAS AND SOCKS INTHREE DEGREES TEMPERTURE AND ICE AND SNOW CAUSED ME PERMANENT NERVE DAMAGE TO MY HANDS AND FEET AND RESULTED IN MORE FREQUENT PULMONARY ATTACKS AND EMERGENCY ROOM VISITS.

SIX DAYS AFTER THE 23RD OF JANUARY VISIT I HAD TO RETURN ON THE 29TH JANUARY FOR ANOTHER PULMONARY ATTACK TO THE EXACERBATION FROM EXCESSIVE FORCE IN EXTREME COLD ON JANUARY 20, 2015.

REGARD THE IDENTITY OF THE EIGHT POLICE OFFICERS THAT STORMED OUR HOUSE THAT NIGHMARISH MORNING, I WAS NOT ABLE TO WRITE DOWN THE BADGE NUMBERS OF ALL POLICE IN VOLVED, BECAUSE WHEN I PICKED UP A PEN TO WRITE DOWN THEIR BADGE NUMBER ONE OF THE YOUNG OFFICER APPROACHED ME SUDDENLY IN A THREATNING WAY AND STATED "PUT THAT PENCIL DOWN" IN HOSTILE WAY, AND I COMPLIED IN FEAR.

POLICE WROTE FRAUDULENT POLICE REPORT THAT DAY STATING  MY SISTER JACQULINE AS THE PERSON WHO CALLED POLICE. I DID, SHE DID NOT. THE POLICE DID NOT EVEN PUT IN THEIR REPORT THE FELONY HOME INVASION IN WHICH I WAS ASSAULTED AT DOOR IN A FORCED ENTRY OR THAT THEY ALLOWED ABDUCTORS TO TAKE MY ILL SISTER WHO HAD 24HR NURSES OUT HER HOSPIAL BED AND TAKEN OUTSIDE IN THREE DEGREE WEATHER WHICH WAS TORTURE TO MY SISTER AND MYSELF.

I CALLED 911 AGAIN WHEN I WAS FREE FROM ILLEGAL RESTRAINT AND GOT 22ND DISTRICT SUPERVISOR TO COME TO OUR HOME.  A SARGENT SHARP WROTE UP MISCONDUCT REPORTS AND PUT EIGHT OFFICERS OUT OF OUR HOME. OCCUPIED; ON JANUARY 20, 2015.

IN THE EARLY MORNING: THE POLICE AIDED AND ABETTED THE PERSONS INVOLVED IN THE ABDUCTION OF MY INCAPACITATED SISTER.  I AM INCLUDING IN THIS AFFIDAVIT STATEMENTS OF THE FACTS OF PREVIOUS OCCURANCES OF HARM AND INJUSTICES I HAD TO ENDURE WITHIN DAYS AFTER MY MOTHERS DEATH AND FUNERAL SERVICE BY THE PHILADELPHIIA POLICE DEPARTMENT, AND THERE AFTER INJUSTICES DIRECTED AT ME AS A PROSE LITIGANT IN PROBATE AND ORPHAN 'S COURT AND CITY EMPLOYEES TOOK PART. SEE DOCUMENT TO COMMON WEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE IN HERITANCE TAX DIVISION DIRECTOR.

## CORRUPTION/ PROBATE AND ORPNANS COURT

72

SEE ALSO <u>DOCUMET</u> FROM PHILADELPHIA TAX DIVISION. DATED 12/13/2018 THE ESTATE OF MY LATE MOTHER ESLIE GIBSON IS STILL OPEN DUE TO PUBLIC CORRUPTION TORTUOUS INTERFERENCE WITH MY EXPECTANCY OF AN INHERITANCE BY PROPONENT REMOVED EXECUTRIX JACQUELINE CARTER AND CORRUPT PLENARY GUARDIAN ALONG WITH JUDGE OVERTON WHO APPOINTED HIM AND WHO REFUSED TO ALLOW ME TO CARRY OUT ADMINISTATIVE JUDGES ORDER THAT MY INCAPACITATED SISTER COULD BE RETURNED HOME. INSTEAD JAMES TYLER ONE OF THE CONSPIRITORS IN THE FIXED TRIAL WHERE BY  NO NOTICE GIVEN TO CAUSE ME LOST BY DEFAULT REFUSED TO SIGN RENUNCIATION ON MY SISTER DEBRAS ESTATE DESPITE MY BROTHER SAMUEL GIBSON HAVING DONE SO. TYLER STUCK TO HIS MISREPRESENTION AND REFUSED TO RETRACT IT DESPITE NUMEROUS REQUEST VERBAL AND WRITTEN CORRESPONDENCE TO HIM AND DESPITE OFFICIAL FORMAL COMPLAINT TO THE SUPREME COURT DISCIPLINARY COUNCIL- TYLER AND THE JUDGE THAT APPOINTED HIM, JACQULINE CART RETAILIATED BY LETTING MY SISTER DIE WITHOUT ME KNOWING AND THE JUDGE ALONG WITH JUDGES STAFF, CITY EMPLOYEES ENGAGED IN RECORD TAMPERING STATING THEY NEVER RECEIVED MY PETION TO REVEAL MY SISTER DEBRA'S WHERE ABOUTS.

73

THE PETION WAS STAMPED IN ORPHANS COURT AND NOT UNTIL I TOLD ORPHANS COURT INVESTIGATOR INTRUSIA, I WAS GOING BACK TO FBI DID THE JUDGE REPLY ALL OF A SUDDEN THEY SUDDENLY FOUND IT.

74

SEE PETITION TO JUDGE OVERTON WHO RESIDED OVER MY LATE SISTERS ESTATE THIS JUDGE HAD DENIED ME DUE PROCESS FROM HEAR SAY FROM TYLER ESQUIRE AND THE JUDGE HAD KNOWKEDGE OF THIS; I WAS DENIED DUE PROCESS IN RETALIATION. THE ORDER HE ISSUED WAS ULTRA VIRES.

75

THE WHERE ABOUT OF MY SISTER DEBRA WAS KEPT SECRET BY FRAUD DECEIT AND CRIMINAL CONSPIRACY AND MY SPECIAL NEEDS SISTER DIED WITHOUT MYSELF AND BROTHER BEING INFOMED AND DEBRA WAS ILLEGALLY CREMATED IN RETAILIATION FOR ME GIVING STATEMENT TO STATE AND FEDERAL AUTHORITIES, I FOUND OUT ONLY WHEN I QUESTIONED JAMES TYLER ESQ. AS TO THE NATURE OF LAST FINACIAL REPORT. I GOT IN THE MAIL.

76

I HAVE BEEN PREVENTED FROM SETTLING MY LATE MOTHERS ESTATE FILE NUMBER 51 15W2491 TO FRAUD DECEIT CRIMINAL ACTS OF ALL NAMED PARTIES INCLUDING REMOVED EXECUTRIX WHO CASHED IN OVER 80 THOUSAND IN LIFE INSURANCE DESIGNATED TO HAVE WENT TO ALL FOUR SIBLINGS. JACQULINE CARTER MY ELDEST SISTER NEVER PAID ESTATE TAXES DESPITE BEING INSTRUCTED TO DO SO BEFORE OUR MOTHER DIED BY HER, ALL OF THIS IS IN COURT RECORD. INCLUDING EXECUTRIX BEING FOUND GUILTY OF FRAUD, UNDUE INFLUENCE ELDER ABUSE AND FILING FRAUDENT WILL. MY SISTER ALONG WITH PLENARY GUARDIAN, HER COUNCIL HOWARD SOLOMAN ESQUIRE AND JUDGE OVERTON AND CITY EMPLOYEES ENGAGED IN FELONY OBSTRUCTION OF JUSTICE, FBI INFORMED.

24                                                                                      25

26

77  I HAVE INCLUDED IN THIS AFFIDAVIT NOT ONLY INJUSTICES BY THE FHC AND THE PCHR BUT THE INJUSTICES I ENDURED BECAUSE THE OTHER CITY ENTITIES OF THE CITY I HAVE HAD TO ENDURE ALONG THE WAY. THE CITY OF PHILADELPHIA IS THE DEFENDANT AND I AVER HAS ENTITIES WHICH ARE ENGAGED IN PUBLIC CORRUPTION AND SYSTEMIC INSTITUTIONAL RACISM.

78  THE CITY OF PHILADELPHIA IS THE DEFENDANT WITH CHRISTOPHER RYDER, DIVISIONAL DEPUTY SOLICITOR AS IT'S CHIEF COUNCIL NOW HAS IN HIS POSSESSION IRREFUTABLE EVIDENCE OF PUBLIC CORRUPTION ENFORCED BY SYSTEMIC RACISM IN WHICH STATE AND FEDERAL CRIMES HAVE BEEN ENGAGED IN NUMEROUS TIMES BY NOT ONLY JUDGES, BUT CITY EMPLOYEES OF THE DA'S OFFICE, AND CRIMINAL ACTS AND CIVIL RIGHTS VIOLATIONS BY PHILADELPHIA POLICE OFFICERS ALL OF WHICH HAS BEEN COVERED UP IN FALSIFICATION OF POLICE REPORT, AND SELECTIVE PROSECUTION BY DENIAL OF THE RECEPT OF HOMICIDE TESTIMONY, EVIDENCE OF PUBLIC CORRUPTION ENGAGEMENT ON THE PART OF JUDGES, CITY CLERKS OF COURT ATTORNEY'S OF THE COURT AS WELL AS APPOINTED PLENARY GUARDIAN JAMES M. TYLER AND PROBATE ATTORNEY HOWARD SOLOMAN WHO ALONG WITH OTHER CONSPIRATOR FIXED A PROBATE COURT TRIAL IN THE OBSTRUCTION OF JUSTICE FOR UNJUST ENRICHMENT RETALIATION ON THEIR PART FOLLOWED.

79  I THE COMPLAINNANT IN THIS CASE AGAINST THE CITY OF PHILADELPHIA GAVE SOME OF THESE VERIFIED STATEMENTS TO ANTHONY DESANTIS THE CITY OF PHILADELPHIA'S OFFICE OF INSPECTOR GENERAL IN AN AFFIDAVIT, AND NUMEROUS EVIDENTIARY DOCUMENTS AND RECORDED VOICE MESSAGES LEFT TO BOTH FHC DIRECTOR AND TO PROSECUTORS OF THE DA'S OFFICE WHICH WERE REPEATEDLY IGNORED, INTERCEPTED OF STATED AND FEDERAL CRIMES COMMITTED.

80  I REPORTED TO FBI CORRUPTION IN CITY AGENCIES, I GAVE HOURS OF STATEMENTS. BOTH ASSISTANTS TO DA LARRY KRASNER KNOW ABOUT THE ALLEGATIONS OF THE PUBLIC CORRUPTION AND STATE AND FEDERAL CRIMES.

I LEFT AT LEAST HUNDRED OF MESSAGES TO DA'S OFFICE ONLY TO HAVE THEM, FORMER JUDGE CAROLYN TEMIN AND ROBSERT LISTENBEE IGNORED MY REQUEST FOR HELP IN THESE URGENT MATTERS WHICH INCLUDED A WHAT MY SELF, BROTHER AND DAUGHTER CONSIDERED WAS THE UNPROSECTED HOMICIDE OF MY LATE MOTHER AND CORRUPT PROCEEDINGS TO TAKE OVER HER ESTATE WITH JUDGES AND CITY CLERKS OF COURT AND ATTORNEYS AND INVOLVED IN THE RETALIATION BY THEM, WHICH WAS CONCEALMENT OF OUR SISTER LOCATION, HER BEING DISABLED AND NOT BEING ABLE TO FEND FOR HERSELF AND HER DEALTH WITHOUT NOTICE AND ILLEGAL CREMATION HER BY THEM. DA KRASNER NEVER INFORMED. THEY IGNORED MY PLEADING FOR HELP.

81  THE RETAILIATION AGAINST ME BY ORPHAN COURT AND PROBATE COURT OFFICIAL BEGAN WITH THE DENIAL OF THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA BY WAY OF DECEIT, FRAUD ON THE COURT BY ATTORNEYS, UNLAWFUL ORDERS GIVEN IN TREASON TO THE CONSTITUTION, WHICH SUGGEST A JUDGE ENGAGED IN EXTOTION AND THIS ENDED IN DENYING KNOWING MY SISTER 'S CONDITION, HER DEATH, WHERE ABOUTS ILLEGAL CREMATION, ASSISTED WITH THE HELP OF CITY EMPLOYEES COURT RECORDS TAMPERING.

27                                                                                    26

JUDGE OVERTON ASSISTANT WHO STATED NUMEROUS TIMES THEY DID NOT RECEIVE
PLEADINGS THAT WERE STAMPED BY COURT, NOT UNTIL THE COURT INVESTIGATOR, INTRUSIA
WARNED THEM I WAS GOING TO THE FBI FOR THEIR TAMPERING WITH MY DOCUMENTS, MY
PLEADING TO GET MY SISTER BACK HOME BUT FOR THE DISCRIMINATION, CORRUPTION, AND
CRIMINAL ACTS BY THE DEFENDANT. I MICHAEL GIBSON WOULD NOT HAVE SUFFERED
PHYSICAL AND PSYCHOLOGICAL TRAMA.

POLICE MISCONDUCT
POLICE MISCONDUCT, USE OF EXCESSIVE FORCE, RECKLESS ENDANGERMENT, TOTURE BOTH
MYSELF AND INCAPACITATED SISTER WAS DENIED EQUAL PROTECTION UNDER THE LAW
AGGRAVATED ASSAULT, ILLEGAL RESTRAINT

83   I WAS SUBJECTED TO AN ILLEGAL RESTRAINT AFTER I CALLED 911 FOR HELP BECAUSE OF A
VIOLENT HOME INVASION IN WHICH MY DISABLED INCAPACITATED SISTER DEBA GIBSON WAS
TAKEN OUTSIDE IN BELOW FREEZING WEATHER AND PLACED IN A WHEELCHAIR BEHIND A
U-HAUL TRUCK USED TO STEAL HER HOSPITAL BED AND NUMEROUS VALUBLES, FLAT SCREEN
TV'S VALUABLE VASE OFF MANTEL. MY SISTER WAS LIFTED UP AND PLACED IN THE BACK OF
THE U-HAUL WITH STOLEN ITEMS IN THREE DEGREE WEATHER (SEE NEIGHBORS STATEMENT)
MS. PITMAN MY RESTEAINT IN ONLY PAJAMAS AND SOCKS IN THREE DECREE TEMPERTURE
AND ICE AND SNOW CAUSED ME PERMANENT NERVE DAMAGE TO MY HANDS AND FEET AND
RESULTED IN MORE FREQUENT PUMONARY ATTACKS AND EMERGENCY ROOM VISITS.

84   SIX DAYS AFTER THE 22ND OF JANUARY VISIT, I HAD TO RETURN ON THE 29TH JANUARY FOR
ANOTHER PULMONARY ATTACK TO THE EXACERBATION FROM EXCESSIVE FORCE IN EXTREME
COLD ON JANUARY 20, 2015.

85   REGARD TO LTHE IDENTITY OF THE EIGHT POLICE OFFICERS THAT STORMED OUR HOUSE THAT
NIGHTMARISH MORNING, I WAS OT ABLE TO WRITE DOWN ALL THE BADGE NUMBERS OF THE
POLICE INVOLVED, BECAUSED WHEN I PICKED UP A PEN TO WRITE DOWN THEIR BADGE
NUMBER, ON E OF THE YOUNG OFFICER APPROACHED ME SUDDENLY IN A THREATNING WAY
AND STATED "PUT THAT PENCIL DOWN " IN AN HOSTEL WAY, AND I COMPLIED IN FEAR.

86   POLICE WROTE FRAUDULENT POLICE REPORT THAT DAY STATING MY SISTER JACQULINE AS THE
PERSON WHO CALLED POLICE. I DID, SHE DIN NOT. THE POLICE DID NOT EVEN PUT IN THEIR
REPORT THE FELONY HOME INVASION IN WHICH I WAS ASSAULTED AT DOOR IN A FORCE
ENTRY OR THAT THEY ALLOWED ABDUCTORS TO TAKE MY ILL SISTER WHO HAD 24 HR NURSE
OUT HER HOSITAL BED AND TAKEN OUTSIDE IN THREE DECREE WEATHER WHICH WAS
TORTURE TO MY SISTER AND MYSELF.

87   I CALLED 911 AGAIN WHEN I WAS FREE FROM ILLEGAL RESTRAINT AND GOT 22ND DISTRICT
SUPERVISOR TO COME TO OUR HOME. A SARGEANT SHARP WROTE UP MISCONDUCT REPORTS
AND PUT EIGHT OFFICERS OUT OF OUR HOME. OCCUPIED; ON JANUARY 20, 2015.

88   IN THE EARLY MORNING: THE POLICE AIDED AND ABETTED THE PERSONS INVOLVED IN THE
ABDUCTION OF MY INCAPACITATED SISTER. I AM INCLUDING IN THEIS AFFIIDAVIT STATEMENTS
OF THE FACTS OF PREVIOUS OCCURANCES OF HARM AND INJUSTICES I HAD TO ENDURE WITH
IN DAYS OF AFTER MY MOTHERS DEATH AND FUNERAL SERVICE BY THE PHILADELPHIA POLICE
DEPATMENT , AND THERE AFTER INJUSTICES DIRECTED AT ME AS A PROS LITIGANT IN PROBATE
AND ORPAN'S COURT AND CITY EMPLOYEES TOOK PART. SEE DOCUMENT TO
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE INHERITANCE

29                                                                                          28

RE: POLICE MISCONDUCT EXCESSIVE FORCE

POLICE COMMISSIONER DANIELLE OUTLAW STATED RECENTLY CITIZEN OF PHILADELPHA SHOULD BE SAFE IN THEIR HOMES.

WE WERE DENIED EQUAL PROTECTION UNER THE LAW AND THE POLICE CONDUCT IN THIS INSTANCE COULD HAVE RESULTED IN BOTH MY SISITER DEBRA'S AND MY DEATH "SEE MERCY HOSPITAL EPORT:, POLICE REPORT BY SARGENT SHARP DC# 15-22-151-25

ENCLOSED IS CLAIM DOCUMENTS OF INJURY CAUSED BY POLICE ON FEBRUARY 20, 2019 IN WHICH THERE IS NO STATUE OF LIMINTATIONS ON HUMAN TORTURE.

I WAS UNABLE TO ACT ON THIS DUE TO BEING TRAMATIZED IMMEASURABLY; I WAS ALREADY SUFFERING FROM MULTIPLE DISABILITIES WHICH TOLLS MY CLAIM.

THIS POLICE DISREGARD FOR MY WELL BEING WAS OFFICIAL OPPRESSION UNDER THE COLOR OF LAW WITH (TOTAL) GROSS DISREGARD FOR BOTH MY SAFETY AND THE SAFETY OF MY ALREADY MEDICALLY COMPROMISED INCAPACITATED SISTER, WHICH THE CORRUPT COURTS OF THIS CITY PROBATE AND ORPHAN COURT WITH THE AIDING AND ABETTING OF CLERKS OF COURT OFFICERS OF THE COURT CONCEALED HERE WHERE ABOUTS FROM MYSELF AND OLDER BROTHER SAMUEL B. GIBSON BY FRAUD AND DECEIT AND THEY CREMATED OUR SISTER DEBRA TURNING THEM OVER TO THE SUPREME COURT DISCIPLINARY COUNCIL, THE FBI AND THE US ATTORNEY GENERAL'S OFFICE AND TO DA KRASNER WHICH WAS NEVER GIVEN TO HIM AND CONCEALED TO COVER UP THEIR CRIMES.

PLAINTIFFS 1st, 4th, 5th, AND 14TH AMENDMENT RIGHTS WERE VIOLATED UNDER THE COLOR OF LAW.

RECORDING OF THE 911 CALL WILL EVIDENCE PLAINTIFF HAD TO CALL SUPERVISOR ON THE EIGHT POLICE OFFICERS THAT STORMED OUR HOME THE JANUARY 20, 2015 DAY IN THREE DEGREE WEATHER. THE 911 CALL I MADE FOR HELP RE: FORCED ENTRY TO MY HOME IS IRREFUTABLE.

