**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **MICHAEL GIBSON,** | **CIVIL ACTION** |
| Plaintiff, | |
| *v.* | **NO. 23-4227-KSM** |
| **CITY OF PHILADELPHIA, et al.,** | |
| Defendants. | |

**MEMORANDUM**

**MARSTON, J.**                                                    **August 12, 2024**

 *Pro se* Plaintiff Michael Gibson brings this lawsuit against the City of Philadelphia ("the City"), the Philadelphia Police Department, and other defendants, alleging various constitutional violations pursuant to 42 U.S.C. § 1983, and state law claims.  (Doc. No. 15.)  Because Gibson was previously granted leave to proceed *in forma pauperis*, the Court is statutorily mandated to screen his Amended Complaint.[1]  (Doc. No. 8.)  For the following reasons, the Court will dismiss Gibson's Amended Complaint in its entirety.

**I. FACTUAL ALLEGATIONS**[2]

 Gibson's Amended Complaint asserts claims against eighteen Defendants arising out of two separate sets of facts.  The first set of facts relates to an incident that occurred in February

---

[1] Gibson initiated this action by filing a Complaint on October 26, 2023.  (Doc. No. 1.)  At that time, he also requested to proceed *in forma pauperis* and for additional time to file an Amended Complaint.  On November 28, 2024, the Court granted Gibson leave to proceed *in forma pauperis* and granted his request to file an Amended Complaint.  (Doc. No. 8.)

[2] The facts are taken from Gibson's Amended Complaint (Doc. No. 15), which consists of the Court's standard form complaint as well as numerous typed pages.  The Court adopts the pagination supplied by the CM/ECF docketing system.

2015, when Philadelphia police officers restrained Gibson while his developmentally disabled

sister was removed from their home.[3]  The second set of facts relates to disputes between Gibson

and his tenant, which led to housing and sex discrimination complaints being filed against

Gibson in 2019 and 2020.[4]  The Court details Gibson's allegations with respect to each incident

in turn.

### A.      February 2015 Incident with Philadelphia Police

Gibson, a 74-year-old disabled black man, alleges that on the morning of February 20,

2015, five individuals, including his eldest sister, his brother-in-law (collectively, the Carters),

his cousin, an unidentified woman, and an unidentified man, forced their way into his home.

(Doc. No. 15 at 9.)  At the time, Gibson was residing at 2130 North Van Pelt Street,

Philadelphia, with his other sister, Debra, who was "developmentally disabled" and under 24-

hour nursing care.  (*Id.*)  Gibson's mother had died just days prior, and the Carters had planned

to take over his mother's estate and remove Debra from his care.  (*Id.* at 10.)  His cousin struck

Gibson in the chest upon entering and the five individuals proceeded to take valuables from

Gibson's home and place them in a U-Haul truck.  (*Id.* at 9.)  Gibson called 911.  (*Id.* at 10.)

Eight police officers from the City of Philadelphia Police Department arrived.[5]  (*Id.*)

Gibson first spoke to the officers, explaining that he had been assaulted by a group of individuals

---

[3] With respect to this set of facts, Gibson names the following Defendants:  the City of Philadelphia, the
Philadelphia Police Department, "Ofc." Gerard Brennan; "Ofc." Carolyn Young; Sgt. Richard Sharp;
"Ofc." Six John Does; Sgt. William Yancer, I.A.D.; and Capt. Pasquel Agozzino, I.A.D.  (Doc. No. 15 at
1–2.)

[4] With respect to this set of facts, Gibson names the following Defendants:  "Philadelphia Fair Housing,
Human Relations Commission"; Rue Landau, Esq., Director; David Rammler, Esq., Chairperson;
Rosemary Brannagan, Manager; Kahlila Skipper, Rep II; Anthony Lewis Jr., Commissioner; Juan Baez,
Esq., Commissioner; Darlene Butler, Commissioner; the Philadelphia Human Relations Commission; and
Alexandria Williams, Investigator.  (Doc. No. 15 at 2.)

[5] The Court understands the eight police officers referred to in the Amended Complaint as the six John
Doe police officer Defendants as well as Defendants Gerard Brennan and Carolyn Young.  Gibson states

2

who had entered his home and that these individuals had numerous police complaints and protect from abuse orders entered against them.  (*Id.*)  The five individuals who forcibly entered Gibson's home then spoke with the police officers and subsequently began to move Gibson's sister from her hospital bed into a wheelchair so that she could be removed from the home.  (*Id.*)  Gibson "objected" and "pleaded" with the police officers to stop these individuals from removing his sister, but the officers ignored him and did not intervene.  (*Id.*)  One of the police officers, a white man who weighed approximately 250 pounds, then "grabbed [Gibson] by his fragile arms and wrists" and "forcefully held" Gibson in the "freezing cold vestibule by the front door" to prevent him from intervening.[6]  (*Id.*)  While restrained, Gibson continued to plead with the officers not to let these individuals remove his sister from his house and began to "loudly demand[] that the officer let him go."  (*Id.*)  The officer restraining him then "freed [Gibson] from his grip," which allowed Gibson to call 911 for a second time.  (*Id.* at 11.)  After Gibson made the second 911 call, the eight police officers responded with "force, threats, and unwanted and unwarranted physical contact."  (*Id.*)  Gibson states that the "seven big white officers and one black woman officer . . . verbally and physically abused" him, despite the fact that he is "elderly, 150 pounds, and in poor health."  (*Id.*)  Gibson states that he twice sought medical treatment as a result of the incident.