<u>AFFIDAVIT OF MICHAEL GIBSON CONCLUSION</u>

BUT FOR THE ENGAGEMENT IN PUBLIC CORRUPTION, CRIMINAL ACTS AND CIVIL VIOLATIONS OF THE LAW BY THE DEFENDANT, THE CITY OF PHILADELPHIA, I MICHAEL GIBSON THE PLAINTIFF IN THIS CASE IN THE JURISDICTION OF PHILADELPHIA WOULD NOT HAVE SUFFERED PHYSICAL AND PSYCHOLOGIAL INJURY AND TRAMA , CLAIM BASED ON VIOLATIONS OF 42USC 1983. THERE IS NO STATUTE OF LIMITATION ON TORTURE; THERE IS NO STATUTE OF LIMITATION CONTAINTED WITHIN THE LANGUAGE OF 42 USC S 1983. THE U.S. SUPREME COURT HAS DIRECTED THAT 42 USC 1983 CLAIM THE MOST ANALOGOUS STATE STATUTE OF LIMITATION OWENS V. OKURE, 488 US 235 24 (1989)

REC'D OCT 26 2023

REC'D OCT 26 2023

Exhibit 2

Police Advisary

Police Excessive Fore



**Citizens Police Oversight Commission** CITY OF PHILADELPHIA

# COMPLAINT FORM

Date Received: _____
Complaint #: _____

| Name of Complainant: | MICHAEL GIBSON | Date of Birth: | 12/13/49 |
|---|---|---|---|
| Complainant Address: | 2130 N. VAN PELT ST | | |
| City, State, Zip Code: | Philadelpia PA 19121 | | |
| Primary Phone: | 2673704152 | Primary Email: | MIKE GIBSON 007@GMAIL.COM |

## Complainant Demographics

### Gender

| ◯ Female | ◯ Non-Binary/Third Gender | ◯ Prefer to self-describe: | |
|---|---|---|---|
| ⊗ Male | ◯ Trans Male | ◯ Trans Female | ◯ Prefer not to answer |

### Race

| ☐ White | ☒ Black/African American | ☐ American Indian/Alaska Native | ☐ Other/Not listed |
|---|---|---|---|
| ☐ Asian | ☐ Native Hawaiian/Other Pacific Islander | ☐ Prefer not to answer | |

### Ethnicity

| ◯ Hispanic/Latinx | ◯ Not Hispanic/Latinx |
|---|---|

### Disability

| Do you have a disability? | ⊗ Yes  ◯ No | Is your disability related to the incident? | ⊗ Yes  ◯ No |
|---|---|---|---|
| If yes, please list disability here: | VIOLENT ASSAULT EXACERBATED COPD Chronic Ephysema | | |

*Note: CPOC only has jurisdiction over the Philadelphia Police Department. Complaints involving other police departments will be forwarded to the appropriate agency.*

| Did the incident involve a Philadelphia Police Officer? | ⊗ Yes | ◯ No |
|---|---|---|

## Police Officer Involved Information

| Badge # | Name | Race/Gender | Identifying Features (e.g., hair, height, etc.) |
|---|---|---|---|
| 1606 | Eziekiel Cortes | Hispanic | Black and grey hair Approx 250 LBS. |
| | | | |
| | | | |

| Date and Time of incident: | September 20, 2023 time Approx 3:00 PM |
|---|---|
| Location of incident: | Lobby of the 22ND Police |

| Were any injuries suffered? | ⊗ Yes  ◯ No | If yes, please describe: | INJURY TO Chest, Chest PAIN COPD EXACERBATION |
|---|---|---|---|
| Was medical treatment provided for injuries? | ⊗ Yes  ◯ No | If yes, please describe: | Temple Hospital Emergency Rm Primary Doctor |
| Were photos taken? | ◯ Yes  ◯ No | If yes, by whom? | ASSAULTED IN FRONT OF ATM, Body Cam |
| Was the event digitally recorded? | ◯ Yes  ◯ No | If yes, by whom? (e.g.: self, business surveillance, etc.) | ATM CAMERA ASSAULTED IN FRONT OF |

## Continue on next page

1515 Arch Street, 11th Floor
Philadelphia, PA 19102

Phone: (215) 685-0891
Fax: (215) 685-0895

Email: CPOC@phila.gov

Continuation of
Complaint Form

of continuation

Michael Gibson
2130 N Van Pelt St
Phila. PA 19121
267-370-4102

Direct Email mikegibson007@gmail.com

Citizens Police
Oversight Commission
1515 Arch St. 7th FL
Philadelpia PA 19102
Email CPOC @)Phila.gov

Testimony of Michael Gibson

I michael Gibson am a victim witness whistleblower
on public corruption, systemic Racial Discrimination
by the Philadelpia Police Department 22ND District
and the Police I.A.D division
I am currently involved in a civil Rights 1983
discrimination case against the city of Philadelpia
of which I have a city case number and a
Pennsylvia Human Relation case number and
now have the issued right to sue letter
    On September 20 2023 I went to the police
district in my Area the 22ND police district
to inquire if the criminal complaint I made
against an Attorney and two of her associate
Attorney's for fraud stealing 2000 dollars
I paid this attorney with decades of experience
to draft my pro se 1983 discrimination law
complaint to be filed in federal court.
    That day I was violently assaulted by a police
officer while exerting my 1st amendment right
to inquire if the complaint was sent to
central Detective for Investigation.

Factual
Background
Continued on
the following
pages

Michael Galson
10/22/23

I was seeking Justice in the Sabotaging of my 1983 Race Discrimination Case.

In The september 20 2023 Police Department incident which occured in the Lobby of the 22ND police station, Plaintiff was Exercising his 1ST Amendment right to inquire into whether the Police report he Filed against three white Attorneys who engaged in colluding with the Defendant the city of Phila which involved officers from P/o Ezekiel Cortes's District along with a supervisor Sargent Robert Sharp who along with IAD investigator Sgt william Yancer violated police customs practices by Fraudulent misrepresentations Fraudulent concealment by way of Police perjury to cover up Police Excessive force on Plaintiff in the Feb 20 2015 incident wherein his incapacitated sister Debra was allowed to be removed from his residence illegally in 3 degree weather

Officer Cortes violently assaulted Plaintiff with racial animosity, which he Exhibited in front of three white citizens, whom he was taking a criminal complaint after He blew me off without the correct information I needed to give testimony to central Detectives for Fraud and Embezzelment by Attorneys that Colluded with the City in my case, protecting and Shielding the police in their misconduct, by sabotaging my complaint to be dismissed, They intentionally did not use the the information Former Delaware Prosecutor Matthew Smith's input in Drafting Complaint Attorney Smith left the Firm abruptly.

Michael Gibson 10/22/23

②

police officer Cortes's BADGE # is 1606, which
CPL Brook gave Plaintiff on an envelope to file
a complaint and submit to station, stating he had body camera on.

Plaintiff was in pain after the blow to his chest
by this officer and was in pain as a result
of this assalt in which Plaintiff had to
go to Temple Hospital for treatment,

This incident causes Plaintiff physical and psychological
harm wherein Plaintiff was afraid to leave his
home once there.

When Plaintiff was assaulted Plaintiff was aware
That the officer was approching him to harm him
because he angrily stated "cant you see I'm
waiting on them" meaning the three white
citizen he treated differently than the
desprite treatment toward Plaintiff.

This officer had a duty of care which
he breached with wonton and willful
racial animous which he exhibited
openly once behind the glass partition
before the CPL came down stairs after
I walked away and called and asked
for the Cpl. He shouted from behind
The glass loudly in front of another officer
"get out of here" twice like you would
shout at an animal.

Officer Cootes's assault on Plaintiff violated Plaintiff 1st amendment denying him the information he needed to seek justice in the fraud and theft of the money he paid for federal court pro se complaint,

• He violated Plaintiffs 4th amendment right to be free from excessive force on him, when Plaintiff was a elderly disabled 140 LB. Black man exerting his rights, which this Officer has engaged in the deprivation of the plaintiff's rights with outrageous racial hatred towards plaintiff causing him harm with malicious intent to threathen and injure plaintiff and discourage his persuing the attorneys being held accountable for criminal conspiracy victim witness evidence tampering as well as the keeping plaintiff from testifying

• Against the involved officers in his district and IAD, For the same and retaliation.

The police officer Eziekiel Cortes was informed by victim Plaintiff, he was a Plaintiff in Racial Discrimination case, and was inquiring if the officer that took the report of Fraud Embezzelment and victim witness Evidence tampering and collusion to sabatoge a victim Plaintiffs 1983 Discrimination case to be heard in Federal Court went to Central.

It is victim, Plaintiffs presumption this officer was aware Plaintiff had complaints against his District. Becouse Plaintiff had spoken to several officers in this matter including Cpl Brooks of the 22nd District and the commanding officer Goodman that stated Brooks Did the correct thing telling me to file a complaint instead of them taking one when the assault an Incident occured.

It is Plaintiffs suspicion that this officer is related to City Solicitor Ms Diann Cortes who is stepping Down in November. And is aware of the case of Racial Discrimation in several City Agencies she is in charge of in the Law Dept.

She has my numerous Affidevits Demand Letters And Evidence of Public corruption which was sent to the Mayor and info to Special Investigations verification

I Michael Gibson Am the author of this CPOC Complaint and the Facts and statement have Included within are true and correct to the best of my knowledge information and belief that this verification is subject to the penalties of 18 Pa. C section 4904 relative to falsification to Authorities

Michael Gibson 10/22/23

RECD OCT 26 2023

Exhibit 2

Police
Misconduct

This certificate is attached to a _____2_____ page(s) document dealing with Michael Gibson Police Misconduct Took Place /entitled Michael Gibson Affidavit Aver and Dated 7/13/2022.

45
53 MG.

# JURAT/AFFIDAVIT CERTIFICATE

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

On this 13th day of July, 2022.

Before me, the undersigned notary public, personally appeared Michael Gibson proved to me

through satisfactory evidence identification, which was ___Pa Driver Lic___

Type of Identification

to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his /her knowledge and belief.

```
Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936
```

_Dorothy Butler_
Signature of Notary Public

_October 23, 2025_
Commission Expiration Date of Notary Public

SEAL

52

31

City of Philadelphia
Risk Management Division Claims Unit
1515 Arch St.
Philadelphia, PA. 19102

April 28, 2022

Police Misconduct: Incident Date February 20, 2015

Continuation of Affidavit of Michael Gibson I Aver the Following Took Place on Jan 20, 2015.

RE: Violation of the Law under the Color of Law by Philadelphia Police Officers of 22nd District

Count 1: I Aver Fraudulent Misrepresentation, Fraudulent Concealment 42.9
Count 2: I Aver Aggravated Assault and Battery Title 18 sec 2702
Count 3: I Aver Illegal Restraint chap 29, 2010 Pennsylvania Code 2902
Count 4: I Aver Violation of Title 18 242 resulting in Injury
Count 5: I Aver Threats and Intimidation Title 18 C.S.A. 2706
Count 6: I Aver Elder Abuse,
Count 7: I Aver Gross Negligence Enabling Abductors
Count 8: I Aver Adult with Disabilities Act Violation
Count 9: I Aver Intentional Negligence
Count 10: I Aver Intentional Infliction of Emotional Distress
Count 11: I Aver Title 5-3331 Violation of Oath to Protect and Serve
Count 12: I Aver 14th Amendment Violation Denied Equal Protection under the Law
Count 13: I Aver 1st Amendment Violation Denied Freedom of Expression
Count 14: I Aver 4th Amendment Violations
Count 15: I Aver Reckless Endangerment
Count 16: I Aver Official Oppression Title 18 PA General Assembly 5302 Chap 53
Count 17: I Aver Torture Title 18 Sec 2340 A U.S.C.
Count 18: I Aver Aiding and Abetting Felony Home Invasion-52 Pa C 1051 11
Count 19: I Aver Aiding and Abetting an Abduction 52 Pa C. 1051.11
Count 20: I Aver Hindering Apprehension of Prosecution 18 Pa CS5105

55

Continuation of Police Misconduct:
Affidavit of Michael Gibson I Aver the Following Took
Place on Jan 20, 2015

Count 21: I Aver Violation of Title 20 PA General Assembly Act of Nov. 1987 PL 381
No. 79 The Older Adult Protection Services Act. 2017 Legist ration Enforcement
Penalties
Count 22: Causation 4.3 Injuries
Count 23: I Aver 5th Amendment Violation.
Count 24: I Aver Evidence Tampering
Count 25: I Aver Witness Tampering
Count 26: I Aver Falsification to Authorities

I Michael Gibson Plaintiff and Claimant in this case, State I Aver But for the
Outrageous Atrocious behavior and conduct of Philadelphia Police Officers I would
not have been subjected to permanent physical and psychological injury and trauma.
This incident occurred of February of 2015. The police report was Falsified, the report
of the incident to DA Krasner was Fraudulently Concealed from him within the
DA's Office. Contrary to police report there was several witnesses in my home. The
Nurse Attendee Moesa Molency phone number 267-248-5877 Agency Quality
Progressions witness to safe robbery DC#013315. SEE Police Report DC#15094
(Fraudulent) get before threatened to put down pencil. I was writing with, I
witnessed the inhumane treatment and the torture my Special needs sister Debra
Gibson was subjected to in three degree weather with snow and ice on the ground.
Allowed by Philadelphia Police Officers sworn to protect and serve.
Claimant (Avers and Pleds) defendants violated Rico Act and there for Tolling Statute
of Limitations. Tolling Doctrine of Fraudulent Concealment and Dgress. Claiment also
claims Rico claim of threat of injury if continue to write down Badge Numbers.
Claimant Traumatized these averment Pled with Particularity (Dummar V. Lumis)
(543 F. 3d 614.62) (10th eir 2008. SEE EXHIBIT Police Domestic Violence Report
Dated 2-20-15 DC# 15094 Reporting Officers Young 277502 #7201, Brennan 277539
# 6988 reviewed by Supervisor #515 Badge Numbers of Officers in my home. I was
able to write down after being released from restraint and before being threatened
not to write down badge numbers. Badge numbers 2211, 22F Not Sure 3785 or 5785,
2055 was nervous, hand shaking.

54

2

33

REC'D OCT 26 2023

REC'D OCT 26 2023

Exhibit 4

Police Misconduct

Michael Gibson

53

# PENNSYLVANIA NOTARIAL CERTIFICATE
## (VERIFICATION UPON OATH OR AFFIRMATION)

VERIFICATION ON OATH OR AFFIRMATION WITH AFFIANT STATEMENT

Commonwealth of <u>Pennsylvania</u>}

County of <u>Philadelphia</u>}

Signed and sworn to (or affirmed) on this 13th of July, 2022 before me Dorothy Butler the
                                       day Month Year
Undersigned Notary Public. Michael Gibson personally appeared before me
I hereby state that the information is true to the best of my knowledge. I also confirm that the
information is both accurate and complete, and relevant information has not been omitted.

☐ Personally known to me --OR--
☑ Prove to me on the basis of satisfactory evidence

to be the person whose name (s) is/are subscribed
to the within instrument, and acknowledgement to me
that he/she/they executed the same for the purposes
therein stated.

(STAMP)

_____
Signature of Notary Officer

_____
Name of Notary Officer

_____
Title of Officer

My commission expires _October 23, 2025_

4

46

AFFIDAVIT POLICE MISCONDUCT                    46

## POLICE MISCONDUCT, USE OF EXCESSIVE FORCE, RECKLESS ENDANGERMENT, TORTURE, AGGRAVATED ASSAULT, ILLEGAL RESTRAINT, FALSIFICATION OF MATERIAL FACTS IN POLICE REPORT.

### May 6, 2022

I Michael Gibson Plaintiff and Victim in This Case States that the Following Averments is a Chronological Order of the Events on the Morning of February 20th, 2015.

1. I Aver at approximately at 7:45 A.M., I came down my stairs and asked the attending over night nurse about my incapacitated sister Debra Gibson who was in her hospital bed in the adjacent Den Room " Is Debra was OK"As I did every morning before getting dress and starting my day. The nurse Moesa Morenoy stated "Debra was OK"

2. I Aver while on my stairs the bell rang. I went to the door looked out, it was a first cousin AlBert Gibson. I opened the door asked him why he was not at my mother's funeral, just five days ago. All of which I testified to in PFA order and at Domestic Violence Trial and again before Orphan Court Judge George Overton on September 10, 2015.

3. I Aver with no warning Albert struck me in my chest knocking me back gaining forced entry to my home.

4. I Aver upon his entrance, behind him ~~before~~ WAS MJG6 my eldest sister Jacqueline Carter, her husband, Alexander Carter and a woman I never seen before, later identified to me by the Police Supervisor Sergeant Sharp that arrived upon my 2nd 911 call for help on the home invaders and the out of control eight Police Officers that were defiant and ignored my pleas for help and they conducted themselves in a unlawful and hostile manner towards me the victim.



47

5. I Aver the Officers terrorized me, one restraining me, and after I was freed restricted my movement in my home allowing abductors to proceed removing my incapacitated sister out her hospital bed, and there after allowing her to be taken outside in 3 degree weather with snow and ice on ground.

6. I Aver the Supervisor Police Sergeant, Sergeant Sharp put those officers out of my home and upon him leaving he wrote the name down of the unknown woman identified as Denise Haines of *Quality Progressions* M.G.

7. I Aver Sergeant Sharp knew who I was, the Sergeant was at my home previously for being called by myself and elder brother Samuel B. Gibson because of suspected Homicide of our late mother Elsie Gibson just weeks prior by the Carters.

8. I Aver there are approximately 26 police DC Numbers and reports due th this and other threats intimidation and illegal lockout from my home in which police did nothing. The DA's Office Financial Crimes unit as well as Special Investigation Unit had these DC numbers of reports concealed from District Attorney Larry Krasner as well as the Felony Home Invasion Abduction, Police covered up as well as use of Excessive Force on me.

9. I Aver that when the Police first arrived after the 1st 911 called I opened front door and explained to them I was assaulted and the perpetrators forced their way in my home and continued to forcibly confine me in the living room chair and continued verbal threats and confinement of my movement.

10. I Aver my first call to 911 was help after being forced to sit down in living room chair by Albert Gibson a man of big stature. I managed to break free after confinement and went upstairs and get my cell phone to call 911, the perpetrator of the invasion of my home had snatched all of the house phone out of the walls in the entire house, which I informed officers when they entered my home.

11. I Aver I told the Officers upon arrival of their forced entry and assault on me and the police made no attempt to arrest them. The perpetrators had

2



48

taken many valuables and were attempting to take my in capacitated sister Debra Gibson out of her hospital bed and remove her from our home.

12. I Aver I pleaded to officers not to allow this, as it would place Debra in EXTREME DANGER, they continued to ignored what I was saying all eight of them.

13. One big officer forcefully grabbed and restrained me. "I began hollering let me go" he, refused, twisting my arms and prevented me from going inside my home.

14. I had only pajamas and socks on, I was in Extreme pain and cold; it was 3 degrees that day.

15. I Aver I started yelling since they refused to listen. I kept yelling you can't let them take my sister out this house.

16. I Aver there was no Medical Doctor's Order to justify the inhumane treatment of my sister which was torture to Debra and torture to me in witnessing this brutal conduct being permitted by Officers Sworn to protect and Serve.

17. I Aver that when recovered from what from a violent Pulmonary Attack, I called 911 again.

18. I Aver I later found out from my mother's Elderly Friend and neighbor Mrs. Clementime Pittman who lives 2137 Across the street who had witnessed Debra sitting out in the three degree frigid weather with snow and ice on the ground in her wheelchair behind a large U-haul Truck.

19. I Aver that when the big officer that was restraining me in the Freezing Doorway of my home , let me go, I went in my home and saw they were allowing Debra to be lifted out of her hospital bed.