During this ordeal, as Gibson later was informed by a neighbor, his sister was removed from the house and was sitting outside in 3-degree weather behind a U-Haul truck, putting her life in danger.  (*Id.* at 11, 15)  She was eventually placed in the back of the truck and driven away

that although he does not know the names of the John Doe officers, he was able to write down the badge numbers for five of them before an officer approached him with his hand on the holstered gun and told him to put the pen down.  (Doc. No. 15 at 11.)

[6] Gibson saw that this officer had a badge number of 3183.  (Doc. No. 15 at 11.)

from Gibson's home.  (*Id.*)  Gibson's sister tragically passed away while under the care of the

Carters.  (*Id.* at 12.)

Defendants Brennan and Young, who were two of the eight officers that responded to the

incident, each prepared an incident report.[7]  (*Id.*)  Gibson noted that a copy of at least one of

these reports was left behind as the officers "hurriedly left the premises."  (*Id.* at 18.)  According

to Gibson, the incident reports contained "numerous inaccuracies," fraudulently misrepresented

the facts, and "fraudulently concealed" the "identities of six of the officers."  (*Id.* at 12.)  For

example, it listed him as the offender and his intruding sister as the victim in a domestic violence

dispute.  (*Id.* at 18.)  Gibson also states that "[d]espite [his] due diligence to obtain DC numbers

of the police reports of this incident," he learned that "none was generated so he could not exert

his constitutional rights to file a claim."  (*Id.* at 12.)

Over seven years later, on October 7, 2022, Gibson filed a complaint about the incident

with the Police Advisory Oversight Commission.  (*Id.* at 13.)  The complaint was handled by the

Philadelphia Police Department's Internal Affairs Division ("IAD") and assigned to Defendant

IAD Investigatory Sergeant William Yancer.  (*Id.* at 13, 15.)  As a part of his investigation,

Yancer interviewed Gibson by phone and Gibson explained the events as described above.  (*Id.*

at 16–18.)  On January 23, 2023, Yancer issued an IAD report, which was approved by

Defendant Captain Pasqual Agozzino.  (*Id.* at 18.)  According to Gibson, the IAD report

"contained multiple inaccuracies."  (*Id.* at 13, 19.)  For example, it stated that only two police

officers were involved instead of eight, that Gibson's sister was transported to a medical facility

---

[7] Although not entirely clear, it appears that Gibson alleges that the false statements contained in these
incident reports were approved and corroborated by Defendant Sergeant Richard Sharp.  (Doc. No. 15 at
26–27.)  At some point after the assault, Defendant Sharp, who was the patrol supervisor that day, arrived
at Gibson's home.  (*Id.* at 12.)  By the time Sergeant Sharp arrived, the intruders had already left with
Gibson's sister.  (*Id.* at 18.)

after her removal from Gibson's home, and that Gibson was the "aggressor" who "act[ed] irrationally" and in a "threatening" manner.  (*Id*. at 19, 28.)  Gibson contends that the IAD report "damaged his character and reputation" as it was shared with the entire Police Oversight Commission and was "tailored to make [him] look mentally disturbed and [] unstable."  (*Id*. at 19.)

Based on these allegations, Gibson asserts constitutional claims for violation of the equal protection clause[8] and excessive force under 42 U.S.C. § 1983.  (*Id*. at 20.)  He also asserts state law claims for assault and battery against Defendants John Doe Police Officer with Badge # 3183, the Philadelphia Police Department, and the City, and claims for fraudulent misrepresentation, fraudulent concealment, and libel by against Defendants Brennan, Young, and Sharpe in relation to the incident reports generated at the February 2015 incident and against Defendants Yancer and Agozzino regarding the IAD report.  (*Id*. at 22–28.)  He seeks money damages.  (*Id*. at 30.)