20. I Aver All eight officers ignored my Pleas and I went in another room and called 911 again and asked for a Supervisor stating it was a Life and Death situation. A Police Sergeant showed up.

49

21. I Aver prior to Supervisor arrival I picked up a pen on our mantel piece and began to write the badge numbers of the Officers down and a young police officer approached me in threatening way with what appeared to be hand on his gun and he stating angrily, put that pen down, I was shaking and still in a lot of pain.

22. I Aver Debra was lifted up and placed in the back of that u-haul truck which I did not witness due to restricted movement in home. My mother friend has firsthand knowledge of this and she witnessed it, and cried. SEE her Statement of Mrs. Clementine Pittman. Also, Orphan's court Document.

23. I Aver the report DC#15094 clearly reveal A False Fraudulent Police Report Fraudulent Misrepresentation, and Fraudulent Concealment of Material Fact.

24. I Aver The Following:
   1. I'm the one that called 911 for immediate help a recorded 911 call
   2. The Police Officer writing that report on a Domestic Violence Report with me the Victim Affiant as the Offender is reprehensible and Outrageous

25. I Aver the two reporting Officers on that report Lied also about witnesses there were two witnesses present, The nurse Day shift nurse of 7 a.m. to 3 a.m. Moesa Morency also was witness and contents on February 13th the day before Funeral Service by Conspirators of home Invasion and Abduction All in Police Report and Court Sworn Testimony by Affidavit. There was also a home health Aid name Doris who helped the Perpetrators.

26. I Aver they Lied also stated Mrs. Carter was Frightened. Reporting police stated in report Ms. Carter was frightened when I'm a Disable Senior seriously ill weighing 147 lbs and these perpetrators has three big men with her, two of whom already attacked me and stated they speak for her. SEE Demand Letter to Carters, Dated_____.

27. I Aver the Statements by reporting Officer that incident was only about sisters living arrangement any possession is a Fabrication of the True material Facts that they as Officer of Law aided and abetted perpetrators of

48

50

*50*

a Felony Home Invasion in which I was brutally attacked and they are principles in these crimes.

28. I Aver I have been physically and mentally traumatized by these officers of the Law, Sworn to uphold the Law, The Color of The Law under the Color of Law  SEE AFFIDAVIT and Evidentiary Documents

29. I Aver Sergeant Sharp is in no way responsible for the Actions of Those Eight Officers.

30. I Aver the Police Officer's behavior on the morning of February 20, 2015 was racially Discriminatory in All Levels of their conduct conducted towards me, an Elderly ill Disabled Blackman and my Developmentally Disabled sister Debra Gibson on that day. My Pleas for Help Ignored, instead I was Assaulted, Restrained and Denied Constitution Rights with Threats and Intimidation causing me severe Physical and Psychological Injury and Trauma.

Their Actions with mens Rea criminal intent committed the Acts and covered them up with a Culpable State of Mind.  Fraudulent Concealment, Fraudulent Misrepresentation. Fraudulent Concealment is founded on the Principle of Estoppel. A Defendant should not be permitted to invoke the Statue of Limitations if Through fraud or Concealment "he causes the Plaintiff to relax his Vigilance or Deviate from his right to inquire into the Facts" Fine V. Checcio – 870 A. 2d 850 860 (PA. mar.6 2012).

31. I Aver the Conduct and Actions by the (8) Eight involved Police Officers was racially Discriminatory and Desparate Treatment of myself and my Special Needs incapacitated sister Debra Gibson now Deceased while in the Custody of those that police allowed her Abduction on February 20, 2015. CONCLUSION, The Police Officers Conduct on February 20, 2015 was in VIOLATION of their Oath to Protect and Serve TITLE 5 SEC 504 VIOLATION of TITLE VII of the Civil RTS Act VIOLATION of A.D.A. SEC 504 VIOLATION of the Civil RTS Act of 1969 VIOLATION under the Tort Claim Act- Civil RTS, Act of 1871 (42 VISC 1985 USE OF EXCESSIVE FORCE. The Philadelphia Police are Causation of Separation of Plaintiff from beloved sister Debra Gibson NEVER to be seen again in Life or Death, by (Affiant Plaintiff) older brother Samuel B. Gibson and our Family, the People that loved her.

*49*

*51*

51

32. I Aver The Conduct and Actions by the involved Eight Police Officers was Racially Bias and Desparate Treatment of myself and my Special Needs Incapacitated sister Debra Gibson. On All Level They Showed Total Disregard for Our Safety which was Reckless Endangerment, Totally ignoring Pleas for Help from an Elderly Disable Black Man who Explained He had been ATTACKED. They in turn Engaged in Deprivation of Rights of my Freedom of Movement of Speech and Expression Coupled with Threat and Intimidation In My Own Home causing me Severe Injury and Harm compound on the Injuries caused by Assault by The Home Invader Assault and Abduction of Debra (my sister.)

33. The Police Officers Conduct on That Morning of February 20, 2015 was in Violation of Their Oath to Protect and Serve; TITLE VII OF THE CIVIL RTS ACT.

34. Violation of the CIVIL RTS OF 1969 Violation Under The Tort Claims Act Civil RTS Act of 1871 (42U.S.C. 1985 Use of Excessive Force).

35. The Police Failed to Protect and Serve and Apprehend Assailants Home Invaders Abductors-Criminal Causation 4.3 of Victim Plaintiff Affiants harm cause in Fact and Proximate Cause of Plaintiff Affiants Injury's but for Their Action Affiant would not be suffering from Severe Permanent Physical and Psychological Injury and Trauma.



52

52

# NOTARY ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of Pennsylvania

County of Philadelphia

On July 13, 2022 before me Dorothy Butler Notary Public

(Name and title of officer), personally appeared Michael Gibson who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

```
Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936
```

Signer Name _Michael Gibson_

Signer Signature _Michael Gibson_

Signer Proof of ID _PA Driver Lic_

WITNESS my hand and official seal

Signature _Dorothy Butler_

Print Name _Dorothy Butler_

(Seal)

51
51

1

53

REC'D OCT 26 2023

REC'D OCT 2 6 2023

Exhibit 5

DeMAND Letter

Revised AFFiDAvel

Michael Girs

This certificate is attached to a _____7____ page(s) document dealing with Michael Gibson City Solicitor Christopher Rider /entitled Michael Gibson Affidavit Demand Letter and Dated 7/13/2022.

# JURAT/AFFIDAVIT CERTIFICATE

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

On this 13th day of July, 2022.

Before me, the undersigned notary public, personally appeared Michael Gibson proved to me

through satisfactory evidence identification, which was ___PA DRIVER LIC_____

Type of Identification

to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his /her knowledge and belief.

Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936

_Dorothy Butler_
Signature of Notary Public

_October 23, 2025_
Commission Expiration Date of Notary Public

SEAL

2

MICHAEL GIBSON
2130 N. VAN PELT ST
PHILADELPHIA, PENNSYLVANIA. 19121
PHONE: 267-370-4152

Direct E-Mail mikegibbson007@gmail.com

DATE: _Tuesday_ ~~Monday~~ Sept 18ᵗʰ 2022
M.G.

## CERTIFIED MAIL, RETURN RECEIPT-REQUESTED

CHRISTOPHER RIDER ESQ.
DEPUTY CITY SOLICITOR
LAW DEPARTMENT CLAIMS UNIT
DOCUMENTS ENCLOSED, INCLUDING REVISED AFFIDAVIT
_including 92 pages of Evidentiary Documents_
_to be presented As Exhibits. M.G._

JAMES KENNEY
MAYOR OF PHILADELPHIA
CITY OF PHILADELPHA, LAW DEPT.
1515 ARCH ST. 16ᵀᴴ FLOOR
PHILADELPHIA, PA. 19102

This is a Formal Demand Letter
City Claim#: 2019087753
PH RC#: 201905041

RE: MICHAEL GIBSON            V            THE CITY OF PHILADELPHA
       PLAINTIFF                                    DEFENDANT

2

3

Dear Mayor Kenney and Mr. Christopher Rider: this communication is addressed to both of you because of my Past Experiences of numerous counts of illegal interception of written and wire electronic communication & which were strictly confidential to Law Enforcement District Attorney Larry Krasner and yourself. Mayor Kenney this information VERIFIED STATEMENTS and EVIDENTIARY DOCUMENTS was IRREFUTABLE EVIDENCE of STATE AND FEDERAL CRIMES COMMITTED in this JURIDICTION UNDER THE COLOR OF LAW. This has been Public Corruption, Whereby numerous counts of witness tamper and evidence tampering as well as fraudulent Concealment and misrepresentation took place, irrefutable material fact. This has also been the case surrounding the January 20, 2015 incident of the felony home invasion and abduction by force of my special needs, incapacitated Sister Debra Gibson as well as police misconduct which (INCLUDED) aiding and abetting by eight police officers which allowed it to be carried out, with excessive force by a officer, exerting illegal restraint through aggravated assault on me an elderly disabled Black man. All of which was covered up.  With fraudulent misrepresentation false police report **DC#15094** enclosed. This assault caused serious injury to me as specified in Revised Affidavit and Hospital medical reports in hand of the Defense. I managed to get Four Badge Numbers before I was approached threateningly to put down the pen. I was writing down Badge Numbers with. All of which, concealment from District Attorney Larry Krasner has been discriminatory and criminally conspired to shield Police Officers,  Officers of the Court, Orphans and Probate clerks of court, City employees.  All of which has been covered up by assistant District Attorneys and their Paralegals, City employees Paid by the city of Philadelphia.

I as a victim witness and whistle blower on public (Discrimination & Corruption) I Detailed all of this in revised Affidavit due to formal retractions due to Fraudulent misrepresentation and Fraudulent Concealment as Mr. Ryder has irrefutable evidence of as does Mr. Anthony De Santez O. I. G. has info and evidence involving corruption in Philadelphia FH𝕏and PCHR Commissions which he stated and Assured me he has Forwarded Evidentiary Documents to the U.S. Attorney General.  Mr. Alexander has evidentiary **Phone Messages** to DA's Office and FHC Director providing my Claims. Mayor Kenney what was done to our Sister Debra Gibson as both I and Brother Samuel Gibson agree was outrageous and unfathomable. This was the concealment of her whereabouts, death, and illegal cremation as a retaliatory act and concealment of the time of the burial of her illegally cremated remains must be addressed by your administration and Federal and local law enforcement, DA Krasner whereby despite being sent confidentially to him. State and Federal Crimes were Committed. The Police and persons in DA's

4 Office Criminally Conspired their cover ups, Myself and now deceased sister Debra was denied equal protection under the "Law" despite numerous pleas to the DA'S Office for help prior to my Sister's Death. Her abduction was covered up by the Police and the DA'S Office, DA Krasner was kept in the DARK regarding this and Corruption in the Orphans and Probate Courts. It is my presumption CAVEAT Hearing in Register of Wills was fixed as was Trial.

5 My sworn testimony in court records. Mayor Kenney this ordeal I have been subjected to by Entities of this City and Officials of this Jurisdiction under your Administration has devastated not only my Life but my brother Samuel B. Gibson Life as well as our children and close family members. My sister Debra Lyn was all our mother lived for and she dedicated her Life to providing the best of CARE and LOVE for Debra and other Developmentally Disabled Youth of all nationalities that lived with our family as family in our home, some of whom over 20yrs. My numerous calls to City Council President Darryl Clark and other City Council members was not (Returned) despite leaving detailed messages regarding injustices. I was ignored despite pleas for HELP in this horrible situation. Our Family has made significant contributions to this city as well as the Nation as the evidence will show. My late Father Samuel A. Gibson a former employee of John B. Kelly and Sons construction Corporation was a brilliant (Builder) and was mentored by Kelly. He Founded The First Black Cement Construction Corporation. A member of the Kelly Family resided in our home. My Brother Samuel B. Gibson was one of the first youth from Philadelphia to be nominated and graduated from the United States Air Force Academy He flew 99 Top Secret Combat Missions for our Nation. He is listed in Who's Who in America. Not only was he an accomplished executive coach he was an accomplished photographer, winner of the coveted CLIO Award with worldwide recognition

6 My Brother Samuel's Children's aunt is the former Miss America, Miss Vanessa Williams.
Their other aunt Winifred Hervey is a T.V. Emmy Award winning Executive Producer and writer who gave this country Golden Girls, the Steve Harvey Show and LL Cool J in the house.
My entire family wants justice for what was done to Debra and me and for the Criminality regarding our mother Elsie Gibson's Estate and the horrible injustices we were subjected to.

7    Mayor Kenny both you and police Commissioner Daniel Outlaw statede that the citizens of Philadelphia should be safe in their home. My sister Debra Gibson and myself was not afforded that right and what was done to us was coved up by both the Police Department and the DA's Office. District Attorney Krasner vowed he would not allow violation of Citizen's Rights.

8    I am submitting additional Documents which are Evidentiary and Exhibits to be used in court Filings, some of which are already in the Court records of Probate, Orphans Court and the Department of Wills. Exhibits are in Records. I have already submitted a Demand Letter regarding Demand for settlement RE: The FHC and the PCHR. I have submitted additional claim forms RE: City Employees of the Orphans and Probate Court. The Philadelphia Police Department and the Employees paid by the city in the District Attorney's Office. I am demanding a global settlement of all matters.

9    Mayor Kenny and Deputy City Solicitor Ryder. I have been subjected to cruel machinations, vilification defamation of character. I suffer from permanent physical and psychological injury and trauma as a result of (proximate cause) the conduct by employees of this city; the city of Philadelphia the defendant to be named in federal court filings and action in which there is clear Liability. I give you Mayor Kenny Authorization, (see Hospital) Authorization to review all my medical records, All Assaults submitted to the claims unit, and to defense Mr. Christopher Ryder, as well as all PHRC documents ie: Amended Discrimination Complaint in compliance with 300 day city of Philadelphia Fair Practices Ordinance. Irrefutable Evidence of criminality can be found in my submitted PHRC request for Hearing and all submitted documents and in my revised Affidavit due to Fraudulent Concealment in which I submitted a Formal retraction statement.

10    Mayor Kenney Mr. Ryder I am aware that character and integrity does matter in these types of civil cases in accordance with the Supreme Court of Pennsylvania. PA R.E. 608 Evidence of Character of any person such as to Affect the Amount of Damages which he ought to receive is relevant. I have included also, Documentation as to my Brother Samuel's Reputation Integrity and Character should anyone in your Administration at trial attempt to vilify or defame his character as was mine. Sirs please keep in mind president, rules and principles established in prior cases of discrimination, Failure to prevent harassment, Retaliation.

Mayor Kenney it is essential that you review the documents Mr. Ryder Already has in his possession ie; Letter to Former DA Seth Williams, Letter to DA Larry Krasner and Voice recordings proving Corruption and Cover ups, Within the police department the DA's Office and the Fair Housing Commission. Please review FHC Transcript of Sept 25, 2019.

Sirs In This Demand Letter, I Speak For Myself as well as my brother, Samuel B. Gibson as he has appointed me as his spokesperson. He now resides in the VA Hospital due to strokes which he suffered during the time our sister Debra's where about and well being was Criminally Conspired and Concealed from us, despite due diligence to have Debra returned home to us. My brother will never walk again.

I have included in this demand Letter and Communication prior Probate Court and Orphan's Court Documented Exhibits which referenced my professional Experience, Character and Integrity which was previously submitted and necessary because of criminal conspiracy by officers of the courts in conversion and the deprivation of companionship of my special needs sister Debra Gibson. This deprivation was carried out by Obstruction of Justice, court records tampering of my submitted petitions for Debra return.

This Deprivation was perpetuated by criminally Conspired Retaliation under The Color of Law. My Pleadings will be in accordance with Federal Rules of Civil Procedure, backed up by evidence and credible Testimony. Should the city decide not to settle, I will have this action filed in Federal District Court and I will have a Trial Attorney motion for a summary Judgment as the evidence will show there is no genuine dispute as to any material facts and I the Movant is entitled to judgment as a matter of Law.

All the facts in this case are indisputable, clear and convincing all of the causes of action, some of which are (numerous criminal) and Civil Rights Violations, and Torts are specified in my revised affidavit as counts. Remedy is guaranteed by constitutional tort law and Pennsylvania Bill of Rights

Case: <u>Federal District of North Carolina</u>
<u>Brian Hogan V Cherokee County Separation of Family</u>

Case: <u>Marie Jean Pierre V Park Hotels and Resorts</u>
1st Amend Rights Violation and Discrimination.

Case: <u>Dwyer N Ocean port school District</u>
1st Amend Violation

Case: <u>Fulton V City of Philadelphia</u>

Case: <u>Justin Howell V City of Austin</u>
Police Misconduct Excessive Force

14   In all of these cases there were Enormous Punitive Damages Awarded by a Jury Trial and Verdict.
This City just had to settle for Police Brutality on Rickia Young.
The number of causes of Action Against this city is numerous and I will be compelled if this goes to Trial to ask the Jury to Award the Maximum Amount of punitive damages on All Applicable Causes of Action and Torts because of the Reprehensibility and Malice of their Actions.

15   I Michael Gibson give Authorization for Mayor Kenney to review my Medical Records.
I have submitted to Claim and to Mr. Ryder, Mayor Kenny and Deputy Solicitor Ryder, my life and my brother Samuel is been Dramatically Altered by these Horrible Events we've been subjected to by this city. I pray I am not compelled to have my brother who has firsthand knowledge of what was done to our family to give first hand testimony and relive these terrible events or requesting his best friend David Moore testify how this ordeal has affected his best friend.
This demand letter is an attempt to come to an amicable settlement of this entire matter. I ask that you carefully review all the Evidentiary Evidence which is over whelming. My position statement re: FHC PHRC, DA's office impact statement, mental Health verified statements to psychiatrist Dr. Su as to the reason I had to SEEK help.

16    In May of 1979 I was afforded the privilege of having the President of the United States President Jimmy Carter shake my hand and congratulate me on my achievement in higher education. Shortly thereafter I received a letter from the White House by the President. Copy enclosed. It reads in part your accomplishments in the education you have received has also increased your responsibility we share in correcting the evils we see in our world. Discrimination, inequality and corruption are a global pandemic that we as responsible citizens can't turn a blind eye to. We must fervently address it. Mayor Kenney and Deputy Solicitor Ryder I request you give your immediate attention to my demand for a settlement of this matter and the submitted documentary evidence which will be submitted for trial Evidence along with all previously submitted documents to be Exhibits with material Fact Evidence which is clear and convincing.

Sirs the evidence and record will show that over the years of my professional experience and capacity I cared for others but, I was denied that right, a basic human right to care for my brother Samuel and my sister Debra when they needed me the most.

What was done to me and my family is disturbingly atrocious this city has no defense. The greater weight of the evidence I have against this city is clear and convincing.

Mayor Kenney and Divisional Deputy Solicitor Ryder I am demanding a global settlement of This Total matter in The Amount of _Twenty Five Million Dollars_ I look forward to your response.

Submitted Respectfully

Yours Truly    *Michael D. Gibson*

Date: _July 13th 2022_

7

9    8

# NOTARY ACKNOWLEDGEMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document

State of Pennsylvania

County of Philadelphia

On July 13, 2022 before me Dorothy Butler Notary Public

(Name and title of officer), **personally appeared Michael Gibson who proved to me on the basis of satisfactory evidence to be the person (s) whose name (s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.**

I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936

Signer Name _Michael Gibson_

Signer Signature _Michael Gibson_

Signer Proof of ID _PA Driver Lic_

WITNESS my hand and official seal

Signature _Dorothy Butler_

Print Name _Dorothy Butler_

(Seal)

1

*10*

# PENNSYLVANIA NOTARIAL CERTIFICATE
## (VERIFICATION UPON OATH OR AFFIRMATION)

VERIFICATION ON OATH OR AFFIRMATION WITH AFFIANT STATEMENT

Commonwealth of <u>Pennsylvania</u>}

County of <u>Philadelphia</u>}


Signed and sworn to (or affirmed) on This 13th of July, 2022 before me Dorothy Butler the
                                             day  Month  Year
Undersigned Notary Public. Michael Gibson personally appeared before me
I hereby state that the information is true to the best of my knowledge. I also confirm that the
information is both accurate and complete, and relevant information as not been omitted.