**B.     2019 Fair Housing Commission Hearing**

Seemingly unrelated, the Amended Complaint also describes disputes Gibson had with one of his tenants in 2019 and 2020.  Specifically, Gibson alleges that in May of 2019, a tenant who rented two rooms in his home filed a complaint against him with the Philadelphia Fair Housing Commission ("FHC").  (*Id*. at 13.)  A hearing was held on September 24, 2019 before

---

[8] Gibson's allegations here are ranging and difficult to follow, as he asserts that he was discriminated against by officers ignoring his request for help, playing into "racial stereotypes that black men are aggressive," and threatening him when he held a pen to write down badge numbers, among other things. (Doc. No. 15 at 20–22.)  Liberally construing these allegations, the Court will analyze Gibson's claim as an equal protection claim as opposed to a racial discrimination claim as he asserts.  *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) ("We apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."); *Johnson v. Fuentes*, 704 F. App'x 61, 64 (3d Cir. 2017) ("[W]e, like the District Court, interpret his § 1983 claim—alleging that he was treated differently because of his race—to assert a violation of the Equal Protection Clause.").

the FHC.[9]  (*Id*. at 14.)  During the hearing, the Commissioner would not permit Gibson to speak

to "properly present his defenses."  (*Id*.)  The next day, Gibson contacted Defendant Kahlila

Skipper, the FHC Rep II, to ask her for the Commissioner's name who oversaw the hearing.

(*Id*.)  But Skipper allegedly provided him the wrong name—"David Rannler" instead of

Defendant "David Rammler."  (*Id*.)  Gibson then contacted Defendants Rue Landau and

Rosemary Brannagan, both with the FHC, to advise them that Rannler was "egregious" and

"bias[ed]" during the hearing.  (*Id*.)  Gibson alleges that the tenant felt emboldened by this

hearing and violently attacked him with a weapon shortly thereafter.[10]  (*Id*.)  Gibson suffered

serious injuries as a result of that attack.  (*Id*. at 15.)

Gibson further alleges that on April 28, 2020, this same tenant filed a sex discrimination

complaint against him.  (*Id*.)  The tenant was allegedly assisted by the Philadelphia Human

Relations Commissioner ("PHRC"), the FHC, Brannagan, Landau, and Rammler.  (*Id*.)

Defendant Alexandria Williams was assigned as the investigator to the case.  (*Id*.)  Gibson

alleges that the staff of both the FHC and the PHRC exhibited "racially discriminatory behavior"

towards him, including assisting with the "retaliatory, illegal" sex discrimination complaint filed

by his tenant.  (*Id*.)  Based on these allegations, Gibson asserts an equal protection claim under

§ 1983 and state law claims for fraudulent misrepresentation and fraudulent concealment.  (*Id*. at

22, 25–28.)  He seeks money damages.  (*Id*. at 30.)

## II.  STANDARD OF REVIEW

As the Court has already permitted Gibson to proceed *in forma pauperis* (Doc. No. 8), 28

U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Amended Complaint

---

[9] Gibson does not disclose the subject of the complaint or the reason for the hearing, alleging only that
there was a dispute between him and his tenant.  (Doc. No. 15 at 14.)

[10] The tenant was purportedly arrested and prosecuted for this attack.  (Doc. No. 15 at 14–15.)

if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015).  Thus, the Court is required to determine whether the Amended Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw all reasonable inferences in [the plaintiff's] favor, and ask only whether that complaint, liberally construed, contains facts sufficient to state a plausible [] claim."  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (alterations accepted and internal quotation marks omitted).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678.

At the screening stage, a court may also dismiss a complaint based on an affirmative defense such as the statute of limitations when the "defense is apparent on the face of the complaint."  *Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017).  Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*").  A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction.  *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence.").  As Gibson is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

### III.     DISCUSSION

As discussed above, Gibson's complaint discusses two independent sets of events:  (1) the February 20, 2015 incident with Philadelphia Police and related IAD investigation, and (2) the 2019 FHC complaint and 2020 sex discrimination complaint filed against Gibson by his tenant.  The Court addresses Gibson's claims in relation to each of these events in turn.

### A.     Claims Related to the Incident with the Philadelphia Police and IAD Investigation

The Court begins with Gibson's claims arising from the February 2015 incident with Philadelphia Police and the subsequent IAD investigation.  The Court will first address Gibson's claims related to the conduct of the officers at the scene of the incident, finding that they are all time barred.  We will then turn to the claims related to the IAD investigation, finding that Gibson's claims related to those events are timely, but not viable as currently pled.

### 1.     *Claims Related to the Officer's Conduct at the February 2015 Incident*

With respect to the incident on February 20, 2015, when police officers allegedly used force to restrain Gibson while his sister was removed from their home, Gibson brings forth claims for equal protection and excessive force under 42 U.S.C. § 1983,[11] assault and battery against the Defendants John Doe Police Officer with Badge # 3183, the Philadelphia Police Department, and the City, and fraudulent misrepresentation, fraudulent concealment, and libel against Defendants Brennan, Young, and Sharp for their purportedly inaccurate incident reports.[12]  The Court finds that each of these claims are time barred.