☐ Personally known to me    - OR -
☑ Prove to me on the basis of satisfactory evidence

    to be the person whose name (s)is/are subscribed
    to the within instrument, and acknowledgement to me
    that he/she/they executed the same for the purposes
    therein stated.

```
Commonwealth of Pennsylvania - Notary Seal
       DOROTHY BUTLER, Notary Public
              Philadelphia County
   My Commission Expires October 23, 2025
          Commission Number 1321936
```

(Stamp)

_Dorothy Butler_
Signature of Notary Officer

Dorothy Butler
Name of Notary Officer

<u>Notary Public</u>
Title of Officer

My commission expires: _October 23,2025_

*10*

This certificate is attached to a _____19_____ page(s) document dealing with Michael Gibson VS City of Philadelphia Risk Management Division /entitled Michael Gibson Affidavit Witness, Victim, Whistleblower and Dated 7/13/2022.

# JURAT/AFFIDAVIT CERTIFICATE

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

On this 13th day of July, 2022.

Before me, the undersigned notary public, personally appeared Michael Gibson proved to me through satisfactory evidence identification, which was _____Pa Drivellic_____

Type of Identification

to be the person whose name is signed on the preceding or attached document who swore or affirmed to me that the contents of the document are truthful and accurate to the best of his /her knowledge and belief.

Commonwealth of Pennsylvania - Notary Seal
DOROTHY BUTLER, Notary Public
Philadelphia County
My Commission Expires October 23, 2025
Commission Number 1321936

_____Dorothy Butler_____
Signature of Notary Public

_____October 23, 2025_____
Commission Expiration Date of Notary Public

SEAL

*12*

MICHAEL GIBSON, AFFIDAVIT, WITNESS, VICTIM, WHISTLE BLOWER
2130 N. VAN PELT STREET
PHILADELPHIA, PA. 19121
D.O.B. 12/13/1949
267-370-4152

CITY CLAIM # 201 90877553
PHRC # 201 905 041

VS

CITY OF PHILADELPHIA
RISK MANAGEMENT DIVISION – CLAIMS UNIT
1515 STREET
PHILADELPHIA PA. 19102

RISK MANAGEMENT DIVISION - CLAIMS UNIT,

I, MICHAEL GIBSON SWEAR OR AFFIRM: THAT THE FACTS IN THIS AMENDED AFFIDAVIT IS TRUE AND I AM THE AUTHOR AND WHISTLE BLOWER ON THE CORRUPTION AND SYSTEMIC RACISM AND ETHNIC DISCRIMINATION WITHIN AGENCIES OF THE CITY OF PHILADELPHIA AND I AM PROTECTED UNDER THE WHISTLE BLOWER PROTECTION ACT AND THE FALSE CLAIMS ACT. EVERY STATEMENT ON THE ORIGINAL AFFIDAVIT STILL STANDS, DATED 6/9/2020 EXCEPT FOR MY FORMALLY RETRACTED STATEMENTS SUBMITTED TO PENNSYLVANIA HUMAN RELATIONS COMMISSION DATED 3/28/2021 DUE TO FRAUDULENT MISREPRESENTATION AND CONCEALMENT BY OFFICERS OF THE COURT P F H C AND THE PCHR AND AMENDED PCHR COMPLAINT FORM ARE TRUE.

THE PFHC AND THE PCHR COMMISSIONS OFFICERS OF THE COURT AND THE PCHR COMMISSION INVESTIGATOR KNEW FROM THE VERY BEGINNING THE CANNONS HOUSING DISCRIMINATION COMPLAINT LODGED  AGAINST ME WAS FRAUDULENT IN CONTENT WITH PERJURY AS TO SECURITY DEPOSIT THEY STATED THEY PAID AND THE CONDITION OF THE PROPERTY.  DAMAGES IN PROPERTY WERE DELIBERATE VANDALIZISM BY THEM TO MAKE A FRAUDULANT CLAIM AS I ELABORATED IN AFFIDAVIT TO DISTRICT ATTORNEYS OFFICE WITH THE CRIMINAL ACTS THEY ENGAGED IN. SEE DOUMENTS DATED 9/23/2019 BOTH COMMISSION HAD IN THEIR POSSESSION IRREFUTABLE EVIDENCE THERE WAS NO, WRONG DOING, WHICH WAS DISCRIMNATORY ON MY BEHALF AND THERE WAS NO SEXUAL AGGRESSION, INAPPROPRIATE BEHAVIOR OR HARASSEMENT. BOTH COMMISSIONS HAD THE LEASE CONTRACTS OF BOTH CANNON'S THAT SPECIFIES THEY PAID NO SECURITY DEPOSIT, THE RECEIPT OF THE FIRST AND LAST MONTHS RENT THEY PAID TO MOVE IN AND THEY HAVE WRITTEN AGREEMENT BOTH CANNON'S AND MYSELF SIGNED WHEN THEY DECIDED THEY WANTED TO TEMPORARILY STAY IN MY PROPERTY. "SEE LEASE AGREEMENTS, RECEIT, SIGNED CONTRACT" BOTH COMMISSIONS HAD IN THEIR POSSESSION DOCUMENTS THE DEFENSE OMITTED AND BOTH COMMISSIONS IGNORED FACTUAL EVIDENCE, THESE DOCUMENTS I AM SUBMITTING WITH AMENDED COMPLAINT AND AFFIDAVIT. DOCUMENTS ARE THE 66 PAGES

*13*

*12*

RESPONSE I SUBMITTED TO PCHR COMMISSION INVESTIGATOR ALEXZANDRIA WILLIAMS WHICH CONTAINS ALL CORRESPONDENCE WITH THE CANNON'S AND THE POLICE REPORTS DC NUMBERS. BOTH COMMISSIONS HAVE IRREFUTABLE EVIDENCE THAT CHAUNTAY CANNON NEVER AT ANYTIME MADE MENTIONS OF SEXUAL IMPROPRIETY OR HARASSMENT AT THE SEPTEMBER 25TH HEARING. CANNON'S STATED UNDER PENALTY OF PERJURY SEXUAL HARASSMENT BEGAN ON DAY ONE OF THEIR MOVE IN DATE 5/2/19 CHAUNTAY CANNAN MADE NO (SEXUAL HARASSMENT) CLAIMS AT HER PRELIMINARY CRIMINAL TRIAL OR AT SENTENCING TRIAL BOTH DISTRICT ATTORNEYS SERGIO GLAJAR AT SENTENCING TRIAL AND ADA AT PRELIMINARY TRIAL AND COURT TRANSCIPTS ARE EVIDENCE OF SUCH. (ADA CHRISTAN PATCHEL) CHAUNTAY CANNON FILED THE HOUSING DISCRIMINATION SEXUAL HARASSMENT COMPLAINT IN A DESPARATE EFFORT TO RETALIATE, AND VILIIFY ME DAYS PRIOR TO HER SENTENCING TRIAL ON JANUARY 13/2019 FOR VIOLENTLY ASSAULTING ME WITH A WEAPON. CANNON FILED THIS COMPLAINT ON 11 /18 2019 AND THE ADMINISTRATIVE AGENTS OF BOTH COMMISSIONS AIDED AND ABETTED CHAUNTAY CANNON IN DOING SO, THEY CONCEALED EVIDENCE OF TEXT MESSAGES DOING SO. THE ACTION OF BOTH COMMISSIONORS WAS RACIALLY DISCRIMINATORY AND I DID NOT TAKE UMBRAGE IN THEIR ACCEPTING THEIR COMPLAINT AS DEFENSE. ATTORNEY RYDER STATED, I WAS OUTRAGED THEY USED JIM CROW RACIST TACTICS AND POLICY OF PAINTING BLACK MAN AS BRUT ANIMALISTIC SEXUAL PREDITOR DESERVING OF PUNISHMENT, WHICH OFTEN RESULTED IN THE DEATH OF MANY BLACK MEN AND BOYS.

IT IS MY PRESUMPTION THAT KAHLILA SKIPPER AND JOHN LEWIS JR. AND DAVID RAMMLER ESQ CHAIRPESON WHO IS AN ATTORNEY, ASSISTED IN THE CONSTRUCT OF THAT COMPLAINT WHICH IS EVIDENT BY THE LEGAL JARGON USED.

IT WAS STATED IN RESPONDENT NOTICE OF INVESTIGATION SENT TO ME BY PCHR INVESTIGATOR ALEXANDRIA WILLIAMS THAT THEY ASSIST COMPLAINTS IN THEIR COMPLAINTS. I INQUIRED WHO ASSISTED CANNON IN HER COMPLAINT I GOT NO RESPONSE.

THE VIOLENT ASSAULTS ON ME BY THE CANNONS ENABLED BY BOTH COMMISSIONS COULD HAVE RESULTED IN MY DEATH. A TITLE 18-242 VIOLATION.

IT IS MY PRESUMPTION THAT KAHLILA SKIPPER ALONG WITH COMMISSION MANAGEMENT DISCRIMNATED AGAINST ME BY CRIMINALLY CONSPIRING TO NULLIFY MY DEFENSE AGAINST A FRAUDULENT CRIMINAL COMPLAINT.

THEIR EGREGIOUS ACTIONS WAS A BOLD DISPLAY OF SYSTEMIC RACISM AND IT'S EXECUTION OF IT'S PRACTICE OF CONTROL OVER A BLACK MAN THEY CONSIDERED INFERIOR AND UNINTELLIGENT, WHICH IS THE IDEOLOGY OF WHITE SUPREMACY AND THEY CHOSE TO TREAT ME IN A BIAS AND DESPARATE WAY.

IT IS MY PRESUMPTION THEY LOATHED THE FACT THAT I AS A BLACK MAN HAD DEFEATED TWO CORRUPT ATTORNEYS IN PROBATE AND ORPHANS COURT DEFENDING MY LATE MOTHER'S ESTATE AND THEY WERE GOING TO PUT ME IN MY PLACE.

CHAUNTAY CANNON DESPERATE NOT TO GO BACK TO PRISON STATED A CLAIM OF HOUSING DISCRIMIANTION AND SEXUAL HARASSMENT. THIS COMPLAINT WAS FILED ON 11/18/2019 JUST DAYS AFTER HER RELEASE FROM PRISON AND BEFORE HER SENTENCING TRIAL.

10    CHAUNTAY CANNON AT THAT TRIAL STATED UNDER OATH THAT THE FHC STAFF TOLD HER TO CHANGE THE LOCKS ON THE FRONT DOOR OF MY PROPERTY DELAYING ME ACCESS WHILE THEY VANDALIZED AND ALLOWED INTRUDER CHRISTOPHER SIMMONS TO BREAK IN MY THIRD FLOOR AND MOVE IN.

11    THIS WAS HER SON, THE PERSON THAT ATTACKED ME ALONG WITH HIS SISTER, THE OTHER CLAIMANT THAT INDUCED ME VIA LIES TO ALLOW THEM TO STAY IN MY PROPERTY. THE FHC HELD THAT HEARING WITH THIS PERSON THAT ALSO COMMITTED PERJURY IN THE INITIAL COMPLAINANT AGAINST ME NOT TO BE PRESENT AT THE SEPTEMBER 25TH HEARING. RUE LANDAU STATED TO ME PATRICIA CANNON DID NOT HAVE TO COME, THE JUDGE AT THE JANUARY 13, 2019 SENTENCING HEARING STATED HE BELIEVED ME AND THAT MY TESTIMONY WAS CREDIBLE.

12    IT IS MY PRESUMPTION THAT KAHLILA SKIPPER AND JOHN LEWIS JR. TOLD HER TO DO SO, CHANGE LOCKS.

13    I SUSPECT AND PRESUME THAT SKIPPER DID THIS PRIOR TO THE SEPTEMBER 25TH HEARING BECAUSE THE LOCKS WAS ALREADY CHANGED, WHICH I CALLED 911 AND REPORTED TO POLICE AND A REPORT WAS WRITTEN AS STATED IN MY ORIGINAL AFFIDAVIT DATED 6/9/2020.

14    KAHLILA SKIPPER ASKED ME THE DAY BEFORE THE SEPTEMBER 25TH HEARING DID I HAVE A KEY TO MY PROPERTY. I TOLD HER NO. SKIPPER KNEW ALREADY I DID NOT HAVE A KEY BECAUSE, SHE TOLD HER TO CHANGE THE LOCKS, WHICH WAS DONE PRIOR TO DUE PROCESS.

15    THE STAFF OF THE PFHC AND THE PCHR ASSISTED THE RECENTLY RELEASED FROM PRISON CONPLAINANT CHAUNTAY CANNON IN CONSTRUCTING WITH LEGAL JARGON THE VILE SCURRILOUS SEXUAL DISCRIMINATION COMPLAINT WHICH I SUBMITTED AS EVIDENCE AND WHICH THE CITY OF PHILADELPIA DEFENSE ATTORNEY CHRISTOPHER RYDER DEPUTY CITY SOLICITOR CHOSE TO USE MY SUBMISSION AND TURN IT AROUND AS FACT EVIDENCE, WHEN IN FACT HE IS GUILTY OF USING THE SAME WHITE SUPREMACIST SYSTEMIC RACISM AND DISCRIMINATION TACTICS OF JIM CROW VILIFICATION AND ASSASINATION ON MY CHARACTER AS A SEXUAL PREDITOR.  MISPRISON OF FELONY COVERING UP OF STATE AND FEDERAL CRIMES OF CITY EMPLOYEES, VIOLATES PROFESSIONAL CODE OF CONDUCT.

16    RYDER TOO IS GUILTY SHOULD HE NOT TURN THEM INTO LAW ENFORCEMENT AUTHORITIES AS AN ACCOMPLICE AND PRINCIPAL IN THESE CRIMES.  REGARDING THE SEPTEMBER 25, 2019 HEARING, THE TIMING OF THE QUESTION REGARDING THE LAST MONTHS RENT AND SECURITY DEPOSIT POSED TO ME IN A SLY WAY AFTER COMMISSIONER JOHN LEWIS ADJOURED THE HEARING AND PREVENTED ME FROM SAYING ANYTHING ELSE IN MY DEFENSE OR PRESENTING SOLID EVIDENCE LEFT NO ROOM FOR DOUBT THAT THE EGREGIOUS BIAS AND DISCRIMENATORY MANNER IN WHICH THAT SEPTEMBER 25, 2019 HEARING WAS CONDUCTED WAS STRATEGICALLY PLANNED.

17    THEIR ACTIONS WAS CUNNING, APPALLING EGREGIOUS, HUMILIATING AND COMPLETEY IN VIOLATION OF THE RULE OF LAW.

18    WHAT THEY DID TO ME WAS EXTREMELY HUMILIATING; THEY MEANT IT TO BE. I WAS EXTREMELY HUMILIATED BEFORE A WOMAN THAT HAD ALREADY SUBJECTED ME TO EXTREME

15                                                                                                        14

MENTAL ANGUISH AND ELDER ABUSE; THEY ALLOWED THIS WOMAN TO GET AWAY WITH PERJURY AND ENABLE THIS WOMEN CHAUNTAY CANNON TO VIOLENTLY ASSAULT ME WITH A WEAPON, WHICH COULD HAVE RESULTED IN MY DEATH BY ASPHYXIATION.

19    I WAS AGAIN ASSAULTED WHILE SHE WAS IN PRISON. BOTH ASSAULTS COULD HAVE RESULTED IN MY DEATH THIS COMMISSION IS CAUSAL CONNECTION.

20    IT IS MY PRESUMPTION AND THERE IS NO DOUBT IN MY MIND OR ANY PERSON OF INTELLIGENCE THAT IT TOOK LEGAL PROWESS, CUNNING AND EXPERIENCE THAT THE UPPER MANAGEMENT OF THE FHC MR. JOHN LEWIS JR AND DAVID RAMMLER AN ATTORNEY AND CHAIRPERSON HAVE, FOR THE HEARING TO BE CONDUCTED THAT WAY.

21    IT IS NO COINCIDENCE THAT KAHLILA SKIPPER FREELY IMPLICATED RAMMLER AS THAT PERSON THAT DOMINATED THE SEPTEMBER 25TH, 2019 HEARING WHEN I QUESTIONED HER, EVEN THOUGH SHE LIED AS TO THE CORRECT SPELLING OF HIS NAME AND WHO HE WAS AS DAVID RANNLER AND HE WAS THAT PERSON AT HEARING AND THAT "I WOULD KNOW THE CORRECT SPELLING" BECAUSE I WORK WITH HIM EVERY DAY"

22    JOHN LEWIS JR. COMMISSIONER AND DAVID RAMMLER ESQ. ARE LONG TERM COLLEAGUES.

THE UPPER MANAGEMENT'S KNOWLEDGE OF THEIR ACTIONS WITH DIRECTOR RUE LANDAU AT THE HELM IS EQUALLY GUILTY OF BIAS, RACIALLY DISCRIMINATORY TACTICS, AND CRIMINAL CONSPIRACY.

23    IT IS MY PRESUMPTION THAT KAHLILA SKIPPER REVEALED AND USED THE INFORMATION I GAVE HER REGARDING MY DEFENSE AGAINST THE FRAUDULENT COMPLAINT WITH COMMISSION STAFF MANAGEMENT AND STAFF IN WHICH THEY USED TO DETER ME FROM TESTIFYING AND PRESENTING EVIDENCE ALL OF WHICH WAS DISCRIMINATORY AND CRIMINALLY CONSPIRED IN VIOLATION OF TITLE 18 242 AND TITLE 18 241.

24    I BELEIVE FROM MY RECOLLECTION OF THE SEPTEMBER 25TH 2019 HEARING THAT IT WAS JOHN LEWIS JR. THAT WAITED TILL AFTER HE ADJOURED THAT HEARING TO POSE THAT QUESTION THAT PROCURED PURJURY FROM THE CLAIMANT CHAUNTAY CANNON IN A CLEVER CUNNING WAY, DISPITE THE TRANSCRIPT STATING IT WAS ATTORNEY COMMISSIONER BIAZ. THEY KNEW I WOULD QUICKLEY CONTEST HER STATEMENT THAT THEY PAID A SIX HUNDRED DOLLARS SECURITY DEPOSIT WAS PURJURY IN THEIR COMPLAINT, AND THEY KNEW CANNON WOULD ANSWER AFFIRMATIVELY THAT SHE DID.

25    IT IS MY PRESUMPTION THAT CHAUNTAY CANNON WAS INSTUCTED BY THEM TO DO SO.

IN EITHER INSTANCE IF IT WAS COMMISSIONER LEWIS OR ATTORNEY BIAZ WHO POSED THAT LAST AND ONLY QUESTION CANNON COULD RESPOND TO, IT WAS A CONSPIRED EGREGIOUS MANIPULATON OF THE LAW, OBSTRUCTION OF JUSTICE, FAILURE TO FOLLOW THE RULE OF LAW AND ENGAGMENT OF ENFORCEMENT OF BIAS AND SYSTEMIC RACISM AND PUBLIC CORRUPTION BY OFFICERS AND THE COURT.

26    I REQUESTED THE PENNSYLVANIA HUMAN RELATION COMMISSION DEMAND THE RECORDED TRANSCRIPT OF THE SEPTEMBER 25TH 2019 HEARING TO VERIFY THAT I HAVE NOT MADE AN ERROR ON WHO POSED THAT.

*16*

THAT LAST MINUTE QUESTION AS TO THE SECURITY DEPOSITS WHICH PROCURED PURJURY FROM THE COMPLAINANT WHICH IS SUBORNATION OF PURJURY.

27    BOTH COMMISSIONS HAD IN THEIR POSSESSION MY COUNTER CLAIM DATED 9/23/2019 IT IS DOCUMENTARY EVIDENCE WHICH GIVES IRREFUTABLE EVIDENCE THE HOUSING AND SEXUAL DISCRIMINATION COMPLAINT LODGED AGAINST ME IS FRAUDULENT.