---

[11] Section 1983 is the vehicle by which constitutional claims may be pursued in federal court against state officials.  *McIntyre v. Phillips*, No. CV 23-3508-KSM, 2023 WL 8096896, at *4 (E.D. Pa. Nov. 21, 2023).

[12] To the extent Gibson attempts to assert claims on behalf of his sister those claims will be dismissed. "[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim.  *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc*., 657 F.3d 148, 154 (3d Cir. 2011)

Although the statute of limitations is ordinarily an affirmative defense, a complaint is subject to dismissal on statute of limitations grounds at the screening stage when the limitations defense is "apparent on the face of the complaint." *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Wisniewski*, 857 F.3d at 157 ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint."); *Whitenight*, 674 F. App'x at 144 ("When screening a complaint under § 1915, a district court may *sua sponte* dismiss the complaint as untimely under the statute of limitations where the defense is obvious from the complaint and no development of the factual record is required." (citations omitted)).

For claims arising under § 1983, such as Gibson's equal protection and excessive force claims, "[t]he length of the statute of limitations . . . is governed by the personal injury tort law of the state where the cause of action arose." *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). Here, that would be Pennsylvania, which provides a two-year limitations period for claims founded on tortious conduct. *See id.*; 42 Pa. Stat. and Cons. Stat. § 5524(7). Thus, Gibson's claims under § 1983 for equal protection and excessive force are subject to a two-year limitations period. *See Wisniewski*, 857 F.3d at 157 (stating that "[t]he statute of limitations applicable to § 1983 claims in Pennsylvania is two years" (internal citation omitted)); *Kach v. Hose*, 589 F.3d at 634 (same). A two-year limitations period also applies to Gibson's state law claims for assault, battery, fraudulent misrepresentation, and fraudulent concealment, *see* 42 Pa. Stat. and Cons. Stat. § 5524(1) (providing that a two-year limitations period applies to claims for

---

(quotation marks omitted)). Additionally, *pro se* litigants who are not attorneys may not represent anyone else in federal court, including their family members. *See Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (holding that a *pro se* father could not pursue claims on behalf of his minor children); *Pinkney v. City of Jersey City Dep't of Hous. & Econ. Dev.*, 42 F. App'x 535, 536 (3d Cir. 2002) (per curiam) ("[A] guardian or parent cannot represent an incompetent adult in the courts of this Circuit without retaining a lawyer.").

assault and battery); *id.* § 5524(7) (providing that a two-year limitations period applies to claims sounding "deceit or fraud"), whereas his claim for libel is subject to just a one-year statute of limitations period, *see* 42 Pa. Stat. and Cons. Stat. § 5523(1).

A claim accrues for statute of limitations purposes "when a plaintiff has a complete and present cause of action, that is, when he can file suit and obtain relief."  *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010) (quotation marks omitted).[13]  In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based."  *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998); *see also Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018) (providing that under Pennsylvania law, a cause of action generally accrues "when an injury is inflicted," but if a plaintiff "is reasonably unaware that he has been injured and that his injury has been caused by another party's conduct," his statute of limitations may be tolled under the discovery rule).

Here, all of Gibson's claims against the police officers at the scene and his claims against the City and Philadelphia Police department related to those officer's actions accrued on February 20, 2015, the date in which Gibson alleges he faced discrimination, excessive force, and was the subject of a purportedly fraudulent incident report.  (Doc. No. 15 at 10–12, 16.)  On this date, Gibson knew or should have known that he was injured and discriminated against.  *See*

---

[13] Federal law governs what constitutes accrual of Gibson's claims under § 1983 whereas the accrual of his state law claims is a matter of state law.  *See Dique*, 603 F.3d at 185  (noting that state law governs when the [§1983] claim accrues," but federal law "governs the issue of what constitutes accrual"). However, because it appears that federal and Pennsylvania law are congruent on this issue, the Court analyzes all of Gibson's causes of action together.  Compare *id.* (explaining that under federal law, a cause of action accrues where the plaintiff "knew or should have known of the injury upon which [his] action is based"), *with Adams v. Zimmer*, 943 F.3d 159, 163 (3d Cir. 2019) (explaining that under Pennsylvania law, the statute of limitations "begins to run when the plaintiff knew or, exercising reasonable diligence, should have known (1) he or she was injured and (2) that the injury was caused by another").

*LeBlanc v. Snavely*, 453 F. App'x 140, 142 (3d Cir. 2011) (per curiam) ("Claims for false arrest and assault (which would include LeBlanc's excessive force claim) typically accrue on the date of the arrest or the assault, because, at that point, the plaintiff has reason to know of the injury."); *Sorokaput v. Fare*, No. 21-2188, 2022 WL 3043154, at *1 (3d Cir. Aug. 2, 2022) (per curiam) ("Excessive force claims typically accrue on the date of the alleged assault because, at that point, 'the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'" (quoting *Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998)).  However, Gibson did not file this civil action until October 26, 2023, over eight years after his claims accrued.  (Doc. No. 2.)  Thus, absent any tolling of the statute of limitations, Gibson's claims based on the February 2015 event with the Philadelphia police officers are time barred.