THEY HAVE THE TEXT MESSAGES OF ALL MY INTERACTIONS WITH THE CANNON'S BUT THEY CONCEALED THAT EVIDENCE AS WELL AS THE CITY DEFENSE ATTORNEY RYAN.

28    ADA ALEXANDER BLUMENTHAL IN DA'S CHARGING HAS ALL EVIDENCE INCLUDING TEXT MESSAGES OF MY INTERACTIONS WITH THE CANNONS AND PICTURES OF HOME THAT SHOW THE HOME WAS BEAUTIFUL AND IN GOOD CONDITION. THIS EVIDENCE WAS PRESENTED IN THE PRE SENTENCING TRIAL OF CHAUNTAY CANNON YET THESE COMMISSIONS AND THE DEFENSE CHOSE TO USE JIM CROW RACIST TACTICS TO VILIFY ME AND PAINT ME AS A SEXUAL PREDITOR.

29    KAHLILA SKIPPER FELT AT EASE AND FREELY IMPLICATED ATTORNEY CHAIR PERSON DAVID RAMMLER AS THE PERSON THAT DOMINERED THE SEPTEMBER 25, 2019 HEARING THAT I HAVE GIVEN SWORN TESTIMONY THAT ALL OF THEIR ACTIONS WAS EGREGIOUS AN CORRUPT.

30    IT IS MY PRESUMTION, RAMMLER AND LEWIS WAS THE RINGLEADERS, IT CAN BE PRESUMED THAT THEY BOTH WERE INSTRUMENTAL IN THE CONDUCTION OF THAT HEARING.

31    IT CAN BE PRESUMED THAT IF KAHLIILA SKIPPER, ROSEMARY BRANNIGAN, AND ALEXIS WILLIAMS WAS NOT REPREMANDED AND ARE STILL EMPLOYED IN THEIR PROSPECTIVE POSITIONS, THEY ARE ALL GUILTY OF CRIMINAL CONSPIRACY,  ITS COVERUP AND OBSTRUCTION OF JUSTICE, ALL OF WHICH WHO'S CONDUCT HAS BEEN COMPLETELY IGNORED BY NUMEROUS MESSAGES TO THE CITY OF PHILADELPHIA'S CHIEF INTEGRETY OFFICER SARAH STEVENSON. ONE OF MY NUMEROUS MESSGES TO MAYOR KENNEY ON HER PHONE LINE I WAS TOLD WAS INTERCEPTED, WHICH IS A FEDERAL CRIME, INTERCEPTION OF ELECTRONIC COMMUNICATIONS. (TILE 18 GENAERAL ASSEMBLYS)

32    REGARDING THE SYSTEMIC RACISM AND PUBLIC CORRUPTION I ENDURED AS A BLACK MAN AND PRO SE LIGIANT IN (PROBATE & ORPHANS) COURT. THERE IS 36 PAGES OF DOCUMENTS SENT TO THE NEWLEY ELECTED DA KRASNER ON 6/30/18 BY EMAIL, FAXED TWICE AND US POSTAL SERVICE RETURN RECEIPT REQUESTED REGARDING WHAT I CONSIDER THE UNPROSECUTED HOMICIDE OF MY LATE MOTHER ELSIE GIBSON IN 2015 ESTATE 925 OF 2015 AND IT CONTAINS EVIDENCE WITNESS NAMES AND NUMBERS AND COURT DOCUMENTS WITH IRREFUTABLE EVIDENCE OF CORRUPTION BY OFFICERS OF THE COURT.

33    THESE DOCUMENTS WENT IN THE HANDS OF PARALEGALS REGINA PURTELL PARALEGAL, DIANA ADEMCEK AND FORMER HOMICIDE PROSECUTOR ANTHONY VOCCI I SUSPECT THIS INFORMATION WAS USED BY THE GOVERNMENT ACTORS IN PROBATE AND ORPHANS COURT TO RETALIATE AGAINST ME, RESULTING IN THE DEATH OF MY BELOVED SISTER DEBRA IN THE HANDS OF CRIMINALS. ILLEGALLY CREMATED IN RETALIATION WITH JUDGE OVERTON AND JAMES TYLER ESQ. PLENARY GUARDIAN AS CO-CONSPIRITORS.

*17*    *16*

*17*

34. IT IS MY STATEMENT THAT IN THE DOCUMENTS SENT TO DISTRICT ATTORNEY LARRY KRASNER WHICH WAS SENT PERSONAL AND CONFIDENTIAL NEVER WAS BROUGHT TO HIS ATTENTION. CONFIRMED BY ADA TRACY TRIPP IN THOSE DOCUMENTS ARE THE 26 POLICE REPORTS, DC'S OF HARASSMENT ASSAULTS, ATTEMPTS OF ILLEGAL EVICTION, REPORTS OF MY HOSPITALIZATION AND TREATMENT FOR POLICE BRUTALITY AND EXCESSIVE FORCE IN AN ILLEGAL RESTRAINT WHICH ALLOWED MY SISTER DEBRA TO BE ABDUCTED AND NEVER SEEN AGAIN BY ME, MY OLDER BROTHER SAMUEL B. GIBSON AND OUR CHILDREN, WHO LOVED HER DEARLY. AS A RESULT OF POLICE MISCONDUCT DEBRA AN INCAPACITED PERSON WAS TAKEN OUT OF HER HOSPITAL BED WHILE UNDER 24 HRS NURSING CARE AND PLACED IN THREE DEGREE WEATHER OUTSIDE AND PLACED IN THE BACK OF A UHAUL TRUCK WITH STOLEN VALUABLES AND HER HOSPITAL BED.

35. I HAVE THE PICTURES OF MY INJURED AND BRUISED ARMS AS A RESULT OF ILLEGAL RESTRAINT IN THREE DEGREE WEATHER WITH ONLY PAJAMAS AND SOCKS ON.

36. FEBRUARY 20TH POLICE FALSIFIED POLICE REPORT I AM FILING ADDITIONAL CAUSES OF ACTION, CLAIM FORM FOR POLICE BRUTALITY, ON FEBRUARY 20, 2015 WHEN MY SISTER DEBRA WAS ABDUCTED. I WAS SUBJECTED TO TORTURE IN A VIOLENT RESTRAINT IN THREE DEGREE WEATHER THEY ARE GUILTY OF RECKLESS ENDANGERMENT IN THREE DEGREE WEATHER, OFFICIAL OPPRESSION, TORTURE, AGGRAVATED ASSAULT, POLICE OFFICER FALSIFIED REPORT OF ONLY POSSESIONS TAKEN OUT OF HOUSE WHEN IN FACT MY SISTER WAS ABDUCTED IN A FELONY HOME INVASION WHEREBY I WAS ASSAULTED AT THE DOOR FOR ENTRY AND ALL THE HOUSE PHONES SNATCHED OUT OF WALLS TO PREVENT ME CALLING POLICE.

37. WHEN I FINALY WAS FREED BY POLICE OFFICER I GRABBED PENCIL TO WRITE BADGES DOWN. AN OFFICER APPROACHED ME IN THREATING WAY AND SAID PUT THAT PENCIL DOWN IN MY OWN HOUSE. I MANAGED TO GET FOUR BADGE NUMBERS BEFORE BEING THREATENED.

38. THE POLICE DEPARTMENT IS RESPONSIBLE FOR MY SISTER DEBRA BEING ALLOWED TO BE TAKEN AND PLACED HER IN THE BACK OF A U-HALTRUCK WHILE COMPLETELY INCAPACITATED IN BELOW FREEZING WEATHER. THE POLICE ALLOWED DEBRA TO BE PLACED IN THE HANDS OF THE VERY SAME PEOPLE MYSELF AND BROTHER FILED A CRIMINAL COMPLAINT AGAINST AFFIDAVIT JACQUELINE CARTER AND HUSBAND FOR THE SUSPICIOUS DEATH OF OUR MOTHER JUST DAYS BEFORE DELIBERATE OVER MEDICATION TO TAKE OVER OUR LATE MOTHER'S ESTATE. I HAVE A WITNESS AS STATED IN COURT TESTIMONY. DEFENSE HAS DOCUMENTED EVIDENTIARY LETTERS TO CARTERS, JUDGES & DA'S OFFICE.

*18*

*17*

AFFIDAVIT: TITLE CORRUPTION IN PROBATE AND ORPHAND COURT

RE: ESTATE OF MY LATE MOTHER ELSIE GIBSON – 924  2015 IT IS MY PRESUMPTION THAT THE
IRRUFUTABLE EVIDENCE WITH POLICE REPORTS DC NUMBERS TWENTY SIX IN ALL ALONG WITH
COURT DOCUMENTS WITH EVIDENCE OF HOW PROBATE OFFICERS OF THE COURT AND CITY
EMPLOYEES DAWN MCKEOWN CRIMINALLY CONSPIRED ALONG WITH ATTORNEY HOWARD
SOLOMON FIXED A TRIAL TO ILLEGALLY TO AQUIRE MY LATE MOTHER'S ENTIRE ESTATE,
ILLEGALLY, EVICT ME FROM MY RESIDENCE WHILE I WAS SERIOULY INJURED AND ILL, BY
PLACING NOTICE OF TRIAL ON DOCKET THE DAY OF TRIAL SO THAT I WOULD LOSE BY DEFAULT,
NOT ONLY COURT RECORDS EVIDENCE OF THIS FACT. I HAVE A WITNESS FORMER CLERK OF
COURT THAT WILL CONFIRM THIS FACT.

HE IS RETIRED CLERK OF COURT PAUL DI CICCO. DAWN MCKEOWN A LONG TIME CLERK OF
COURT ALONG WITH JUDGE MATHEW CARRAFIELLO EXIBITED ANGER BIAS WHEN I FOUND OUT
AND ISSUED A NEW ORDER AND WROTE ON IT IN BLACK MAGIC MARKER NO MORE
CONTINUENCES.

WHEN CONFRONTED MCKEOWN AND CLERK OF COURT PATRICK SAVAGE TRIED TO JUSTIFY ME
NOT GETTING NOTIFICATION, STATING IT MAY HAVE GOTTEN LOST IN MAIL. BLATANT
OBSTRUCTION OF JUSTICE. NOTICE PLACED ON DOCKET MORNING OF TRIAL SEE DOCUMENT.
IRREFUTABLE EVIDENCE NEVER TURNED OVER TO DISTRICT ATTORNEY LARRY KRASNER FOR
PROSECUTION. DOCUMENTS MISSING, CONFIMED BY ADA BRIAN COLLINS ON 5/3/21.

CLERK OF COURT PATRICK SAVAGE SABATAGED MY PETITION FOR CITATION TO EXECUTRIX
JACQUELINE CARTER PLACING MY DAUGHTER'S NAME RAQUEL GRAHM'S NAME AS THE
PETITIONER WHEN IN FACT HE WAS GIVEN NO KNOWLEDGE OF MY DAUGHTERS NAME WHAT
SO EVER, HE HAD TO GET HER NAME FROM THE MY OPPOSITIONS ATTORNEY AT LAW
HOWARD SOLOMAN WHO ALSO CRIMMINALLY CONSPIRED WITH OFFICERS OF THE COURT
AND CLERKS OF COURT T FIX A JUDICIAL HEARING AND TRIAL SO I LOSE BY DEFAULT
JUDGEMENT, LOSING ENTIRE ESTATE OF MY LATE MOTHER.

*19*

AFFIDAVIT: CORRUPTION IN PROBATE AND ORPHAN'S COURT

*43*  I REALIZE NOW THE ORDER THAT THE JUDGE CARRAFIELLO GAVE ON SEPTEMBER 10' 2016 THAT MY OLDER BROTHER SAMUEL B. GIBSON THAT OUR MOTHER, NOW DECEASED WISHED HER SON TO RETUN HOME AT 2130 VAN PELT ST, THAT HE COULD NOT LIVE THERE WAS REPUGNANT TO THE CONSTITUTION AND A VOID ORDER ULTRA VIRES IN VIOLATION OF HIS JUDICIAL OATH AND TREASON TO THE CONSTITUTION OF THE UNITED STATES.

*44*  I REALIZE THIS WAS GIVEN TO KEEP US BOTH OUT OF OUR HOME, EVICTING US ILLEGALLY SO THAT THE, THE ATTORNEYS HOWARD SOLOMAN AND JAMES TYLER THE GUARDIAN APPOINTED' BY JUDGE GEORGE OVERTON WOULD PROFIT ILLEGALLY BY THE TAKE OVER OF OUR LATE MOTHER'S ESTATE.

*45*  HIS ORDER WAS IN CONJUNCTION I NOW REALIZE WITH HOWARD SOLOMANS BRIBE TO HAVE ME WITHDRAW MY WILL CONTEST, WHICH I REFUSED.  DOCUMENT ENCLOSED SEE DATED DOCUMENT FROM ATTORNEY HOWARD SOLOMAN JUDGE MATHEW CARRAFIELLO REFUSED TO ADDRESS THE MISCONDUCT OF BOTH HOWARD SOLOMAN AND APPOINTED PLENARY GUARDIAN OF MY INCAPACITATED SISTER DEBRA GIBSON ESTATE 7931C OF 2015 DESPITE DOCUMENTS AND STATEMENTS OF SUPREME COURT OF PA DISCIPLINERY BOARD STATING IT WAS HIS DUTY TO ADDRESS THESE ALLEGATIONS.

*46*  INSTEAD OF ADDRESSING THEM THE JUDGE STATE'S  "YOU DON'T KNOW WHAT YOU'RE TALKING ABOUT" AND THEN STATED HE SITS ON THEIR BOARD, A BLATANT LIE WHICH I VERFIED HE DID NOT. THIS IS THE  RENOWNED PROBATE ATTORNEY ON CITY LINE AVE STATED SHE HAD TO CALL TO SEE IF HE WOULD ALLOW CERTAIN THINGS IN A LITIGANT'S PLEADINGS. IN OTHER WORDS HE DICTATES WHAT GOES IN THEM. I HAVE THE TRANSCRIPTS SEE DOCUMENTS SUBMITTED.  ATTORNEY NAME DEBRA SPEYER.

*47*  JUDGE GEORGE OVERTON REPEATEDLY DENIED ME DUE PROCESS REGARDING THE WHERE ABOUTS OF MY SISTER DEBRA GIBSON, REPEATEDLY FAILED TO FOLLOW THE RULE OF LAW WHICH IS TREASON TO THE CONSTITUTION TO HIS OATH AND TOTAL DISREGARD OF THE UNITED STATES CONSTITUTION AND THE US BILLL OF RIGHTS, THE PENNSYLVANIA BILL OF RIGHTS.

*48*  WHEN I QUESTION JUDGE GEORGE OVERTON'S STAFF IN HIS CHAMBER AS TO THE WERE ABOUT OF MY PLEADING FOR A HEARING, I WAS TOLD THEY NEVER RECEIVED IT. NUMEROUS TIMES I CALLED IT WAS DATED JULY 24, 2017.

ONLY WHEN I CONTACTED INTRUSIA PROBATE & ORPHANS COURT INVESTIGATOR AND STATED I WAS (CONTACTING) THE FBI AGAIN DID HE RESPOND, WITH MY REQUEST FOR HEARING SEE DOCUMENT SUBMITTED; JUDGE OVERTON DENIED ME THE COMPANIONSHIP OF MY SISTER, DEPRIVATION OF RIGHTS. JUDGE MATTHEW CARRAFIELLO STATED AT PROBATE HEARING SEPTEMBER 25, 2016 THAT THEY, REFERRING TO ALL COURT EMPLOYEES ARE FAMILY. I NOW KNOW WHAT THAT MEANS, EVERYONE IN THAT OFFICE OF THE PROBATE COURT WAS AWARE OF WHAT WAS GOING ON REGARDING THE FIXED TRIAL I WAS NOT SUPPOSE TO FIND OUT ABOUT, THE EVIDENCE TAMPERING, RECORD TAMPERING.

*20*

*19*

SEE DOCUMENT WHERE THE DATE OF THE TRIAL ON THE OFFICIAL COURT ORDER WHERE I PROVED THE UNDUE INFLUENCE ELDER ABUSE, FRAUD COMMITTED AGAINST MY LATE MOTHER ELSIE GIBSON WAS INCORRECT, CHANGED FROM THE 6TH OF DECEMBER TO THE 16TH OF DECEMBER.

CLERK OF COURT DAWN MCKEOWN LONG TERM COURT CLERK PUT FRAUDLENT WRONG DATE OF TRIAL ON DOCUMENT AS TO MAKE IT DIFFICULT TO LOCATE DOCUMENT. THIS CITY EMPLOYEE GAVE NO NOTIFICATION OF THE TRIAL EXCEPT ON DAY OF TRIAL. I HAD A COURT EMPLOYEE TO CONFIRM THIS. PAUL DICICCO NOW RETIRED.

I SOUGHT HELP FROM A PROMINENT PROBATE COURT ATTORNEY WHOSE OFFICE IS ON CITY LINE AVE. I WAS GOING TO PAY HER TO ASSIST ME IN MY PLEADING WHICH WERE DIFFICULT BECAUSE THEY WERE COMPLICATED WITH ALLEGATION OF ATTORNEY MISCONDUCT AND CORRUPTED PROCEEDING WHICH SHE REFUSED AND STATED SHE HAD TO CALL JUDGE CARRAFIELLO AND ASK HIM IF MY ALLEGATIONS COULD BE INCLUDED IN PLEADINGS. IN OTHER WORDS THIS JUDGE DICTATES WHAT CAN BE IN PLEADINGS WHICH COME BEFORE HIM.

I KNEW THEN, I HAD TO DO MY PETITION FOR CITATION MYSELF, ESPECIALLY AFTER SHE REFERRED TO TWO OPPOSING ATTORNEY ON A FIRST NAME BASIS. THEY ALL WORK TOGETHER WITH THE JUDGES. MR. CHRISTOPHER RYDER DEFENSE ATTORNEY AND DIVISIONAL DEPUTY CITY SOLICITOR FOR THE CITY OF PHILADELPHIA I AM DEMANDING A GLOBAL SETTLEMENT IN THIS ENTIRE MATTER WHICH INCLUDES DISCRIMINATION CRIMINAL AND CIVIL VIOLATIONS OF THE LAWS OF THIS STATE AND THE US CONSTITUTION. I WILL BE FILING IN FEDERAL COURT BEFORE A JURY DEMANDED TRIAL AND YOU WILL BE HELD ACCOUNTABLE FOR NOT TURNING OVER THESE CITY EMPLOYEES THAT HAVE ENGAGED IN STATE AND FEDERAL CRIMES OF PUBLIC CORRUPTION.

AS A VICTIM, WITNESS AND WHISTLE BLOWER, I AM TURNING EVIDENCE AND THESE SWORN STATEMENTS OVER TO THE FEDERAL BUREAU OF INVESTIGTION AND DEPARTMENT OF JUSTICE, THE US ATTORNERY GENERAL OFFICES IN SEEKING JUSTICE IN THESE MATTERS, AND TO DISTRICT ATTORNEY LARRY KRASNER AND PA. GENERAL ASSEMBLY.

CHRISTOPHER H. RYDER DIVISIONAL DEPUTY CITY SOLICITOR PA ATTORNEY ID NO. 307265 CITY OF PHILADELPHIA LAW DEPARTMENT IS AWARE OF THE ILLEGAL MANUVERING ENGAGED IN BY BOTH PARTNERED FHC & PCHR CITY EMPLOYEES HAVE ENGAGED IN AND ALL ATTEMPTS BY HIM AND CITY TO IGNORE WHITEWASH AND COVER THE PUBLIC CORRUPTION STATE AND FEDERAL CRIMES BY CITY EMPLOYEES AND FAILURE TO REPORT THEM TO LAW ENFORCEMENT AUTHORITIES IS ITSELF MIS PRISON OF FELONY INDICTABLE, BY LAW AND A ATTORNEY IS SUBJECT TO DISBARMENT.