Gibson appears to allege that his claims related to the February 20, 2015 incident are tolled under a theory of fraudulent concealment.  In particular, he contends that the identities of the six officers were fraudulently concealed, which prevented him from asserting his rights and filing a claim.  (Doc. No. 15 at 12, 21, 26.)  Under Pennsylvania law,[14] the doctrine of fraudulent concealment is an "exception to the requirement that a complaining party must file suit within the statutory period."  *Thomas v. Smith Kline Beecham Corp.*, No. 2461 EDA 2012, 2013 WL 11250727, at *5 (Pa. Super. Ct. Nov. 27, 2013) (quoting *Baselice v. Franciscan Friars*

---

[14] State law, "unless inconsistent with federal law," governs whether a limitations period for a § 1983 claim should be tolled.  *See Dique*, 603 F.3d at 185.  Under federal law, "to benefit from the equitable tolling doctrine, plaintiffs have the burden of proving three necessary elements:  (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts."  *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006) (citation omitted).  Gibson cannot take advantage of federal tolling principles for his § 1983 claim for many of the same reasons discussed below:  any purported withholding of the officers' names did not prevent him from asserting his claim and he has not exercised reasonable diligence in his attempts to identify the officers.  *See McPherson v. United States*, 392 F. App'x 938, 945 (3d Cir. 2010) (affirming *sua sponte* dismissal of § 1983 claims where the plaintiff waited 12 years to bring his claim and holding that the plaintiff "cannot avail himself of the equitable federal tolling rules" because he did not exercise reasonable diligence in pursuing his claims).

*Assumption BVM Province, Inc.*, 879 A.2d 270, 278 (Pa. Super. Ct. 2005)).  This doctrine provides that "[w]here, through fraud or concealment, the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations." *Id.*  "In order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied." *Id.*  However, fraudulent concealment "does not require fraud in the strictest sense encompassing an intent to deceive, but rather, fraud in the broadest sense, which includes an unintentional deception." *Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005).  Finally, "[a]n element of fraudulent concealment is reasonable diligence; it is 'the responsibility of a party who seeks to assert a cause of action against another to be reasonably diligent in informing himself of the facts upon which his recovery may be based.'" *Taylor v. Tumolo*, No. CV 19-4533, 2020 WL 1531877, at *12 (E.D. Pa. Mar. 31, 2020) (quoting *Fine*, 870 A.2d at 861).  Thus, even where a statute of limitations is tolled by virtue of fraudulent concealment, it begins to run when the injured party "knows" or "should know" through "reasonable diligence" of "his injury and its cause." *See Fine*, 870 A.2d at 861.

Here, Gibson cannot avail himself of fraudulent concealment for two reasons.  First, Gibson has not set forth any non-conclusory allegations as to how the purported withholding of the John Doe officer's names prevented him from asserting his rights or induced him to "relax his vigilance" in pursuing his rights.  *Thomas*, 2013 WL 11250727, at *5.  Regardless of whether Gibson was aware of the identities of the John Doe police officers, on February 20, 2015 he was certainly aware of the harm he suffered, that this harm was caused by some other party, and the name of at least some of the officers involved.  That was enough information for Gibson to bring suit, as made clear by the fact that Gibson brought the present lawsuit with no additional

information.  Thus, Gibson cannot toll the statute of limitations on grounds that the officer's names were withheld.  *See, e.g.*, *Smith v. Mun. of Lycoming Cnty.*, 335 F. App'x 147, 149 (3d Cir. 2009) (per curiam) ("Smith knew, or had reason to know, of his alleged mistreatment when it occurred . . . . [H]e was not entitled to have the statute of limitations tolled based on . . . an allegation that some of the defendants would not divulge their names."); *Brown v. Dudek*, No. 06-4891, 2007 WL 1296658, at *5 (D.N.J. Apr. 25, 2007) (rejecting argument that claim was equitably tolled by fraudulent concealment where the plaintiff "did not need to know the names of the officers who assaulted him on the day of his arrest" because "the fact of the assault and plaintiff's immediate knowledge that he was injured by consequence of the assault were sufficient for plaintiff to know he had a claim").