RYDER IN THESE SUBMITTED DOCUMENT YOU NOW POSSESS, YOU HAVE IRREFUTABLE EVIDENCE OF DOCUMENTS WHICH PROVE CORRUPTION IN PROBATE COURT AND ORPHANS COURT, FIXED TRIAL, INVOLVED CITY EMPLOYEES GUILTY OF STATE AND FEDERAL CRIMES AND COVER UP BY CITY EMPLOYEES IN DA'S OFFICE. IT IS MY PRESUMPTION DOCUMENT CONCEALED FROM DA KRASNER AND GIVEN TO COURT OFFICIALS WHO RETALIATED AGAINST ME.

RULES OF PROFESSIONAL CONDUCT FOR PENNSYLVANIA ATTORNEYS RULE 4.1 REQUIRES LAWYER TO DISCLOSE MATERIAL FACT TO AVOID ASSISTING A CLIENT'S CRIME OF FRAUD (THIS ATTORNEY RYDER INCLUDES FRAUD ON THE COURT) THE FACTS, THE CRIMES IN THIS CASE ENGAGED IN BY CITY EMPLOYES OFFICES OF THE COURT ARE NOT CONFIDENTIAL THEY ARE FACT IRREFUTABLE AND THE CRIMINAL ACTS BEYOND A REASONABLE DOUBT. THEIR FRAUD AND DECEIT IS ON COURT RECORDS THERE IS NO COVERING THAT UP. YOUR BIAS IN THIS CASE AND COVER UP REQUIRE THAT YOU RECUSE YOURSELF FROM THIS CASE, FRAUDULENT CONCEALMENT STATUTE KLEHR V. AD SMITH CORPORATION.

AMERICAN BAR ASSOCIATION MODEL RULE 3.3 CANDOR TOWARD TRIBUNAL ADA 3.3

1)   SUBPARAGRAPH 2) A LAWYER SHALL NOT KNOWINGLY 3) OFFER EVIDENCE THAT THE LAWYER KNOWS TO BE FALSE.

A LAWYER WHO HAS OFFERED (MATERIAL) EVIDENCE AND THE LAWYER COMES TO KNOW OF IT'S FALSITY, AND THE LAWYER SHALL TAKE REMEDIAL MEASURES, INCLUDING, IF NECESSARY, DISCLOSURE TO THE TRIBUNAL RULE 1.0 (F) DENOTES ACTUAL KNOWLEDGE OF FRAUD.

SUSPECT CITY DEFENSE ATTORNEY DEPUTY CITY SOLICITOR WAS AWARE OF THE FRAUD COMMITTED AND CHOSE TO CONCEAL EVIDENCE. FRAUD BY FHC AND PCHR STAFF.

RULE 1.2 A LAWYER SHALL NOT ASSIST A CLIENT IN CONDUCT THE LAWYER KNOWS IS CRIMINAL OR FRAUDULANT. ATTORNEY RYDER VIOLATED THIS RULE, AS WELL AS FHC ATTORNEYS AND COMMISSIONERS.

RULE 8.4C WHEN ATTORNEYS ENGAGE IN CONDUCT INVOLVING DISHONESTY, DECEIT OR MISREPRESENTATION THEY COLLECTIVELY COLLABORATED AND CONSPIRED TO OFFER UP.

THIS THE DEFENSE IS IN ENFORCEMENT OF SYSTEMIC RACISM AND ETHNIC BLACK HATE BY THE CITY OF PHILADELPHIA HE REPRESENTS AND IS TANAMOUNT TO THE INSTITUTIONAL SYSTEMIC RACISM INGRAINED IN AMERICAN GOVERNMENT WITH MAYOR KENNEY AT THE HELM IN THE CITY OF PHILADELPHIA. THE MAYOR HAS BEEN KEPT IN THE DARK AS WELL AS DISTRICT ATTORNEY KRASNER REGARDING THIS CORRUPTION AND DISCRIMINATION.

THE PROBATE ADMINISTATIVE JUDGE STATED AT THE HEARING ON SEPTEMBER THE 10, 2016 THAT MY BROTHER SAMUEL GIBSON COULD NOT RETURN TO LIVE IN OUR HOME, NOT ONLY WAS THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA IN QUESTION, BUT MY BROTHERS AS WELL. MY BROTHER IS A WAR HERO. THIS WAS OUTREGEOUS SEPARATION FROM MY FAMILY AFTER HAVING LOSS OUR MOTHER, THIS ORDER WAS VILE AND ULTRA VIRES.

I hereby state that the information above is true, to the best of my knowledge. I also confirm that the information here is both accurate and complete, and relevant information has not been omitted.

AFFIDAVIT: RE: CORRUPTION

I REPORTED TO FBI CORRUPTION IN CITY AGENCIES, I GAVE HOURS OF STATEMENTS. BOTH ASSISTANTS TO DA LARRY KRASNER KNOW ABOUT THE ALLEGATIONS OF THE PUBLIC CORRUPTION AND STATE AND FEDERAL CRIMES.

I LEFT AT LEAST A HUNDRED OF MESSAGES TO DA'S OFFICE ONLY TO HAVE THEM, FORMER JUDGE CAROLYN TEMET AND STEPHEN LISTEN BEE INGNORED MY REQUEST FOR HELP IN THESE URGENT MATTERS WHICH INCLUDED A WHAT MY SELF, BROTHER AND DAUGHTER CONSIDERED WAS THE UNPROSECUTED HOMICIDE OF MY LATE MOTHER AND CORRUPT PROCEEDINGS TO TAKE OVER HER ESTATE WITH JUDGES AND CITY CLERKS OF COURT AND ATTORNEY'S AND INVOLVED AND THE RETALIATION BY THEM, WHICH WAS CONCEALMENT OF OUR SISTER LOCATION HER BEING DISABLED AND NOT BEING ABLE TO FEND FOR HERSELF AND HER DEATH WITHOUT NOTICE AND ILLEGAL CREMATION OF HER BY THEM, DA KRASNER NEVER INFORMED.

THE RETALIATION AGAINST ME BY ORPHAN COURT AND PROBATE COURT OFFICIALS BEGAN WITH THE DENIAL OF THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA BY WAY OF DECEIT, FRAUD ON THE COURT BY ATTORNEY'S, UNLAWFUL ORDERS GIVEN IN TREASON TO THE CONSTITUTION, WHICH SUGGEST A JUDGE IN ENGAGED IN EXTORTION AND THIS ENDED IN DENYING KNOWING MY SISTER'S CONDITION, HER DEATH, WHERE ABOUTS ILLEGAL CREMATION, ASSISTED WITH THE HELP OF CITY EMPLOYEES COURT RECORDS TAMPERING. JUDGE OVERTON ASSISTANT WHO STATED NUMEROUS TIMES THEY DID NOT RECEIVE PLEADINGS THAT WERE STAMPED BY COURT, NOT UNTIL THE COURT INVESTIGATOR.  INTRUSIA WARNED THEM I WAS GOING TO FBI FOR THEIR TAMPERING WITH OUR DOCUMENTS, MY PLEADING TO GET MY SISTER BACK HOME, DID THEY RESPOND.

RE: POLICE MISCONDUCT EXCESSIVE FORCE

POLICE COMMISSIONER DANIELLE OUTLAW STATED RECENTLY CITIZEN OF PHILADELPHIA SHOULD BE SAFE IN THEIR HOMES.

WE WERE DENIED EQUAL PROTECTION UNDER THE LAW AND THE POLICE CONDUCT IN THIS INSTANCE COULD HAVE RESULTED IN BOTH MY SISTER DEBRA'S AND MY DEATH "SEE MERCY HOSPITAL REPORT", POLICE REPORT BY SARGENT SHARP DC# 15-22-151 25

ENCLOSED IS CLAIM DOCUMENTS OF INJURY CAUSED BY POLICE ON FEB 25, 2019 IN WHICH THERE IS NO STATUE OF LIMATATIONS ON HUMAN TORTURE.

I WAS UNABLE TO ACT ON THIS DUE TO BEING TRAMATIZED IMMEASURABLY; I WAS ALREADY SUFFERING FROM MULTIPLE DISABILITIES WHICH TOLLS MY CLAIM.

THIS POLICE DISREGARD FOR MY WELL BEING WAS OFFICIAL OPPRESSION UNDER THE COLOR OF LAW WITH (TOTAL) GROSS DIREGARD FOR BOTH MY SAFETY AND THE SAFETY OF MY ALREADY MEDICALLY COMPROMISED INCAPACITATED SISTER, WHICH THE CORRUPT COURTS OF THIS CITY PROBATE AND ORPHAN COURT WITH THE AIDING AND ABETTING OF CLERKS OF COURT OFFICERS OF THE COURT CONCEALED HER WHERE ABOUT FROM MYSELF AND OLDER BROTHER  SAMUEL B. GIBSON BY FRAUD AND DECEIT AND THEY CREMATED OUR SISTER DEBRA WITHOUT OUR KNOWLEDGE OR NOTIFICATION SHE WAS EVEN DEAD, IN RETALIATION FOR TURNING THEM OVER TO THE SUPREME COURT DISCIPLIARY COUNCIL, THE FBI AND THE US ATTORNEY GENERAL'S OFFICE AND TO DA KRASNER WHICH WAS NEVER GIVEN TO HIM AND CONCEALED TO COVER UP THEIR CRIMES!

## CORRUPTION IN ORPHANS AND PROBATION COURT

66 I WAS SUBJECTED TO AN ILLEGAL RESTRAINT AFTER I CALLED 911 FOR HELP BECAUSE OF A VIOLENT HOME INVASION IN WHICH MY DISABLED INCAPACITATED SISTER DEBRA GIBSON WAS TAKEN OUTSIDE IN BELOW FREEZING WEATHER AND PLACED IN A WHEELCHAIR BEHIND A UHAUL TRUCK USED TO STEAL HER HOSPITAL BED AND NUMEROUS VALUBLES, FLAT SCREEN TV'S, VALUABLE VASE OFF MANTEL. MY SISTER WAS LIFTED UP AND PLACED IN THE BACK OF THE UHAUL WITH STOLEN ITEMS IN THREE DEGREES WEATHER (SEE NEIGHBORS STATEMENT MS. PITMAN

67 MY RESTRAINT IN ONLY PAJAMAS AND SOCKS INTHREE DEGREES TEMPERTURE AND ICE AND SNOW CAUSED ME PERMANENT NERVE DAMAGE TO MY HANDS AND FEET AND RESULTED IN MORE FREQUENT PULMONARY ATTACKS AND EMERGENCY ROOM VISITS.

SIX DAYS AFTER THE 23RD OF JANUARY VISIT I HAD TO RETURN ON THE 29TH JANUARY FOR ANOTHER PULMONARY ATTACK TO THE EXACERBATION FROM EXCESSIVE FORCE IN EXTREME COLD ON JANUARY 20, 2015.

68 REGARD THE IDENTITY OF THE EIGHT POLICE OFFICERS THAT STORMED OUR HOUSE THAT NIGHMARISH MORNING, I WAS NOT ABLE TO WRITE DOWN THE BADGE NUMBERS OF ALL POLICE IN VOLVED, BECAUSE WHEN I PICKED UP A PEN TO WRITE DOWN THEIR BADGE NUMBER ONE OF THE YOUNG OFFICER APPROACHED ME SUDDENLY IN A THREATNING WAY AND STATED "PUT THAT PENCIL DOWN" IN HOSTILE WAY, AND I COMPLIED IN FEAR.

69 POLICE WROTE FRAUDULENT POLICE REPORT THAT DAY STATING MY SISTER JACQULINE AS THE PERSON WHO CALLED POLICE. I DID, SHE DID NOT. THE POLICE DID NOT EVEN PUT IN THEIR REPORT THE FELONY HOME INVASION IN WHICH I WAS ASSAULTED AT DOOR IN A FORCED ENTRY OR THAT THEY ALLOWED ABDUCTORS TO TAKE MY ILL SISTER WHO HAD 24HR NURSES OUT HER HOSPIAL BED AND TAKEN OUTSIDE IN THREE DEGREE WEATHER WHICH WAS TORTURE TO MY SISTER AND MYSELF.

70 I CALLED 911 AGAIN WHEN I WAS FREE FROM ILLEGAL RESTRAINT AND GOT 22ND DISTRICT SUPERVISOR TO COME TO OUR HOME. A SARGENT SHARP WROTE UP MISCONDUCT REPORTS AND PUT EIGHT OFFICERS OUT OF OUR HOME. OCCUPIED; ON JANUARY 20, 2015.

71 IN THE EARLY MORNING: THE POLICE AIDED AND ABETTED THE PERSONS INVOLVED IN THE ABDUCTION OF MY INCAPACITATED SISTER. I AM INCLUDING IN THIS AFFIDAVIT STATEMENTS OF THE FACTS OF PREVIOUS OCCURANCES OF HARM AND INJUSTICES I HAD TO ENDURE WITHIN DAYS AFTER MY MOTHERS DEATH AND FUNERAL SERVICE BY THE PHILADELPHIIA POLICE DEPARTMENT, AND THERE AFTER INJUSTICES DIRECTED AT ME AS A PROSE LITIGANT IN PROBATE AND ORPHAN 'S COURT AND CITY EMPLOYEES TOOK PART. SEE DOCUMENT TO COMMON WEALTH OF PENNSYLVANIA DEPARTMENT OF REVENUE IN HERITANCE TAX DIVISION DIRECTOR.

## CORRUPTION/ PROBATE AND ORPNANS COURT

SEE ALSO <u>DOCUMET</u> FROM PHILADELPHIA TAX DIVISION. DATED 12/13/2018 THE ESTATE OF MY LATE MOTHER ESLIE GIBSON IS STILL OPEN DUE TO PUBLIC CORRUPTION TORTUOUS INTERFERENCE WITH MY EXPECTANCY OF AN INHERITANCE BY PROPONENT REMOVED EXECUTRIX JACQUELINE CARTER AND CORRUPT PLENARY GUARDIAN ALONG WITH JUDGE OVERTON WHO APPOINTED HIM AND WHO REFUSED TO ALLOW ME TO CARRY OUT ADMINISTATIVE JUDGES ORDER THAT MY INCAPACITATED SISTER COULD BE RETURNED HOME. INSTEAD JAMES TYLER ONE OF THE CONSPIRITORS IN THE FIXED TRIAL WHERE BY NO NOTICE GIVEN TO CAUSE ME LOST BY DEFAULT REFUSED TO SIGN RENUNCIATION ON MY SISTER DEBRAS ESTATE DESPITE MY BROTHER SAMUEL GIBSON HAVING DONE SO. TYLER STUCK TO HIS MISREPRESENTION AND REFUSED TO RETRACT IT DESPITE NUMEROUS REQUEST VERBAL AND WRITTEN CORRESPONDENCE TO HIM AND DESPITE OFFICIAL FORMAL COMPLAINT TO THE SUPREME COURT DISCIPLINARY COUNCIL- TYLER AND THE JUDGE THAT APPOINTED HIM, JACQULINE CART RETAILIATED BY LETTING MY SISTER DIE WITHOUT ME KNOWING AND THE JUDGE ALONG WITH JUDGES STAFF, CITY EMPLOYEES ENGAGED IN RECORD TAMPERING STATING THEY NEVER RECEIVED MY PETION TO REVEAL MY SISTER DEBRA'S WHERE ABOUTS.

THE PETION WAS STAMPED IN ORPHANS COURT AND NOT UNTIL I TOLD ORPHANS COURT INVESTIGATOR INTRUSIA, I WAS GOING BACK TO FBI DID THE JUDGE REPLY ALL OF A SUDDEN THEY SUDDENLY FOUND IT.

SEE PETITION TO JUDGE OVERTON WHO RESIDED OVER MY LATE SISTERS ESTATE THIS JUDGE HAD DENIED ME DUE PROCESS FROM HEAR SAY FROM TYLER ESQUIRE AND THE JUDGE HAD KNOWKEDGE OF THIS; I WAS DENIED DUE PROCESS IN RETALIATION. THE ORDER HE ISSUED WAS ULTRA VIRES.

THE WHERE ABOUT OF MY SISTER DEBRA WAS KEPT SECRET BY FRAUD DECEIT AND CRIMINAL CONSPIRACY AND MY SPECIAL NEEDS SISTER DIED WITHOUT MYSELF AND BROTHER BEING INFOMED AND DEBRA WAS ILLEGALLY CREMATED IN RETAILIATION FOR ME GIVING STATEMENT TO STATE AND FEDERAL AUTHORITIES, I FOUND OUT ONLY WHEN I QUESTIONED JAMES TYLER ESQ. AS TO THE NATURE OF LAST FINACIAL REPORT. I GOT IN THE MAIL.

I HAVE BEEN PREVENTED FROM SETTLING MY LATE MOTHERS ESTATE FILE NUMBER 51 15W2491 TO FRAUD DECEIT CRIMINAL ACTS OF ALL NAMED PARTIES INCLUDING REMOVED EXECUTRIX WHO CASHED IN OVER 80 THOUSAND IN LIFE INSURANCE DESIGNATED TO HAVE WENT TO ALL FOUR SIBLINGS. JACQULINE CARTER MY ELDEST SISTER NEVER PAID ESTATE TAXES DESPITE BEING INSTRUCTED TO DO SO BEFORE OUR MOTHER DIED BY HER, ALL OF THIS IS IN COURT RECORD. INCLUDING EXECUTRIX BEING FOUND GUILTY OF FRAUD, UNDUE INFLUENCE ELDER ABUSE AND FILING FRAUDENT WILL. MY SISTER ALONG WITH PLENARY GUARDIAN, HER COUNCIL HOWARD SOLOMAN ESQUIRE AND JUDGE OVERTON AND CITY EMPLOYEES ENGAGED IN FELONY OBSTRUCTION OF JUSTICE, FBI INFORMED.

26

77 I HAVE INCLUDED IN THIS AFFIDAVIT NOT ONLY INJUSTICES BY THE FHC AND THE PCHR BUT THE INJUSTICES I ENDURED BECAUSE THE OTHER CITY ENTITIES OF THE CITY I HAVE HAD TO ENDURE ALONG THE WAY. THE CITY OF PHILADELPHIA IS THE DEFENDANT AND I AVER HAS ENTITIES WHICH ARE ENGAGED IN PUBLIC CORRUPTION AND SYSTEMIC INSTITUTIONAL RACISM.

78 THE CITY OF PHILADELPHIA IS THE DEFENDANT WITH CHRISTOPHER RYDER, DIVISIONAL DEPUTY SOLICITOR AS IT'S CHIEF COUNCIL NOW HAS IN HIS POSSESSION IRREFUTABLE EVIDENCE OF PUBLIC CORRUPTION ENFORCED BY SYSTEMIC RACISM IN WHICH STATE AND FEDERAL CRIMES HAVE BEEN ENGAGED IN NUMEROUS TIMES BY NOT ONLY JUDGES, BUT CITY EMPLOYEES OF THE DA'S OFFICE, AND CRIMINAL ACTS AND CIVIL RIGHTS VIOLATIONS BY PHILADELPHIA POLICE OFFICERS ALL OF WHICH HAS BEEN COVERED UP IN FALSIFICATION OF POLICE REPORT, AND SELECTIVE PROSECUTION BY DENIAL OF THE RECEPT OF HOMICIDE TESTIMONY, EVIDENCE OF PUBLIC CORRUPTION ENGAGEMENT ON THE PART OF JUDGES, CITY CLERKS OF COURT ATTORNEY'S OF THE COURT AS WELL AS APPOINTED PLENARY GUARDIAN JAMES M. TYLER AND PROBATE ATTORNEY HOWARD SOLOMAN WHO ALONG WITH OTHER CONSPIRATOR FIXED A PROBATE COURT TRIAL IN THE OBSTRUCTION OF JUSTICE FOR UNJUST ENRICHMENT RETALIATION ON THEIR PART FOLLOWED.