Second, despite his conclusory statements that he exercised due diligence, Gibson provides no factual allegations concerning the efforts he made in ascertaining the names of the John Doe police officers.  Instead, from the facts alleged, it appears that Gibson took no action with respect to these claims—including using the badge numbers he obtained at the scene of the incident—until he filed an IAD complaint in 2022, more than seven years after the incident occurred.  This does not amount to reasonable diligence and therefore tolling of the statute of limitations is unwarranted.  *See Taylor*, 2020 WL 1531877, at *12 (rejecting fraudulent concealment argument under Pennsylvania law where the plaintiffs had not pled facts suggesting that they exercised reasonable diligence to determine the officers names which they claimed had been fraudulently withheld); *cf. Bynum v. Trustees of Univ. of Pa.*, 115 F. Supp. 3d 577, 588 (E.D. Pa. 2015) (concluding that claims against unknown officers were equitably tolled where the plaintiff "proceeded with reasonable diligence" by filing related claims within the statute of limitations and engaging in discovery on those claims to learn the names of the officers).

In sum, it is apparent from the face of the Amended Complaint that the February 2015 incident with the Philadelphia police officers "should [have] trigger[ed] [Gibson's] awareness of and duty to assert his rights." *Wisniewski*, 857 F.3d at 158 (cleaned up)).  Yet, inexplicably, Gibson waited eight years to file this action.  And because Gibson has failed to plausibly allege a basis for equitable tolling of his claims, these claims are time barred.

### 2.    *Claims Related to IAD Report*

The Court turns next to Gibson's claims arising out of the 2023 IAD investigation into the February 20, 2015 incident and the corresponding IAD report.  In connection with these events, Gibson appears to assert an equal protection claim pursuant to § 1983 and state law claims of fraudulent concealment, fraudulent misrepresentation, and libel against Defendants Yancer and Agozzino.  As an initial mater, these claims, which are subject to a two-year statute of limitations, except for the libel claim, which is subject to a one-year statute of limitations, are not time barred because they accrued less than one year before Gibson filed suit.  However, the Court nevertheless dismisses these claims because they are not plausible as pled.

First, Gibson asserts an equal protection claim against Yancer and Agozzino, alleging that they discriminated against him on the basis of his race by not including the names of the six John Doe police officers in the IAD report and by intentionally mispresenting what really occurred on February 20, 2015.  (Doc. No. 15 at 19, 21–22.)   "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).  "To state an equal protection claim for racial discrimination under Section 1983, [a plaintiff] must establish that the actions of

14

the[] defendants '(1) had a discriminatory effect, and (2) were motivated by a discriminatory purpose.'" *Tucker v. City of Philadelphia*, No. CV 16-3104, 2017 WL 5010032, at *2 (E.D. Pa. Nov. 2, 2017) (quoting *Bradley v. United States*, 299 F.3d 197, 205 (3d Cir. 2002)).  To establish a discriminatory effect, a plaintiff must "show that he is a member of a protected class and that he was treated differently from similarly situated individuals in an unprotected class." *Id.* (alterations accepted); *see also Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 273 (3d Cir. 2014) ("To establish a § 1983 claim, a plaintiff must prove that a defendant's discriminatory action was purposeful. . . . They must demonstrate that they 'receiv[ed] different treatment from that received by other individuals similarly situated.'").  "Persons are similarly situated under the Equal Protection Clause when 'they are alike in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008).

        Here, there are no facts in the Complaint that raise a plausible inference that Yancer and Agozzino purposefully discriminated against Gibson on the basis of his race.  Simply omitting names from a report or mischaracterizing the events that form the basis of the report does not alone raise an inference of race discrimination.  Moreover, Gibson has not alleged that he was treated differently than similarly situated individuals who were not in his protected class, which is fatal to his equal protection claims premised on race discrimination.  *See, e.g.*, *Tucker*, 2017 WL 5010032, at *2 (dismissing race discrimination equal protection claims against police officers where the plaintiff did not allege any facts about similarly situated individuals outside of the protected class).  And to the extent that Gibson bases his constitutional claims against Yancer and Agozzino on allegations that they failed to conduct an adequate investigation into the incident, such claims also fail because there is no constitutional right to such an investigation. *See Fuchs v. Mercer County*, 260 F. App'x 472, 475 (3d Cir. 2008) (dismissing claim based on

an alleged deficient investigation into the plaintiff's complaint because "[t]here is no statutory or common law right, much less a constitutional right, to [such] an investigation" (quoting *Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007)); *Sanders v. Downs*, No. 08-1560, 2010 WL 817475 at *5 (M.D. Pa. Mar. 9, 2010) (dismissing plaintiff's claim that police defendants failed to adequately investigate thefts at his home, since there is no statutory or constitutional right to such an investigation).[15]

As to Gibson's state law claims for fraudulent concealment, fraudulent misrepresentation, and libel against Yancer and Agozzino, the Court lacks jurisdiction.  Having dismissed the federal claims against Yancer and Agozzino,[16] the only independent basis for jurisdiction over