79 I THE COMPLAINNANT IN THIS CASE AGAINST THE CITY OF PHILADELPHIA GAVE SOME OF THESE VERIFIED STATEMENTS TO ANTHONY DESANTIS THE CITY OF PHILADELPHIA'S OFFICE OF INSPECTOR GENERAL IN AN AFFIDAVIT, AND NUMEROUS EVIDENTIARY DOCUMENTS AND RECORDED VOICE MESSAGES LEFT TO BOTH FHC DIRECTOR AND TO PROSECUTORS OF THE DA'S OFFICE WHICH WERE REPEATEDLY IGNORED, INTERCEPTED OF STATED AND FEDERAL CRIMES COMMITTED.

80 I REPORTED TO FBI CORRUPTION IN CITY AGENCIES, I GAVE HOURS OF STATEMENTS. BOTH ASSISTANTS TO DA LARRY KRASNER KNOW ABOUT THE ALLEGATIONS OF THE PUBLIC CORRUPTION AND STATE AND FEDERAL CRIMES.

I LEFT AT LEAST HUNDRED OF MESSAGES TO DA'S OFFICE ONLY TO HAVE THEM, FORMER JUDGE CAROLYN TEMIN AND ROBSERT LISTENBEE IGNORED MY REQUEST FOR HELP IN THESE URGENT MATTERS WHICH INCLUDED A WHAT MY SELF, BROTHER AND DAUGHTER CONSIDERED WAS THE UNPROSECTED HOMICIDE OF MY LATE MOTHER AND CORRUPT PROCEEDINGS TO TAKE OVER HER ESTATE WITH JUDGES AND CITY CLERKS OF COURT AND ATTORNEYS AND INVOLVED IN THE RETALIATION BY THEM, WHICH WAS CONCEALMENT OF OUR SISTER LOCATION, HER BEING DISABLED AND NOT BEING ABLE TO FEND FOR HERSELF AND HER DEALTH WITHOUT NOTICE AND ILLEGAL CREMATION HER BY THEM. DA KRASNER NEVER INFORMED. THEY IGNORED MY PLEADING FOR HELP.

81 THE RETAILIATION AGAINST ME BY ORPHAN COURT AND PROBATE COURT OFFICIAL BEGAN WITH THE DENIAL OF THE COMPANIONSHIP AND COMMUNITY OF MY SISTER DEBRA BY WAY OF DECEIT, FRAUD ON THE COURT BY ATTORNEYS, UNLAWFUL ORDERS GIVEN IN TREASON TO THE CONSTITUTION, WHICH SUGGEST A JUDGE ENGAGED IN EXTOTION AND THIS ENDED IN DENYING KNOWING MY SISTER 'S CONDITION, HER DEATH, WHERE ABOUTS ILLEGAL CREMATION, ASSISTED WITH THE HELP OF CITY EMPLOYEES COURT RECORDS TAMPERING.

27                                                                                    26

27

JUDGE OVERTON ASSISTANT WHO STATED NUMEROUS TIMES THEY DID NOT RECEIVE
PLEADINGS THAT WERE STAMPED BY COURT, NOT UNTIL THE COURT INVESTIGATOR, INTRUSIA
WARNED THEM I WAS GOING TO THE FBI FOR THEIR TAMPERING WITH MY DOCUMENTS, MY
PLEADING TO GET MY SISTER BACK HOME BUT FOR THE DISCRIMINATION, CORRUPTION, AND
CRIMINAL ACTS BY THE DEFENDANT. I MICHAEL GIBSON WOULD NOT HAVE SUFFERED
PHYSICAL AND PSYCHOLOGICAL TRAMA.

82



27

REC'D OCT 2 6 2023

REC'D OCT 26 2023

Exhibit 4
IA D corruption

Michael Gibson

to special
Investigations
District Attorney's
Office.

to Police
Commissioner

Michael Gibson
2130 N. Van Pelt St
Philadelpia PA 19121
Phone 267 370 4152
DOB 12 13 49

Subject: complaint of
Michael Gibson
I.A.O #22-0467
response to I.A.D
Unfounded report
Emailed to Commissioner

Direct Email mikegibson007@gmail.com     May 28rd 2023
                                        16 Pages

Unsworn verified Statements of
Complainant Michael Gibson victim, witness,
Whistle Blower on Public Corruption within the
Philadelpia Police Department's 22nd District
And Investigative Police Authorities The
Philadelpia Police I.A.D Division

        I Michael Gibson state That The
I.A.D Investigation of The FEB 20 2015
incident At my home At 2130 N. Van Pelt st
in Philadelpia Pennsylvania conducted by the
Assigned Sgt William Yawcer is SHAM
Investigation, which is Police Perjury,
Fraudulent misrepresentation Fraudulent
Concealment, and criminal conspiracy to
coverup the use of Police Excessive Force
False Imprisoment of Complainant togethen
with Various Civil Rights Violations
Deprivation of Rights Under Title 18 242
And Title 18 241 whorein Injuries occured.

P2

Michael Gibson
2130 N. Vanpelt St

Continuation of unsworn statement of Michael Gibson re police misconduct

1  I Aver The memorandum submitted to Philadelpia Police Comissioner Daniel Outlaw Dated Jan. 23 2023 by the Commanding Officer of Internal Affairs Division is Fraudulent, and Fabricated information and deceit by The Assigned investigating officer of Police Internal Affairs Sgt william Yancer

I Aver I gave recorded Statements to This officer.

I Aver the Following Statements made by Sgt Yancer are false. Two officers involved

2  I Aver I Stated eight officers stormed my house that Feb 20 2015 Day. Sgt Yancer omitted the four officers whose bridge Numbers I wrote down before being threathned by one of officer Just as I Stated in my Aff. Davit which is clear and concise. Yancers Statements are Outrageous, Defamatory Attempt

cont

cont    response of Michael GIBSON to

I.A.D. UNFOUNDED report to Commissioner

cont
- to make me A Former mental HEALTH
professional with DECADES of EXPERIENCE
Appear mentally UNstable, AND NOT credible.

3  I Aver I never stated my brother Samuel
GIBSON struck me in my Chest to gain
ENTRANCE to my residence. my brother Samuel
GIBSON had Flown back to his home in Ohio.

4  I Aver I DID NOT state The FBI
INtercepted AND correspondence to ANy
Agency of PhiLaDELphia I submitted Documents
to.

5  I Aver I never stated The FBI
Filed A SEXUAL Discrimination complaint
Against me.
I Aver I DID NOT get the officer's Badge
NUMBER that Threatened me to stop writing
Badge NUMBERS DOWN because I FEARED for
my LIFE or the 250 LB officer that restrained ME.

MICHAEL GIBSON response to F.B.D report
supporting Evidentiary Documents went ot ADA
MS TRACY TRIPP SPECIAL INVESTIGTIONS UNIT

6      I Aver my sister Debia's removal was,
Part of the Criminal Conspiracy of Jacqueline
Carter AND her husband ALEXANDEr Carter who
Traveled Across state lines From williamsburg Virginia
AND ENgaged IN crimes in the City AND County
of Phicadelpia,

7  I Aver  That they criminally conspired
to take over my mother Elsie Gibson's
Estate AND gain control to Liquidate and
Sell For Self gain As Evidenced by
JAN 6 2016 TRIAL FiNDiNG 5 IN Common
PLEAS Court Probate Division beforE
ADministrative JUDgE Matthew Carrafiello
As Evidenced by Final Court TRIAL JAN 6
2017 Ruling, court records my PEtition
For Citation to Jacqueline Carter Dated
JAN 1/23/16, numerous POLICE reports against
both Jacqueline Carter ALEXANDER Carter,
Marjorie Gibson AND Albert GiBSON 24
Dc numbers police reports I MADE Some of
which I MADE Jointly with my Brother Samuel Gibson.

8    I Aver Sgt Sharp never saw any 1st responders or An Ambulance or the Uhaul Truck when my mother's neighbor stated took Debra Away AFTER she was Lifted up AND PLACED in the back of Uhaul.

9    I Aver Sgt Sharp was not present when the Eight police officer physically restrained restrained me AND prevented me from observing at my Front window or Door to what was going on in this crisis situation which could have resulted in my sister Debra's Death. SEE my credentials LISTED in Roman High Director of Alumni Dated 1996 — my Listing AS a Crisis Intervention Specialist, This was a Crisis Life AND Death situation As I stated in both 911 calls which police conveniently state was not Available Even Years Ago when I requested them.

Michael Gibson Response to I.A.D. report

10    I Aver, I never stated to sgt Yancer
that I saw Doctors and psychiatrist from
all over the world, I never had a
passport. or left the United States in
my life, this statement Exhibits defamotory racism.

11    I Aver no first responder showed up
at my home as sgt Yancer and 22nd District
Supervisor Richard Sharp who showed up
After my sister Debra Gibson was taken
Away. I finally got to my Front door
to observe who was outside, no presence of
A Ambulance or the Uhaul Truck my sister
was placed in as my mother's close
And Neigbor mrs, Clemintine Pittman
Stated in her statement submitted
in writing which is court Documents
in common Pleas Court and,
in hands of Law Department City
Solicitors, which they first Denied
receiving as in submission to —
                                    cont

Pg 4

cont                     Michael Gibson Response to IAD report

— The city of Philadelpia's Claims Unit
The Respondent superior of the Philadelpia
Law Dept. Ms Diana Cortes, In my complintint
of Public corruption to the city of
Philadelpia City Controller Investigator
Joseph Puroll, My Formal complaint
to Phila. OIG inspector General
Mr. Alexander DeSantes who also
Engaged in victim witness Evidence
Tampering, Evidence spoication, which
I submitted in Affidavits and claims
to the claims unit and the
cheif City Solicitor. I Filed
A criminal complaint with the
22nd District police Officer Keen
Badge # 4469   DC# 23-22-005731
the statement of The incidents
of Public corruption from me.

Michael Gibson Response to IAD report PG 8

12    I aver when sgt sharp arrives only
two people were inside my home other than
police officers Brennon and young they
were Albert Gibson the man that attacked
me at my door and and unknown big
man that was his friend, sgt MG.

13
I aver -Vancer stating two people from quality
progressions came to my home is FALSE only
one upon forced entry by Albert Gibson as
elaborated in testimony in PFA order and
court Transcripts at Domestic Violence unit.

There was only Jaqueline Carter, Alexander
Carter, Albert Gibson, the unknown
women later revealed to me by sgt sharp
upon him leaving given to me outside my
home. Sharp was given a torn off
peice of a police report form with the
name Denise Haines of Quality Progession
This he got from one of The officers.

CONT

P89

Michael Gibson Response to I.A.D. report

The other unknown big man with them was a friend of Albert Gibson and not an employee of Quality Progressions as Sgt Yancer stated.

14

<u>I aver The statement</u> that Sgt Yancer stated Sgt Sharp stated I was sitting down in my Living room with family members, man that attacked me is a Lie, it is a insult that I would be sitting down with perpetrators of criminal conspiracy, my elder sister Jaqueline Carter and her husband Alexander Carter whom myself and brother Samuel B Gibson suspected of intentionally over medicating mother, hastening her death of which I reported to homicide. I reported to both District Attorneys Seth Williams and Attorney DA Krasner which was intercepted never received by him, as I elaborated in submitted sworn testimony.

MICHAEL GIBSON Response to IAD rep PG 9e

SEE: Submitted correspondence to both DA SETH WILLIAMS AND to NEWLY ELECTED DA Larry KRASNER.

15  I aver my sister Debra removal was part of the criminal conspiracy of my ELDER sister JACQUELINE Carter and her husband ALEXANDER Carter to gain control control of my Late mother's Estate by Estate Planning Fraud ELDER ABUSE UNDUE influence Submission of a revolked Last WILL AND testament of our Late mother ELsie GIBSON Estate 924 of 2015 EVIDENCED of MG by Final TRIAL Ruling by Administrative JUDGE Matthew Carrafiello. Submitted in court records

16  I aver sat YANCE'S fraud AND Deceit IN making me APPEAR mentally UNSTABLE is AND CAN be immediately De bunked by EVIDENCE coorespondence to both D.A. SETH WILLIAMS before his Indictment, to D.A. KRASNER which was illegally intercepted to cover up POLICE Excessive force on me. ALL information also IN my petition. For citation to Jaqueline Carter in court records being submitted to Intern MG SPECIAL Investigations

17   I Aver sgt Yancer portrayed my statements regarding my mothers suspected overmedication with morphine and oxecodone as fraudulent is racially bias. See statements to both DA's, Homicide, Coroner Paula Maxmanu

I Aver This investigation by I.A.D Investigator sgt William Yawer gives rise to The questionability of every Investigation this officer has conducted What I stated in my affidavit is not confusing or disconned, The only thing disconnected is this officer's criminal, bias racially discriminatory conduct, which he has exhibited thruout this Egregious unfounded report to make my testimony uncredible and go away!

18   I Aver There was no First responders that ever came to my home and my sister was not placed on a gurney as Yawer stated sgt sharp stated to him.

19   I Aver there was no medical Tranport or Emergency. Debra was taken to home of coconspurators of Jacqueline Carter and Husband Alexander Carter.

Cont                    MICHAEL GIBSON response to I.A.D report

Sgt VANCER's PERJURY regarding my statements to him regarding my mother's overmedication AS IF I WERE mentally unstable is Ootregeous AND Defamatory. ANTholy Vochi, formerly head of Homicide had my testimony, SEE AFFIDAVIT. The home that my sister Debra was taken to in the UHAUL TRUCK was where Margorie GIBSON AND ALBERT GIBSON the man that ASSAULTED me to gain ENTRANCE to my home Lived, which was approximately Eight Block Away From HERE ON Opal street the Address of which is 2337 N. OPAL STREET SEE numerous PFA ORDERS AND criminal complaints AS well AS Domestic violence hearings regarding their Threats stalking, safe robbery at my home FEB 13th 2015 the Day BEFORE my mothers Funeral. they Both Even threatned AND intimidated the Locksmith myself AND Brother Hired to change the Locks on our Front Door in which They Illegally Locked me out my home to carry out their plan to take over the Estate And hasten our mother's Death by Overmedicating her Just As I Stated in unsworn testimony in my correspondence to Da Seth William AND his Successor District Attorney Larry Krasner. I have my Brother's video testimony re: our mothers overmedication AND my brother's FEAR For Debra SaFety, with my brother Asking Authorities to helP me, →

Michael Gibson

court            response to I.A.D's unfounded report            Pg 13

→ my brother Samuel had suffered a stroke,

20    I Aver Jacqueline Carter lied to police that it was a medical Emergency, there was none. Ms Carter illegally used a medical power of Attorney given to and granted by our late mother before our mother was aware of Ms Carter's ill intentions regarding Debra and her Estate.

21    I Aver Ms. Carter was denied guardianship of Debra due to findings at Orphan's court hearing wherein Ms Carter was Exposed for Abuse of Debra Gibson and mismanagement of Debra's social security money for her own purposes and this was also Exposed in testimony and Evidence presented at hearing before Administrative Judge Matthew Carrafiello. Judge Georg Overton Denied Ms Carter Guardianship of Debra After hearing testimony of myself and my daughter Raquel Grahm on sept 10th in an Orphans court hearing wherein an independent Guardian James Tyler Esq was appointed Guardian.

22    I Aver the statements of Ms Carter, the police of the 22nd District that Debra was being transported to a medical facility is fraudulent. Debra was never transported to any medical facility at any time there after her removal. Debra was taken to the home of the criminal conspirators who was Marjorie Gibson and convicted felon Albert Gibson at 2337 N. Opal St. SEE OC's and PFA orders taken out on them Due to threats. 25 police reports DC# on file DA's office

23  I Aver Debra was then moved to 2323 Vine St
EDGEwater Apartments, NOT A MEDICAL Facility.

I Aver The gross negligence AND criminal
behavior of the Police of the 22nd District, ALL
eight officers that ignored me regarding me being
Attacked at my Door forced entry AND ignoring me
telling them there was no medical Emergency
makes them principals to the Carter's crime of
felony home INVASION AND the Abduction of
my special need incapacitated sister wherein they
allowed her life to be placed in Grave Danger
which could have resulted in my sister Debra's
death AND mine. Officer Brennan AND Young's report FRAUD.

24  I Aver Mrs Carter AND her husband sought revenge
AND retaliated against myself AND my brother Samuel
Gibson in removing Debra, letting her Die withoutout
us knowing AND cremated her illegally.
The Police that were involved AIDED AND abetted
them AND Are accomplices in the separation
of me from my sister right after the loss of my
mother AND the police of the 22nd District
ARE responsible for causing the loss of the
community AND companionship of my sister
Debra Gibson.

25  I Aver I found out Debra was Dead by getting
A final financial report from corrupt Attorney James Tyler
who conspired with the Carter's to retaliate against me.

Michael Gibson
response to I.A.D. report                    Pg 15

26    I Aver I only found out where ms Carter her
husband ALEXANDEr Carter AND criminal conspiritor
James tyler Esquire concealed my sister whereabouts
in Retaliation. by getting my sister Debra's Death
CErtificate after I confronted TYLEr As to
why I received a Last Finacial report of
Debra's Estate in the mail. Her Estate has
Zero Dollars. TYLEr ~~pt~~ M.G. stated to me my sister
was Dead only when I confronted him.
they did not Even Placed a memorial on her
grave. James tyler allowed the continued
misappropriations ~~of~~ my sister Debra
Social security income AND stated Jacqueline
Carter was Doing a good JOB when he knew
She had Engaged in Fraud and was
removed As Executrix AND Denied
Gaurdianship of Debra, Medical Authorization VOIDED.

27    I Aver the ultimate slap in the FACE
was that I saw in his Last report MArgorie
Gibson the ~~and~~ M.G. M.G. criminal conspiritor who Threatnen
AND stalked me making terroristic threats
Listed As my sister Debra's CAREtaker
At EDGEWOOD Apts 2323 vine AND it
is my presumption they cashed in her Life Insurance.

Michael Gibson

reponse to I.A.D.'s UNFOUNDED report

28  I Aver The woman Denise Haines From Quality Progressions criminally conspired with the Carters to remove my sister Debra Gibson From our home For SELF Enrichment purpouses only and to maintain her Job and the 4/55,000 contract wherein money was paid yearly by the Department of Human Services to Quality Progressions. Ms Haines knew I was going to change the CARE provider AND Their nursing services Just as I was advised I could do by Administrative Judge Matthew Carrafiello of Probate AND Orphans Common Pleas Court. As Evidenced by Judges Statements he made and ruled that Day,      SEE irrefutable Evidence court Transcript Sept 10, 2016 Denise Haines was aware there was no medical Emergency that Day or that Debra was being trancported to medical Facility, She's no Longer Employed there, and is a criminal conspiritor.

MICHAEL GIBSON

MgG

PG #6 17

2130 N. VAN PELT St

Phila PA 19121   PLEASE SEE 1998 revised

267 370 4152

POLICE Commissiower

Affidavit re; police

corruption, Misconduct

IN the hands of

Chief Deputy City

Direct Email mikegibson007@gmail.com   Solicitor Ms,

Verification

ANNE TAYLOR

LAW Dept.

UNSWORN verification, verified statements

of Complainant, PLAINTiff victim witness

whistle Blower on PUBLic Corruption within

the Philadelpia Police Department 22ND District

AND POLICE I. A. D Division of the city

of Philadelpia  city Claim# 201 908 7753

P.H.R.C. CASE # 201 905 041

I michael GiBson am the Author of the

entirety of statements made herein

this Document regarding POLICE MISCONDUCT AND

the FActs AND the statements I have made

in this claim ARE TRUE AND correct to the

best of my KnowledgE, information AND

belief, that this verification is subject

to relative penaties of PA, c section 4904

relative to UNSWORN FALSIfication to

Authorities

Michael Gibson MAY 12th 2023

Exhibit 10

Demand Letter

REC'D OCT 2 6 2023

Michael Gibson

MICHAEL GIBSON
2130 N. VANPELT STRI
PHILADELPHIA, PA. 19.