---

[15]  The Court does not understand Gibson to be alleging these claims against the Philadelphia Police Department or the City of Philadelphia.  However, to the extent that he is intending to do so, his claim is not actionable against these Defendants for additional reasons.  First, as to the Philadelphia Police Department, while a municipality may be liable under § 1983, a police department, as a mere sub-unit of the municipality, may not.  *See Martin v. Red Lion Police Dept.*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (per curiam) (stating that police department is not a proper defendant in an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality); *Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993) (holding that a municipal police department, without an identity separate from the municipality of which it is a part, is not a proper defendant in a § 1983 action); *Sorrells v. Philadelphia Police Dep't*, 652 F. App'x 81, 83 (3d Cir. 2016) ("[T]he Philadelphia Police Department is not a proper party, as a suit against a municipal agency should name the municipality itself.").  Therefore any claim under § 1983 against the Philadelphia Police Department is dismissed with prejudice.  Second, as to the City, Gibson has not alleged a constitutional harm that resulted from a policy or custom maintained by the City, as is required for municipal liability.  *See Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that, to state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation); *Sorrells*, 652 F. App'x at 83 (affirming dismissal of claims and noting that "even construing [the plaintiff's] complaint as against the City of Philadelphia, Sorrells did not plead that any municipal policy, custom, or practice led to the purported constitutional violations at issue, as a viable municipal liability claim requires").

[16]  If Gibson had stated a viable claim under federal law, the Court may have had supplemental jurisdiction over these state law claims.  *See* 28 U.S.C. § 1367 (providing that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  However, with all federal claims dismissed at this early stage, the Court declines to exercise supplemental jurisdiction.  *See Chapman v. United States*, 480 F. Supp. 3d 601, 613–14 (M.D. Pa. 2020) ("When a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over any remaining state law claims.").

state law claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  Section 1332(a) requires "complete diversity between all plaintiffs and all defendants," which "means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'"  *Lincoln Ben. Life Co.*, 800 F.3d at 104 (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010)).  An individual is a citizen of the state where they are domiciled, meaning the state where they are physically present and intend to remain indefinitely.  *See Washington v. Hovensa*, LLC, 652 F.3d 340, 343 (3d Cir. 2011).  Although the Amended Complaint is silent on the citizenship of the parties, Gibson includes Pennsylvania addresses for himself and for Yancer and Agozzino. (Doc. No. 15 at 1, 4.)  Accordingly, Gibson has not met his burden of proving complete diversity, and the Court does not have jurisdiction over Gibson's state law claims.  *See Lincoln Ben. Life Co.*, 800 F.3d at 105 ("The burden of establishing federal jurisdiction rests with the party asserting its existence.")

### B.    Claims Related to 2019 FHC Hearing and 2020 Sex Discrimination Complaint

Finally, the Court turns to Gibson's claims arising from the September 24, 2019 FHC hearing and April 28, 2020 sex discrimination complaint initiated against him by his tenant.  In connection with the FHC hearing, Gibson appears to assert equal protection claims under § 1983 against Defendants Rue Landau, David Rammler, Rosemary Brannagan, Kahlilia Skipper, Anthony Lewis, Jr., Juan Baez, Darlene Butler, and the FHC.  (Doc. No. 15 at 22.)  He also asserts state law claims for fraudulent misrepresentation and fraudulent concealment against these same Defendants, premised on Defendant Skipper purposefully misidentifying Defendant

Rammler.  (*Id*. at 25.)  In connection with the 2020 sex discrimination complaint, Gibson appears

to bring forward a singular claim for violation of his equal protection rights under § 1983 against

Defendants Rue Landau, David Rammler, Rosemary Brannagan, Alexandria Williams, the FHC,

and the PHRC, premised on purported race discrimination that he faced by employees of the

FHC and PHRC.[17]  The Court addresses each set of claims in turn, finding that the claims related

to the FHC hearing are time barred, and that Gibson has failed to state an equal protection claim

in relation to the sex discrimination complaint.

     First, with respect to the FHC hearing, Gibson's claims asserted under § 1983 and his

claims for fraudulent concealment and misrepresentation are all subject to a two-year statute of

limitations.[18]  *See Kach*, 589 F.3d at 634 (explaining that the statute of limitations for § 1983

claims is governed by the personal injury tort law of the state where the cause of action arose and

that Pennsylvania has a two-year statute of limitations for personal injury actions); 42 Pa. Stat.

and Cons. Stat. § 5524(7) (stating that actions founded on tortious conduct or sounding in deceit

or fraud must be commenced within two years).  Gibson's claims accrued on September 24,

2019, when the allegedly discriminatory hearing was held on his tenant's complaint.  At the

---

[17] It is unclear against which Defendants Gibson brings each set of claims.  For example, Gibson
generally asserts that the sexual harassment complaint was drafted with the assistance of "FHC staff,"
without specifying which of the Defendants employed by the FHC this includes.  (Doc. No. 15 at 15.)
The Court discerned the list of Defendants noted above by examining who Gibson referenced in the body
of his complaint in connection with each claim.  However, to the extent Defendant intended to include
additional Defendants, his claims would fail for the same reasons set forth below.