(38)

05/26/2020

CITY OF PHILADELPHIA FAIR HOUSING COMMISSION
CITY OF PHILADELPHAI COMMISSION ON HUMAN RELATIC
ATTN: EXECUTIVE DIRECTOR RUE LANDAU

VIA USPS CERTIFIED MAIL RETURN RECEIT REQUESTED
RE: (CLAIM NOTICE) CITY OF PHILADELPHIA- INJURY DATED 5/1/2020
DEMAND TO CEASE AND DESIST INVASION OF PRIVACY AND PAY FOR DAMAGES!

THIS IS A LEGAL DEMAND LETTER AND MAY AFFECT YOUR LEGAL RIGHTS AND OR THE
RIGHTS OF OFFICERS, EMPLOYEES OF THE AGENCYS LISTED HEREIN.  PLEASE FORWARD TO THE
PROPER PARTIES FOR IMMEDIATE RESPONSE AND RESOLUTION!
I request your Agency's preserve All Potentially Relevant Documents, Evidence writing,
written and recorded information and MESSAGES, TRANSCRIPTS that may be relevant to this
matter and this case and prevent any Accidental or Intentional Deletion of Any Evidence that
relates to this Case.

Dear Ms. RUE LANDAU,
From what I have EXPERIENCED and OBSERVED, your organization has been with
your KNOWLEDGE; OPERATING UNDER the color of Law in a CRIMINAL, DISPICABLE,
OUTREGEOUSLY, MALICIOUS BIAS AND SYSTEMATICALLY DISIRMINATORY MANNER.

I have been on the receiving END of MACHINATIONS SO EVIL and CORRUPT it is
UNFATHOMABLE.

Ms. Landau, as a result of your organization's conduct in total violation of the Rule of Law, The
Philadelphia Fair Housing Commission and Partnered Human Relation Commission, I have
SUFFERED PSYCHOLOGICAL INJURY TRAUMA PAIN AND SUFFERING AS WELL AS PHYSICAL
INJURY TRAUMA PAIN AND SUFFERING.

This has been the Outrageous and Extreme Infliction of Emotional Distress.
If not for the Intentional Malicious Negligence of your at Fault Employees (Chairperson David T.
Rammler Esq., Ms. Kahilila Skipper, Rep II. Rosemary Brannigan Manager and PHRC Investigator
Alexandria Williams) I would not have suffered my Injuries pain and Suffering.

*39*

*90*

If, I Do Not Receive a response from you within 30 days I will ASSUME, you have no interest in settling this Matter Amicably and I will pursue this matter FERVENTLY IN COMMON PLEAS AND FEDERAL DISTRICT COURTS IN JURY DEMANDED TRIALS.

I Will Be Demanding Remedy for each and every Criminal Act, Cause of Action and Violation of My Constitutionally Protected Rights. I AM DEMANDING  *Five Million Dollars*  AS SETTLEMET IN THIS MATTER.

Sincerely    *Michael Gibson*

BELOW NEW MATTER ADDED ON 10/17/2020 THIS DEMAND IS 1st Amendment right to SEEK redress { reply expected within 30 days

Michael Gibson

This Demand Letter ALONG with AFFIDAVIT WAS MAILED to Executive Director of Phila. Commission on Human Relations and Phila Fair Housing Commission by certified MAIL Return receipt requested to RUE LANDAU on JUNE 24 2020

ATTACHMENT (S):
CITY OF PHILADELPHIA NOTICE OF
CLAIM TO RISK MANAGEMENT DIVISION

AFFIDAVIT OF MICHAEL GIBSON

SECTION ONE OF THE fourteenth Amendment First MADE CLEAR That ALL persons born or NATURALIZED IN THE UNITED STATES and The states where They reside ARE citizen of both. Then it Provided three restriction on the states. The states MAY NOT (1)" Abridge the privileges or immunities of citizens of The United States" nor (2)" deprive ANY person of The Life Liberty or Property without due process of LAW" nor deny ANY person "The equal protection of The LAW"

I MICHAEL GIBSON DOB 12/13/49 AND A citizen of this UNITED STATES am The Author of This Demand Letter AND The FACTS AND The statement I have MADE IN this Demand LETTER ARE TRUE AND correct to The best of my KNOWLEDGE, information AND belief, That This verification is subject to the PENALTIES of 18 Pa. C. SECTION 4904 relative to unsworn FALSIFICATION to Authorities    *Michael Gibson*    10/17/2020

REC'D OCT 2 6 2023

REC'D OCT 2 2023

Exhibit

7

IAD

Shaa Report

Michael G. Bsa

*[handwritten: June 26 2023]*

*[handwritten: ALL UNDERLINED statements by Sgt WILLIAM YANCER IS POLICE PERJURY OBstruction OF JUSTICE]*

### MEMORANDUM

POLICE
CITY OF PHILADELPHIA
DATE: 1/23/23

TO        : Police Commissioner

FROM     : Commanding Officer, Internal Affairs Division

SUBJECT: **COMPLAINT OF** ███████████    **I.A.D. # 22-0467**

### ALLEGATION

On Friday, 10/07/22, Internal Affairs Division received a complaint against police, via the Police Advisory Commission (#22-087). I.A.D. Control #22-0467 was issued.

The complainant, ████████████████████████ states that departmental policies were violated. ████████████ stated that he did not receive proper service and that he was physically abused by officers assigned to the 22nd District.

According to the complainant, on 2/20/15, at 8:30 AM, his bedridden sister, ████████████, who was under 24-hour nursing care, was abducted out of their home at ████████████████ and was placed inside the back of a U-Haul van. All the while, police were on location during the abduction. The officers physically assaulted/threatened the complainant rather than assisting with the abduction taking place.

A review of Departmental records identified the following subjects of the investigation.

**Former P/O Carolyn Young #7201,** ████████████ **appointed on** ████████ **assigned to the 22nd District on** ████████, **and resigned on** ████████

**P/O Gerard Brennan #6408,** ████████████, **appointed on** ████████ **assigned to the 22nd District on** ██████

**Sgt. Robert Sharp #453,** ████████████ **appointed on** ██████████ **assigned to the 22nd District on** ████████

On Thursday, 10/13/22, Sgt. William Yancer #8907, IAD, was assigned to investigate.

*[handwritten: 1]*

## INVESTIGATIVE ANALYSIS

On 2/20/15, at 10:09 AM, P/O Young and P/O Brennan responded to a domestic incident at ███████████ The report documents that the complainant, ███████████ was involved in a verbal dispute with her brother, ██████ ██████ over the living arrangements of another sister, ███████████ The dispute was also over what items within the residence belonged to what sibling. DC# 15-22-015094 was generated. *OMITTED sister's removal with no first responders or gurney*   *M.G.*

On 2/20/15, Sgt. Sharp #453 was the patrol supervisor for the 22ⁿᵈ District.

The assigned was unable to obtain any Body-Worn Camera footage relating to this incident due to an expired retention period.

Police Radio transmissions are not available for this assignment due to an expired retention period.

Police personnel did not complete any Use of Force reports in reference to this incident.

**Below is a summary of investigative interviews conducted by the assigned:**

███████████, was interviewed by the assigned, via telephone, on 10/18/22. ███████████ related the following summarized account.

On 2/20/15, at approximately 8:30 AM, ███████████ stated that his siblings, ███████████ (brother), ███████████ (sister), and ███████ (brother-in-law), came to his residence of ███████████ to remove ███████████ (sister) from the house.

During this time, ███████████ was under the care of ███████████ Home Care Nurse, who was a witness to this incident as well.

Quality Progressions sent two individuals to the residence who were also witnesses to the incident.   *M.G.*   *Only one person Denvese/Haines*

*Note: Quality Progressions is a non-profit, Supports Coordination Organization, for individuals with intellectual disabilities. Quality Progressions has an office within the Philadelphia area.*

As they entered ███████████ home, ███████████ punched ███████ ██████ in the chest, knocking him backward, into his home, making forced entry. The siblings then held ███████████ down in a living room chair and

*I have pictures of INJURED ARMS*
*I AD HAS PICTURES AS WELL*

proceeded to remove valuables from the home. ▮▮▮▮▮▮▮ was removed from her medical bed.

The siblings then disconnected all of the telephones within the house. Once ▮▮▮▮▮▮▮ was able to break free, he called 911.

As police arrived on location, they grabbed ▮▮▮▮▮▮▮, restricting his movement, as the front door was left open in 2-degree weather.

Once police were no longer restraining ▮▮▮▮▮▮▮ he began to write the officers' badge numbers down. One of the officers threatened him by placing his hand on his holstered firearm stating, "Put the pen down."

▮▮▮▮▮▮▮ stated that the officers continued to restrain him, allowing for the abduction of ▮▮▮▮▮▮▮ to continue. ▮▮▮▮▮▮▮ was placed inside of a U-Haul van where she was taken away.

▮▮▮▮▮▮▮ stated that he did not know the name/badge number of the officer who was restraining him.

▮▮▮▮▮▮▮ stated that after this incident, which occurred on Friday, 2/20/15, he sought medical attention on Sunday, 2/22/15, due to the pain caused by his brother punching him in the chest and the officer restricting his movement.

*Note:* ▮▮▮▮▮▮▮ *provided the assigned with his hospital records from 2/22/15.* ▮▮▮▮▮▮▮ *was treated at Mercy Catholic Medical Center. Records indicate that* ▮▮▮▮▮▮▮ *was treated for coughing, caused by the cold weather conditions on 2/20/15, and back/abdominal pain, caused by police restraining him.*

*Past medical history indicates that* ▮▮▮▮▮▮▮ *suffers from pulmonary disease, chronic bronchitis, emphysema, and COPD.* ▮▮▮▮▮▮▮ *also has a history of suffering from musculoskeletal disorder and chronic back pain.*

▮▮▮▮▮▮▮ *physical exam, including respiratory chest, cardiovascular, abdominal, upper extremity, and skin, all indicate normal functioning.*

*On 2/22/15,* ▮▮▮▮▮▮▮ *was discharged on his own, without any assistance. The Doctor's Notes section indicates that* ▮▮▮▮▮▮▮ *is feeling much better at this time and has no further questions.*

▮▮▮▮▮▮▮ stated that he has gone through psychiatric trauma because of this incident and takes a lot of medication for various issues.

3

*EXHIBIT — "LENGHT 2N"*
*FRANK WHITE & MICLEM MORRIS DENIED THEY HAD*
*RECEIVED SEE AFFIDAVIT*

During ██████████ statement to the assigned, he was certain that the Federal Bureau of Investigation were intercepting his documents/personal files from Philadelphia Municipal agencies. ██████████ believes there is a law department concealing documents pertaining to this incident from Mayor Kenney as well.

██████████ stated that the FBI also staged a sexual discrimination lawsuit against him. ██████████ states that he provided a two-hour statement to the FBI.

██████████ also suspected that his sister overdosed his mother, by hiring a woman to inject morphine into his mother's arm, which he was a witness to. ██████████ stated that his brother can vouch for his beliefs because he used to conduct top-secret missions with the Air Force. ██████████ stated that he has been seen by doctors and phycologists from all over the world who are able to validate his beliefs.

When the assigned asked ██████████ why he waited approximately 7 years to file a complaint; ██████████ stated that it was because he was traumatized by the incident and that he had to work through psychiatric trauma.

██████████ *did not have good contact information for* ██████████ ██████████ *nor* ██████████ *however, the assigned was able to make contact with* ██████████ *Home Care Nurse, and* ██████████ *Director of Quality Progressions, Philadelphia Office.*

*The assigned was able to make contact with* ██████████ *Home Care Nurse, who was on location at* ██████████ *during the time of this incident.* ██████████ *refused to provide a statement to the assigned; however, she did state that police were on location over a verbal dispute between* ██████████ *and his family.* ██████████ *stated that* ██████████ *was "moving out" of* ██████████ *which resulted in an argument between the relatives.* ██████████ *stated that police were on location during the incident and that police did not abuse/assault anyone on location.*

██████████ *Director of Quality Progressions, Philadelphia Office, sent the assigned their incident report regarding this matter. The Support Coordinator who was assigned to* ██████████ *care, is no longer employed with Quality Progressions. The report documents that on 2/20/15, at 10:00 AM, their Support Coordinator was sent to* ██████████ *to ensure* ██████████ *was moved safely out of the house.*

4

*The report documents* ███████████, ███████████, ███████
███████ ███████████, *a nephew, a friend, and police were on location during this incident.*

*The report documents that* ███████████ *was acting as the aggressor, threatening the family members, and being argumentative with police. Upon police request,* ███████ *provided police with a Medical Power of Attorney on behalf of* ███████████ ███████ *possessions were placed inside a moving truck. A private ambulance was scheduled for the transportation of* ███████████, *and she was safely transported to another relative's house.* ███████████ *will continue to provide at-home care.*

███████████ *was not provided with the information as it pertains to* ███████████ *relocation.*

███████████ *was characterized as being irrational and making verbal threats during this incident.*

███████████ *instructed Quality Progressions employees not to speak with* ███████████ *since he was not the caretaker of* ███████████ ███████ *has been calling their office as well.*

███████████ also provided the assigned with a notarized acknowledgment indicating that he is, in fact, ███████████ Along with the notarized acknowledgment, ███████████ prepared an "Affidavit" listing the events that transpired on 2/20/15. ███████████ also prepared a list of 26 violations committed on behalf of the police department. The "Affidavit" is confusing and seems disconnected.

**P/O Gerard Brennan #6408,** ███████████ **22ⁿᵈ District,** was interviewed by the assigned at Internal Affairs Division on 11/09/22. P/O Brennan did not recall the incident in question.

*On 11/04/22, after receiving Message Delivery, DC# 22-03-045683, former P/O Carolyn Young contacted the assigned, declining to provide a statement in reference to this incident.*

**Sgt. Robert Sharp #453,** ███████████ **22ⁿᵈ District,** was interviewed by the assigned at Internal Affairs Division on 10/27/22. Sgt. Sharp related the following summarized account.

On 2/20/15, P/O Young and P/O Brennan requested Sgt. Sharp to take their location of ███████████ due to being unfamiliar with the power of attorney and medical authorization paperwork, concerning ███████████

Sgt. Sharp stated that ██████████ was bedridden and was being relocated to a medical facility.

Upon arriving on location, Sgt. Sharp stated that there were multiple people on location; P/O Young and P/O Brennan, a few individuals from Quality Progressions, ██████████ and ██████████ whose medical bed was positioned in the living room. Sgt. Sharp asked P/O Young, P/O Brennan, along with the medical professionals to wait outside as a means to accommodate the family dispute. ██████████ and ██████████ met with Sgt. Sharp. ██████████ was disputing the relocation of his sister from ██████████ to a medical facility stating that he was her primary caretaker; however, ██████████ had the power of attorney for ██████████ Sgt. Sharp stated that the power of attorney paperwork was valid and that she had paperwork indicating that ██████████ was being relocated to a medical facility.

Sgt. Sharp advised ██████████ to contact an attorney in order to dispute/overturn the legal bindings.

Sgt. Sharp stated that ██████████ was sitting in a living room chair the entire time. Once the private ambulance came to the residence, ██████████ was carried out on a gurney while ██████████ remained seated, objecting to her leaving.

Sgt. Sharp stated that ██████████ was then arguing with ██████████ ██████████ over keeping ██████████ clothing.

██████████ family sat in the living room with him, trying to explain that it was in the best interest of ██████████ to be relocated; however, he was in disagreement. ~~████████~~

Sgt. Sharp stated that no officers restrained, nor restricted ██████████ movement. At no point, was ██████████ detained. Police were on location to monitor the situation only.

Sgt. Sharp stated that he was in conversation with ██████████ for the entire time and that no officer threatened ██████████ in any type of manner.

Sgt. Sharp stated that the front door was only left open in order to assist ██████████ out of the residence since she had been placed on a gurney. Sgt. Sharp recalled ██████████ being wrapped up in multiple blankets prior to her removal from the residence.

███████████ was not removed from his residence, nor was he left outside in the cold. Sgt. Sharp stated that ███████████ was sitting in the living room with his family the entire time.

*The Quality Progressions report, along with statements provided by the witness, and police, validate that the Domestic Violence report, DC #15-22-015094, was prepared accurately, all documenting a similar account of events.*

Submitted by:

███████████████████████

William Vancer
Sergeant #8907
Internal Affairs Division

Reviewed by:

███████████████████████

Pasquale Agostino
Captain #118
Internal Affairs Division

7

## CONCLUSION

The allegation of PHYSICAL ABUSE, FORCIBLY GRABBED, made by the complainant ▮▮▮▮▮▮▮ against Former P/O Carolyn Young #7201, ▮▮▮▮▮ P/O Gerard Brennan #6408, ▮▮▮▮▮▮ 22nd District, and Sgt. Robert Sharp #453, ▮▮▮▮▮ 22nd District, is UNFOUNDED.

The investigation revealed that the incident/infraction alleged did not occur. There is no evidence/documentation supporting allegations of physical abuse. A verbal dispute, Domestic Incident Report was prepared in reference to this assignment.

▮▮▮▮▮▮▮ alleged that an unknown officer restricted his movement while police were at his residence on 2/20/15. These actions alone do not rise to the level of physical abuse.

▮▮▮▮▮▮▮ Home Care Nurse, did not observe any physical abuse of ▮▮▮▮▮▮

Sgt. Sharp stated that no officers restrained, nor restricted ▮▮▮▮▮ movement. At no point was ▮▮▮▮▮▮▮ detained. Sgt. Sharp stated that ▮▮▮▮▮ was sitting in the living room with his family the entire time.

The complainant's hospital records from 2/22/15 do not identify any type of physical abuse.

The allegation of LACK OF SERVICE, FAILURE TO PREPARE/ACCURATELY COMPLETE REPORT made by the complainant, ▮▮▮▮▮ against Former P/O Carolyn Young #7201, ▮▮▮▮▮ P/O Gerard Brennan #6408, ▮▮▮▮▮ 22nd District, and Sgt. Robert Sharp #453, ▮▮▮▮▮ 22nd District, is UNFOUNDED.

The investigation revealed that the incident/infraction alleged did not occur.

▮▮▮▮▮▮▮ alleged that the Domestic Incident report prepared by police on 2/20/15, did not accurately depict the events that transpired.

The Quality Progressions report, along with statements provided by the witness, and police, validate that the Domestic Violence report, DC #15-22-015094, was prepared accurately, all documenting a similar account of events.

The allegation of DEPARTMENTAL VIOLATION, ABUSE OF AUTHORITY, made by the complainant, ██████████ against Former P/O Carolyn Young #7201, ██████████ P/O Gerard Brennan #6408, 22nd District, and Sgt. Robert Sharp #453, ██████████ 22nd District, is UNFOUNDED.

The investigation revealed that the incident/infraction alleged did not occur.

██████████ alleged that as police arrived at his residence, they left the front door open in 2-degree weather.

According to the Quality Progressions report, a private ambulance was scheduled for the transportation of ██████████, and she was safely transported to another relative's house. ██████████ continued services as the home care nurse.

Sgt. Sharp stated that the front door was only left open in order to assist ██████████ out of the residence since she had been placed on a gurney. Sgt. Sharp recalled ██████████ being wrapped up in multiple blankets prior to her removal from the residence.

██████████ was not removed from his residence, nor was he left outside in the cold. Sgt. Sharp stated that ██████████ was sitting in the living room with his family the entire time.

The allegation of VERBAL ABUSE, INTIMIDATING/THREATENING LANGUAGE, made by the complainant, ██████████ against Former P/O Carolyn Young #7201, ██████████, P/O Gerard Brennan #6408, ██████████ 22nd District, and Sgt. Robert Sharp #453, ██████████ 22nd District, is UNFOUNDED.

██████████ stated that as he began to write the officers' badge numbers down, one of the officers threatened him by placing his hand on his holstered firearm stating, "Put the pen down."

██████████ did in fact obtain the name and badge numbers of the involved officers as they were documented on his complaint form.

Sgt. Sharp stated that he was in conversation with ██████████ for the entire time and that no officer threatened ██████████ in any type of manner.

A copy of this report shall be forwarded to the Commanding Officer, 22nd Police District, for his/her action and review.

George J. Kappe
Inspector
Internal Affairs Division