[18] The Court notes that even if Gibson's claims were not time barred, the Court has serious reservations
about the merits of his claims.  As to his equal protection claim, Gibson has not alleged sufficient facts to
support an inference of race discrimination predicated on the purported mishandling of his FHC hearing.
And as to his state law claims, Gibson has not alleged any facts suggesting that he was injured by the
purported misspelling of Defendant Rammler's name that was provided by Defendant Skipper.  *See
Weston v. Northampton Pers. Care, Inc.*, 62 A.3d 947, 960 (Pa. Super. Ct. 2013) (setting forth the
elements for fraudulent misrepresentation, which includes a requirement that the plaintiff's justifiable
reliance on a material misstatement of fact was the proximate cause of an injury).

hearing, Gibson knew or should have known the basis for his claims.  Indeed, his Amended

Complaint makes clear that the day after the hearing, Gibson called FHC officials to complain

about the "bias[ed]" and "egregious" Commissioner who conducted the hearing.  (Doc. No. 15 at

14.)  Since Gibson did not file this civil action until October 26, 2023, more than four years after

his claims accrued, his claims are time-barred.  And since the facts do not support a reasonable

basis for equitable tolling,[19] the Court dismisses Gibson's claims related to the FHC Hearing.

Second, with respect to the claims arising out of the 2020 sex discrimination complaint

filed against Gibson by his tenant, the Court finds that Plaintiff has failed to state a claim for

violation of his equal protection rights.[20]  As noted above, "to state an equal protection claim for

racial discrimination under Section 1983, [a plaintiff] must establish that the actions of the[]

defendants '(1) had a discriminatory effect, and (2) were motivated by a discriminatory

purpose.'" *Tucker*, 2017 WL 5010032, at *2 (quoting *Bradley v. United States*, 299 F.3d 197,

205 (3d Cir. 2002)).  To satisfy the first prong, a plaintiff must "show that he is a member of a

protected class and that he was treated differently from similarly situated individuals in an

---

[19] At most, Gibson alleges that his statute of limitations should be tolled because Defendant Skipper failed to provide the correct spelling of Defendant Rammler's name.  (*Id.* at 25.)  But this does not provide a basis for tolling his limitations period for the same reasons discussed above:  Gibson has not explained how this misspelling prevented him from exercising his rights or caused him to "relax his vigilance" in pursuing his rights nor has he detailed what efforts he made to uncover whether the name provided to him was in fact wrong.  As to this latter point, the Court notes that the names of the commissioners are available on the City of Philadelphia's website.  *See Fair Housing Commission, About*, City of Philadelphia, https://www.phila.gov/departments/fair-housing-commission/about/ (last accessed Aug. 8, 2024).  Thus, with minimal effort, Gibson could have recognized the error in the spelling of Defendant's Rammler's name.

[20] The Court notes that this claim may very well be time barred as well.  As noted above, there is a two-year statute of limitations period with respect to Gibson's equal protection claim arising under § 1983.  *See Kach*, 589 F.3d at 634.  Even though this sex discrimination complaint was filed on April 28, 2020, Gibson waited over three years to file this lawsuit.  However, because the Amended Complaint is ambiguous as to when this discriminatory behavior started or when Gibson could have reasonably discovered the role the Defendants allegedly played in that complaint, the Court will address this claim on the merits.

unprotected class." *Id.*  Here, in support of his claim, Gibson alleges only that employees of the FHC and PHRC committed "racially discriminatory actions."  (Doc. No. 15 at 22.)  Gibson has failed to plead facts any facts to support this conclusory allegation or to otherwise suggest that by facilitating the filing of a sex discrimination complaint, the FHC and PHRC Defendants purposefully discriminated against him on the basis of his race.  Nor has Gibson alleged any facts suggesting that he was treated differently than a similarly situated individual outside of his protected class.  Thus, Gibson has failed to state an equal protection claim with respect to the sex discrimination complaint filed against him.  *See Tucker*, 2017 WL 5010032, at *2; *Rose v. Dep't of Lab. & Indus., Equal Opportunity Off.*, No. 19-CV-2483, 2019 WL 3413835, at *4 (E.D. Pa. July 29, 2019) (dismissing, at the screening stage, an equal protection claim premised on race discrimination because the plaintiff had failed to allege sufficient facts suggesting that he was discriminated against because of his race).

## IV.     CONCLUSION

For the foregoing reasons, the Court will dismiss Gibson's Complaint.  Considering Gibson's *pro se* status, he will be given the option of filing a second amended complaint in the event he can plead additional facts to cure the defects the Court has noted as to his claims.  Out of an abundance of caution, the Court will permit Gibson to also amend those claims that have been dismissed as time barred to the extent he can plausibly allege a basis for tolling the statute of limitations.  An appropriate Order follows.